1

2

3

4

5

6

7

8

THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

JAMES GINZKEY, RICHARD
FITZGERALD, CHARLES CERF, BARRY
DONNER, and on behalf of the class members
described below,

            Plaintiffs,

    v.

NATIONAL SECURITIES CORPORATION,
a Washington Corporation,

            Defendant.

Case No.: 2:18-cv-01773-RSM

**DEFENDANT NATIONAL
SECURITIES CORPORATION'S
MOTION TO DISMISS**

NOTE ON MOTION CALENDAR:
MARCH 22, 2019
WITHOUT ORAL ARGUMENT

18

19

20

21

22

23

24

25

26

27

## I.    INTRODUCTION

    Defendant National Securities Corporation ("Defendant" or "NSC"), by and through its undersigned attorneys hereby moves to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). NSC is a registered broker-dealer. Between 2015 and 2017, NSC offered securities of Beamreach Solar (f/k/a Solexel) for sale through private placement memoranda ("PPM") to accredited investors, such as Plaintiffs, who have a net worth exceeding $1,000,000 or make at least $200,000 annually. In the Beamreach PPMs, NSC repeatedly warned that the Beamreach offerings contained a "high degree of risk."

DEFENDANT'S MOTION TO DISMISS
Case No.: 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone: (206) 332-1380

NSC also fully warned Plaintiffs of all of the risks they identify in their Complaint that ultimately led to the demise of Beamreach in February 2017.  Despite knowing of these very risks, Plaintiffs still chose to invest in these securities, likely in hope that they would be high-risk/high reward investments.  Unfortunately, Beamreach failed and Plaintiffs have now sued NSC for negligence and unjust enrichment for offering the Beamreach investments for sale.  However, by choosing to invest in Beamreach despite NSC's many warnings about the state of the company, Plaintiffs assumed the risk that their investment would be lost.  Given that the warnings in the PPMs are substantively identical to the issues Plaintiffs describe about Beamreach's ultimate demise in the Complaint, Plaintiffs' claims are barred by the doctrine of assumption of risk and should be dismissed as a matter of law.

## II.    STATEMENT OF FACTS

NSC is a FINRA member and registered broker-dealer, CRD # 7569.  Complaint ¶17.[1]  In February 2015, Beamreach hired NSC as its placement agent.  *Id.* ¶38.  NSC made three private placement offerings on behalf of Beamreach: (i) the Series D offering of preferred stock beginning February 2015 ("Series D Offering");  (ii) the Series D-1 offering of preferred stock in June 2016 ("Series D-1 Offering"); (iii) and  the Series D-2 offering of a 9% convertible promissory note offering a 300% "principal step up" in the event of an acquisition in November 2016 (that resulted from a conversion of the Series D-1 Offering) ("Series D-2 Offering") (collectively, the "Beamreach Offerings").  *Id.* ¶¶38-46.  The Beamreach Offerings were only made to "a limited group of sophisticated 'accredited investors' within the meaning of Rule 501(a) under the Securities Act of 1933 as amended (the 'Securities Act'), in a private placement designed to be exempt from registration under the Securities Act, and other applicable securities laws."  Exs. A, at NSC000001; B at NSC000383; C at NSC000665.  Plaintiffs are "accredited investors" if their individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 or they have

---

[1] The facts below taken from the Complaint are accepted as true for the purposes of this motion.

DEFENDANT'S MOTION TO DISMISS - 2
Case No. 2:18-CV-1773

an annual income exceeding $200,000 in each of the two most recent years or joint income with their spouse during those years in excess of $300,000.  17 C.F.R. §230.501(a)(5), (6).

The Series D and D-1 Offerings were presented to investors in PPMs.  Exs. A, B.  The Series D-2 Offering was presented as a supplement to the Series D-1 Offering PPM (collectively, the PPMs and its supplements are identified as the "Beamreach PPMs").  In each Beamreach PPM, NSC made extensive warnings to investors about the high-risk nature of investing in Beamreach.  *See* Exs. A, B, and C.[2]  In all of the Beamreach Offerings, NSC described the Beamreach investments as having a "high degree of risk."  Ex. A at NSC000022; Ex. B at NSC000384; Ex. C at NSC000676 (emphasis added).

Despite these substantial warnings, Plaintiffs allege that NSC failed to conduct reasonable due diligence on Beamreach before making the three Beamreach Offerings.  However, all of the negative facts about Beamreach's business detailed in Plaintiffs' Complaint that ultimately led to Beamreach's demise are described in detail in the Beamreach PPMs.

1. **NSC Disclosed the Risks Described in the Complaint About Beamreach Prior to the Series D Offering.**

NSC conducted the Series D Offering between February 2015 and April 2016.  Complaint ¶42.  In the Series D Offering PPM, NSC included 23 pages of "Risk Factors," detailing the state of Beamreach's business.  *See* Ex. A at NSC000022-45.  In their Complaint, Plaintiffs detail numerous issues with Beamreach's business prior to the Series D Offering.  All of these issues were described in the Series D Offering PPM.  For example, Plaintiffs complain that Beamreach leased all or most of its equipment, leading to an extremely high monthly bill and in the event of bankruptcy, the company owned no equipment it could sell off to pay creditors or investors.  Complaint ¶29.  But NSC disclosed: "[Beamreach] is party to certain equipment leases that will require regular monthly leasing payments [totaling $1.1 million per month] for the majority of the

---

[2] As described below, NSC requests that the Court incorporate by reference and/or take judicial notice of the excerpts of the Beamreach PPMs.

DEFENDANT'S MOTION TO DISMISS - 3
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1    Company's tools and manufacturing equipment and reduce the value of distributable assets of the

2    Company during the terms of such leases." Ex. A at NSC000023.

3          Plaintiffs further complain about the deteriorating marketplace for solar power.  Complaint

4    ¶33.  Again, NSC disclosed this risk: "The increase in global supply of solar cells and modules,

5    and increasing competition, may cause substantial downward pressure on the prices of such

6    products and cause [Beamreach] to lose sales or market share, resulting in lower revenues,

7    earnings, and cash flows than are currently projected."  Ex. A at NSC000041.

8          Plaintiffs complain about Beamreach's debt to Opus Bank that was secured by substantially

9    all of Beamreach's assets.  Complaint ¶25-26, 83-87.  Again, NSC disclosed: "[Beamreach's]

10   credit agreement with Opus Bank will require [Beamreach] to make regular monthly payments of

11   interest (beginning in December 2014) and principal (beginning in June 2016), reducing the case

12   available to finance the Company's operations" specifically identifying that Beamreach had

13   borrowed $15 million and intended to draw down an additional $10 million from Opus Bank.  Ex.

14   A at NSC000024.  NSC also disclosed that "[Beamreach's] obligations under the [Opus Bank]

15   credit agreement are secured by a lien against substantially all of [Beamreach's] obligations." *Id.*

16         Plaintiffs further complain that Beamreach did not have a viable product to sell before

17   engaging NSC to raise additional funds.  Complaint ¶73.  Again, NSC disclosed: "[Beamreach] is

18   a development stage company and has a limited operating history in its current primary business,

19   making it difficult to evaluate its present and future performance," noting that Beamreach's

20   "operations to date have consisted largely of product research and development."  Ex. A at

21   NSC000029.

22         Plaintiffs' also complain that as of February 5, 2015, NSC knew that Beamreach only had

23   a cash runway to continue operations through April 2016 (even with a fully subscribed offering).

24   Complaint ¶74.  Again, NSC disclosed Beamreach's limited cash reserves and noted that

25   "[Beamreach] cannot be certain that it will obtain sufficient capital investment within the necessary

26   time frame to continue operations, service its debt obligations, or realize sufficient revenues to

27

DEFENDANT'S MOTION TO DISMISS - 4
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1  achieve or sustain profitability."  Ex. A at NSC000030 ¶4.  NSC further disclosed that "If
2  [Beamreach] is only able to secure an additional $10 million in the Offering, following the date of
3  this Memorandum, the Company anticipates that proceeds from the Offering, together with $5
4  million in additional venture debt, will only be sufficient to fund its operations through
5  approximately April 2016 without significant cost reductions." *Id.* at 22 ¶1.

6      Plaintiffs complain that "NSC also knew that the Beamreach valuation from the Series B
7  round offered in 2008, had dropped by more than 60% from $625 million to only $250 million for
8  the Series D round.  Again, NSC disclosed this fact: "[Beamreach's] Series B Preferred Stock
9  financing was completed in 2008 at a valuation of $625 million.  The Company's Series C
10 Preferred Stock Financing was completed at a valuation of $100 million… . While the Series D
11 Preferred Stock valuation of $250 million is higher than the Series C Preferred Stock financing, it
12 is still significantly lower than the Series B Preferred Stock Valuation."  Ex. A at NSC000024.
13 NSC further noted that this decreased valuation "may suggest that it could be difficult for
14 [Beamreach] to complete the Offering or raise future rounds." *Id.*

15     Plaintiffs further complain that Beamreach was only able to secure non-binding
16 memorandum of understanding with prospective customers.  Complaint ¶76.  Yet again, NSC
17 disclosed: "The Company signed Memoranda of Understanding ("MOUs") with a number of
18 prospective clients.  Most of these non-binding MOUs have expiration dates of December 31,
19 2014, and the Company is currently in the process of extending them," noting that Beamreach
20 "cannot guarantee that it will be able to secure or retain relationships with any of its targeted
21 customers."  Ex. A at NSC000032 ¶9.

22     Plaintiffs additionally complain that NSC failed to detect that Beamreach's intellectual
23 property portfolio was worth only $300,000 at liquidation.  Complaint ¶88-93.  But NSC disclosed
24 two and a half pages detailing the risks related to Beamreach's technology, specifically noting that
25 "[Beamreach's] product development effort is ongoing.  While major technical milestones have
26 been achieved and functional product prototypes demonstrated, several potential technological

27

DEFENDANT'S MOTION TO DISMISS - 5
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

hurdles remain, and Solexel's solar modules have only been tested to a limited extent in outdoor environments." Ex. A at NSC000035-37.

Plaintiffs complain that by the time NSC was selling to Plaintiffs and the Class, sophisticated private equity funds and venture capitalists had slowed their investment. Complaint ¶80. But Plaintiffs acknowledge that they were warned: "fundraising subsequent to the Series B Preferred Stock round has been difficult for [Beamreach] and may suggest that it could be difficult for [Beamreach] to complete the Offering or raise future rounds. As discussed elsewhere in these Risk Factors, failure to raise additional capital could cause significant harm to [Beamreach's] operations and financial condition." Complaint ¶79.

Plaintiffs complain that "NSC knew that Beamreach had no revenue." Complaint ¶76. However, Plaintiffs also knew that Beamreach had no revenue because NSC stated in the PPM: "[Beamreach] has not yet generated revenue, and, even if [Beamreach] achieves its market launch timing and cost reduction targets, the Company does not expect to generate significant revenue until the fourth quarter of 2016, with small-scale revenue expected to commence in the second half of 2015." Ex. A at NSC000030 ¶3.

Finally, Beamreach's financial condition at the time of the Series D Offering, including its debt-load, was well described in detailed financial statements and balance sheets provided in the PPM. Ex. A at NSC000063, NSC000064, NSC000091-116.

Despite these many warnings, Plaintiffs Richard Fitzgerald, Charles Cerf, and Barry Donner chose to invest in the Beamreach Series D Offering. Complaint ¶118-123.

## 2. NSC Disclosed the Risks Described in the Complaint About Beamreach Prior to the Series D-1 Offering.

As with the Series D offering, all of Plaintiffs' complaints about Beamreach prior to the Series D-1 Offering of preferred stock were disclosed to investors in the PPM, in 29 pages of "Risk Factors." The Series D-1 PPM details many of the same risks as the Series D PPM: (1) Beamreach leased most or all of its equipment; (2) there was a deteriorating marketplace for solar technology; (3) substantially all of Beamreach's assets were secured by the Opus Bank loan; (4) Beamreach is

DEFENDANT'S MOTION TO DISMISS - 6
Case No. 2:18-CV-1773

a developing-stage company whose operations have largely consisted of research and development; (5) Beamreach faces risks related to its technology; and (6) Beamreach's valuation had dropped from $625 million to $250 million.  Ex. B at NSC000408 ¶4; NSC000409 ¶5, ¶6; NSC000415 ¶3; NSC000424-427.

In their Complaint, Plaintiffs describe other factors in Beamreach's business that had deteriorated between the time of the February 2015 Series D Offering and the June 2016 Series D-1 Offering.  For example, Plaintiffs complain that by June 2016, Beamreach still had not entered into a contract with a manufacturer for its product.  Complaint ¶34.  Again, NSC disclosed this fact in the Series D-1 PPM: "If the Company cannot successfully implement the Neo Solar Power MSA or cannot finalize agreements with a Contract Manufacturer or other third-party manufacturer, this would significantly increase the risk of delays in Beamreach Solar's manufacturing scale-up."  Ex. B at NSC000428 ¶2.

Plaintiffs similarly complain about Beamreach's burn rate and losses in 2015 and the first half of 2016.  *See* Complaint ¶35.  However, Beamreach's financial condition at the time of the Series D-1 Offering was well described in detailed financial statements and balance sheets provided in the PPM.  Ex. B at NSC000450-451, NSC000505, NSC000477-503.

As with the Series D Offering, Plaintiffs complain that Beamreach only had memoranda of understanding with customers.  But again, NSC detailed Beamreach's MOUs in the PPM: "[I]n June 2016, Beamreach Solar had entered into non-binding MOU's with some of the PV industry's leading distributors and developers with a combined volume of approximately 110 MW.  Beamreach Solar is currently in the process of converting these MOUs into master supply agreements."  Ex. B at NSC000464.

Despite these many warnings, Plaintiff Barry Donner chose to invest in the Series D-1 Offering.  Complaint ¶118-123.

DEFENDANT'S MOTION TO DISMISS - 7
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

**3.   NSC Disclosed the Risks Described in the Complaint About Beamreach Prior to the Series D-2 Offering.**

NSC raised $8 million of the $10 million minimum to release the investor cash raised in the Series D-1 Offering from escrow so NSC changed the Series D-1 Offering from preferred stock to a convertible secured promissory note for the Series D-2 Offering.  Complaint ¶45.  The terms for these notes were 9% with a six-month term, and featured a 300% premium on principal to be paid after months, or if the company was sold, whichever occurred first.  Complaint ¶45.  On November 14, 2016, NSC issued a Supplement to its Series D-1 Offering PPM detailing the change in the investment.  Ex. C.  The revised offering was made because of "delays in completion of the initial closing of the [Series D-1] Offering, reduced cash runway, developments at the Company, developments in the solar market and discussions with prospective participants in the Offering." *Id.* at NSC000664.  The Series D-2 PPM Supplement detailed that the Company's primary plan was the sale of the Company.  *Id.*

As with the prior two offerings, NSC disclosed many of the deteriorating problems at Beamreach in over five pages of new Risk Factors, supplementing the Risk Factors disclosed in the Series D-1 PPM.  For example, Plaintiffs complain that Beamreach's October 2016 Fifth Amendment to the Opus Bank financing essentially placed a terminal date on Beamreach, whereby Beamreach was required to replace or refinance its $24.2 million loan within six months of the Fifth Amendment.  NSC, however, was transparent with investors about the Fifth Amendment, even attaching a copy of it with the Supplemental PPM.  Ex. C.  NSC also disclosed: "Under the terms of the current agreement with Opus Bank, as amended by the Opus [Fifth] Amendment, the Company will effectively be required to replace the outstanding Opus bank debt facility, raise significant additional equity or sell the Company on or before March 31, 2017.  If the Company is unable to find a new lender, raise such equity or complete a sale, it may have to shut down." Ex. C at NSC000678 (emphasis added).

Plaintiffs allege that Beamreach retained bankruptcy counsel prior to the Series D-2 Offering.  Complaint ¶101.  However, it is clear from the PPM supplement that Beamreach was a

---

DEFENDANT'S MOTION TO DISMISS - 8
Case No. 2:18-CV-1773

1   financially-distressed company and that a wind-down was a possibility at the time of the Series D-

2   2 Offering.  NSC described that "If the Company does not meet the additional funding deadlines

3   imposed by Opus Bank, the Company will be in default of the Credit Agreement with Opus Bank,

4   all capital previously invested in the Offering will be at risk and the Company may be forced to

5   pursue an immediately [sic] sale or wind down." Ex. C at NSC000678 ¶4.

6       Despite these many warnings, Plaintiffs James Ginzkey and Richard Fitzgerald invested in

7   the Series D-2 Offering.  Complaint ¶118-123.

8   **4. Beamreach filed for Bankruptcy and Plaintiffs Filed this Suit against NSC.**

9       On February 9, 2017, Beamreach filed for Chapter 7 bankruptcy.  Complaint ¶47.

10  Plaintiffs then filed suit on December 10, 2018, on behalf of themselves and a putative class.

11  Plaintiffs seek to represent a class of all persons who invested in the Beamreach Offering through

12  NSC between February 6, 2015 and February 9, 2017, as well as Series D, Series D-1, and Series

13  D-2 Sub-Classes. *Id.* ¶124.  Jurisdiction is based on the Class Action Fairness Act.  Complaint ¶8.

14      Relying on FINRA rules to form part of the basis of NSC's duties, Plaintiffs claim that

15  NSC was negligent by (1) not conducting adequate due diligence on Beamreach; and (2) failing to

16  understand the risks and rewards of the Beamreach offerings or consciously ignoring the risks

17  presented by those red flags.  Complaint p. 29-34.  Plaintiffs also have made a claim for unjust

18  enrichment. *Id.* p. 35. For the following reasons, Plaintiffs fail to state a claim and their Complaint

19  must be dismissed with prejudice.

20                    **IV.    ARGUMENT**

21      To survive a Rule 12(b)(6) motion to dismiss, a "plaintiff must allege enough facts to state

22  a claim to relief that is plausible on its face." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588

23  (9th Cir.2008) (internal quotation marks omitted).  In assessing whether a party has stated a claim

24  upon which relief can be granted, a court must take all allegations of material fact as true and

25  construe them in the light most favorable to the nonmoving party, but "conclusory allegations of

26  law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v.*

27

DEFENDANT'S MOTION TO DISMISS - 9
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1   *Lockyer*, 568 F.3d 1063, 1067 (9th Cir.2009) (internal quotation marks omitted).  A complaint's

2   "basic deficiency . . . should be exposed at the point of minimum expenditure of time and money

3   by the parties and the court."  *Id.* at 558 (citations omitted).

4       **1.   The PPMs are Incorporated by Reference.**

5           Under the incorporation by reference doctrine, the court may consider documents "whose

6   contents are alleged in a complaint and whose authenticity no party questions, but which are not

7   physically attached to the pleading."  *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994),

8   *overruled on other grounds by* 307 F.3d 1119, 1121 (9th Cir. 2002).  Beamreach PPMs are

9   incorporated into the complaint.  Plaintiffs' Complaint expressly states the Complaint is "based on

10  the investigation conducted by and through Plaintiffs' attorneys, which included, among other

11  things: a review of the offering materials presented to Plaintiffs by Defendant, National Securities

12  Corporation ("Defendant" or "NSC") regarding private placement securities offerings made by

13  Beamreach Solar, Inc. ("Beamreach")… ."  Complaint ¶1 (emphasis added).  Further, Plaintiffs

14  specifically quoted the Series D PPM in the Complaint.  *Compare* Complaint ¶79 *with* Ex. A at

15  NSC000024 ¶6.  Thus, because the PPMs and their supplements are described and even quoted

16  from in the Complaint, they should be incorporated by reference for this motion.  *See Ciuffitelli v.*

17  *Deloitte & Touche LLP,* No. 3:16-CV-00580-AC, 2018 WL 4568737, at *3 (D. Or. Aug. 1, 2018),

18  *report and recommendation adopted,* No. 3:16-CV-00580-AC, 2018 WL 4568586 (D. Or. Sept.

19  21, 2018) (incorporating private placement memorandum by reference on defendant's motion to

20  dismiss securities complaint); *Collins v. Winex Investments, LLC,* No. CIV. 08CV51-L (CAB),

21  2009 WL 861738, at *5 (S.D. Cal. Mar. 27, 2009) (same).  Unlike judicial notice, a court may

22  assume an incorporated document's contents are true for purposes of a motion to dismiss under

23  Rule 12(b)(6).  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

24          Alternatively, the Court should take judicial notice of the Beamreach PPMs because they

25  are not subject to reasonable dispute (including by the Plaintiffs who rely on them) and their

26  accuracy cannot reasonably be questioned.  Federal Rule of Evidence 201 allows a court to take

27

DEFENDANT'S MOTION TO DISMISS - 10
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

judicial notice of facts "not subject to reasonable dispute" because they can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *See Seaman v. Sedgwick LLP*, No. SACV110664DOCRNBX, 2013 WL 12204741, at *7 (C.D. Cal. July 8, 2013) (taking judicial notice of private placement memoranda on defendant's motion to dismiss); *Kenney v. Deloitte, Haskins & Sells*, No. C 91-0590 BAC, 1992 WL 551108, at *2 (N.D. Cal. Sept. 2, 1992) (same); *Anschutz Corp. v. Merrill Lynch & Co. Inc.,* 785 F. Supp. 2d 799, 812 (N.D. Cal. 2011) (same).

This is not a case of Defendant "pil[ing] on exhibits to their motion to dismiss," as was criticized in *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1005 (9th Cir. 2018). To the contrary, NSC relies on three documents that were critical to this transaction and expressly relied on by Plaintiffs' counsel when preparing the Complaint.

### 2. The Court Should Dismiss the Complaint Based on NSC's Affirmative Defense of Assumption of Risk.

A motion to dismiss under Rule 12(b)(6) can be granted based upon an affirmative defense when that "defense raises no disputed issues of fact." *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984). Specifically, a motion to dismiss may be granted where the allegations in a complaint are contradicted by matters incorporated by reference or properly subject to judicial notice. *Casault v. Fed. Nat. Mortg. Ass'n,* 915 F. Supp. 2d 1113, 1120 (C.D. Cal. 2012), *aff'd sub nom. Casault v. One W. Bank FSB,* 658 F. App'x 872 (9th Cir. 2016) (citing *Daniels-Hall v. Nat'l educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010)); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) ("The court need not … accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."). Further, a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in plaintiff's favor, nonetheless show that the affirmative defense is "apparent on the face of the complaint." *Id.* (quoting *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010). Here, for reasons described below, NSC's affirmative defense of assumption of risk is apparent on the face of

DEFENDANT'S MOTION TO DISMISS - 11
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

Plaintiffs' Complaint, when reviewing the PPMs and supplements that disclose the very risks Plaintiffs identify in the Complaint – risks that Plaintiffs chose to assume when purchasing the Beamreach investments.

### 3. Because of NSC's Many Warnings, Plaintiffs Assumed the Risk that their Investments Might be Lost.

Under Washington law,[3] assumption of risk, implied primary assumption of risk is a complete bar to recovery. *Gleason v. Cohen*, 192 Wn. App. 788, 793, 368 P.3d 531, 534 (2016). "Implied primary assumption of risks arises when (1) the plaintiff impliedly consents to relieve the defendant of a duty to plaintiff about specific known and appreciated risks; and (2) the plaintiff engages in conduct, from which consent is implied." *Wirtz v. Gillogly*, 152 Wn. App. 1, 8, 216 P.3d 416, 420, *published with modifications at 150* Wash. App. 1053 (2009) (quoting *Scott v. Pac. W. Mountain Resort*, 119 Wn.2d 484, 497, 834 P.2d 6 (1992) and *Erie v. White*, 92 Wn. App. 297, 303, 966 P.2d 342 (1998)) (internal citations omitted). Knowledge and voluntariness may be decided as a matter of law when reasonable minds could not differ. *Id.* Here, when reviewing the PPMs, reasonable minds cannot differ that specific information was disclosed to the Plaintiffs giving them actual and constructive knowledge of all known risks of investing in Beamreach. Despite having full knowledge of these risks, Plaintiffs still chose to purchase the Beamreach investments. By doing so, Plaintiffs assumed the risk that they would lose their investments.

Notably, Plaintiffs have not alleged that NSC misled them in anyway, made any misrepresentations about the Beamreach investments, or committed any fraud. Rather, Plaintiffs have alleged negligence and unjust enrichment.

"[W]hen an investor has been warned of risks of a significance similar to that actually realized, [he] is sufficiently on notice of the danger of the investment to make an intelligent decision about it according to [his] own preferences for risk and reward." *Harris v. Ivax Corp.,*

---

[3] In a diversity action, the court must apply the forum state's choice of law rules to determine the controlling substantive law. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). "In Washington, the 'presumptive local law' applies unless there is 'an actual conflict between the laws or interests of Washington and the laws or interests of another state.'" *Brewer v. Dodson Aviation*, 447 F.Supp.2d 1166, 1175 (W.D. Wash. 2006).

DEFENDANT'S MOTION TO DISMISS - 12
Case No. 2:18-CV-1773

182 F.3d 799, 807 (11th Cir. 1999)[4]; *accord Kronk v. Landwin Grp.*, LLC, No. SACV1000344CJCMLGX, 2011 WL 13143096, at *4 (C.D. Cal. June 7, 2011), aff'd, 517 F. App'x 605 (9th Cir. 2013) (dismissing complaint against fund managers for securities fraud and negligence in substantial part where a private placement memoranda described a fund as a "high-risk investment" and specifically described many of the risks related to the fund); *Elliot v. Drugstore.com*, No. C04-1474RSM, at 8 (W.D. Wash. Oct. 19, 2005) (Attached as Exhibit D) (dismissing complaint for securities fraud where Drugstore.com "warned investors of important factors that could cause the company's business to deviate from its forecasts.").  In the three PPMs at issue, NSC expressly warned Plaintiffs and the other investors of Beamreach's issues that are identified in the Complaint, as follows:

- The Beamreach investments had a "high degree of risk";
- Beamreach was party to equipment leases that required $1.1 million monthly payments and reduced the value of distributable assets;
- The solar market had become oversaturated in supply, causing downward pressure on prices;
- Beamreach owed up to $25 million in debt to Opus Bank that was secured by substantially all of Beamreach's assets;
- Beamreach was a development-stage company with a limited operating history;
- Beamreach had never had revenue;
- Beamreach's operations had consisted largely of product research and development;
- Beamreach could not be certain to raise enough money to continue operations;
- Beamreach's valuation had dropped from $625 million to $250 million between 2008 and 2015;
- Beamreach had memoranda of understanding with potential customers;

---

[4] Although the *Harris* case was decided on the basis of the safe harbor for forward-looking statements under the Private Securities Litigation Reform Act of 1995, the principle is equally applicable to the assumption of risk doctrine in a negligence action because it shows that the investor was on notice of the dangers of the investment and voluntarily assumed the risk of the investment.

DEFENDANT'S MOTION TO DISMISS - 13
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

- Beamreach had risks related to its technology;
- Beamreach had not finalized agreements with a third-party manufacturer;
- Beamreach had a high burn rate;
- The Fifth Amendment to the agreement with Opus Bank would require Beamreach to raise significant additional equity or sell the company on or before March 31, 2017; and
- Beamreach may be forced to pursue an immediate sale or wind down.

*See* Exs. A, B, C.  This is just a sampling of the warnings contained in the PPMs.  Plaintiffs cannot argue that they did not actually read the warnings in the Beamreach PPMs.  "[I]nvestors are presumed to have read prospectuses, quarterly reports, and other information related to their investments."  *Mathews v. Kidder, Peabody & Co., Inc.,* 260 F.3d 239, 252 (3d Cir.2001).

Further, the Beamreach investments were not offered to just anyone.  Rather, the Beamreach investments were only offered to a limited group of sophisticated "accredited investors."  Accredited investors are "considered sophisticated enough by virtue of their assets and experience that they don't need so much protection [as unsophisticated investors]."  *ACAP Fin., Inc. v. U.S. S.E.C.,* 783 F.3d 763, 765 (10th Cir. 2015).  Therefore, there are relaxed rules for selling investments to accredited investors and such securities are not required to be registered with the Securities and Exchange Commission.  *Id.*  Accredited investors also are presumed to be sophisticated and aware of the risks involved in their investments.  *See Davis v. St. Anselm Expl. Co.,* No. 10-CV-883 KG/WPL, 2015 WL 13651012, at *5 (D.N.M. Oct. 8, 2015).  Accordingly, Plaintiffs were sophisticated investors capable of understanding the many risks of the Beamreach investments and make competent decisions based on their risks tolerance.

Plaintiffs did not receive boiler-plate warnings.  These were detailed warnings that specifically identify the problems that Plaintiffs allege in the Complaint ultimately caused the demise of Beamreach.  With full knowledge of the challenges facing Beamreach, Plaintiffs chose to invest in Beamreach.  In other words, Plaintiffs chose to assume the risk, in return for a potentially high reward.  Therefore, Plaintiffs' claims are barred.

DEFENDANT'S MOTION TO DISMISS - 14
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1

## V.   CONCLUSION

2        Defendant National Securities Corporation respectfully requests that the Court dismiss

3   Plaintiffs' claims with prejudice.

4

5   DATED this 28th day of February, 2019.

6                                              Respectfully submitted,

7                                              **BAKER & HOSTETLER LLP**

8

9                                              *s/ Douglas W. Greene*
                                               *s/ James R. Morrison*
10                                             Douglas W. Greene, WSBA #22844
                                               James R. Morrison, WSBA #43043
11                                             999 Third Avenue, Suite 3600
                                               Seattle, Washington 98104
12                                             Tel: (206) 332-1380
                                               Fax: (206) 624-7317
13                                             Email: dgreene@bakerlaw.com
                                               Email: jmorrison@bakerlaw.com
14

15                                             *s/ Daniel J. Buzzetta*
16                                             Daniel J. Buzzetta (*pro hac vice*)
                                               45 Rockefeller Plaza
17                                             New York, NY 10111
                                               Tel: (212) 589-4236
18                                             Fax: (212) 589-4201
                                               Email: dbuzzetta@bakerlaw.com
19

20                                             *Attorneys for Defendant*
                                               *National Securities Corporation*
21

22

23

24

25

26

27

DEFENDANT'S MOTION TO DISMISS - 15
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that on February 28, 2019, I electronically filed the foregoing

3

DEFENDANT NATIONAL SECURITIES CORPORATION'S MOTION TO DISMISS with the

4

Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

5

following:

6

David P. Neuman, WSBA #48176

7

Israels Neuman PLC
10900 NE 8th Street, Suite 100

8

PMB #155
Bellevue, Washington 98004

9

Tel: (206) 795-5798
Email: dave@israelsneuman.com

10

11

Alexander N. Loftus, *pro hac vice*
Joseph Wojciechowski, *pro hac vice*

12

Stoltmann Law Offices
233 S. Wacker, 84th Floor

13

Chicago, IL 60606
Tel: (312) 332-4200

14

Email: alex@stoltlaw.com

15

joe@stoltlaw.com

16

*Attorneys for Plaintiffs*

17

18

*s/ Serita Smith*
Serita Smith

19

Assistant to Douglas W. Greene
and James R. Morrison

20

21

22

23

24

25

26

27

---

DEFENDANT'S MOTION TO DISMISS - 16
Case No. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Telephone:  (206) 332-1380