# Exhibit D

## Order Granting Motion to Dismiss from *Elliott, et al. v. Drugstore.com, Inc., et al.*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREDERIC J. ELLIOTT, *et al.*, ) | |
| ) | CASE NO. C04-1474RSM |
| Plaintiffs, ) | |
| ) | ORDER GRANTING MOTION TO DISMISS |
| v. ) | CONSOLIDATED COMPLAINT AND |
| ) | GRANTING LEAVE TO AMEND |
| DRUGSTORE.COM, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## I. INTRODUCTION

This matter comes before the Court on defendants' Motion to Dismiss the Consolidated Amended Complaint ("Complaint"). (Dkt. #50). Essentially, defendants argue that the Complaint should be dismissed because it fails to meet the "unique and stringent" requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), in that the statements at issue are protected by the Act's "safe harbor" provisions, and in that plaintiffs have failed to provide a detailed factual basis for claiming that the statements were false at the time they were made. Plaintiffs respond that defendants' statements are not protected under the PSLRA safe harbor provisions, and that their allegations have been made with a "high degree of specificity," which raises a strong inference of scienter; and therefore, the Complaint should not be dismissed. (Dkt. #55). For the reasons set forth below, the Court disagrees with plaintiffs and GRANTS defendants' motion to dismiss.

ORDER
PAGE - 1

## II. BACKGROUND

Corporate defendant, drugstore.com, is an online retailer of health, beauty, wellness, personal care, vision and pharmacy products. During the time period at issue in this case, individually-named defendant, Kal Raman, was drugstore.com's President and Chief Executive Officer, and individually-named defendant, Robert Barton, was its Vice President of Finance and Chief Financial Officer.

On December 8, 2003, drugstore.com acquired Vision Direct, an online retailer of contact lens and other vision products. On December 9, 2003, drugstore.com publicly announced the acquisition. During the class period of January 20, 2004, through May 7, 2004, drugstore.com provided investors with forecasts of its anticipated future revenue and earnings for the 2004 fiscal year, as well as the first two quarters of 2004. The company initially anticipated growth based on its new acquisition of Vision Direct and its other businesses. Indeed, the record shows that actual first quarter results met or exceeded the company's forecasts. After those results were issued, the company again issued positive growth forecasts for the second quarter. However, on June 11, 2004, drugstore.com revised its investor guidance, lowering its forecasted revenue and reducing its forecasted earnings. At the same time, the company apparently announced the resignation of Mr. Raman. The next trading day, June 14, 2004, drugstore.com's stock price fell $1.85 per share to close at $3.06 per share. This lawsuit followed.

Plaintiffs allege that defendants' quarterly and annual forecasts for 2004 were false and misleading, and that as early as January 2004 the individually-named defendants knew or recklessly disregarded that the Vision Direct business would actually shrink and not grow. Plaintiffs specifically allege that the individually-named defendants were aware of pending contact lens legislation that would negatively affect Vision Direct business, and that the introduction of a free shipping program during the same time period would negatively impact revenue and earnings. Plaintiffs also allege that the individually-named defendants used this information as a basis to sell a significant amount of stock

ORDER
PAGE - 2

during the class period, thereby limiting their losses, and that the subsequent resignation of Mr. Raman was highly suspicious and contributed to the fall in stock price. Finally, plaintiffs argue that the sale of Mr. Raman's and Mr. Barton's stock during the class period creates a strong inference of scienter.

## III. LEGAL STANDARDS

**A. 12(b)(6) Standard of Review**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must dismiss a Complaint if a plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). In deciding a motion to dismiss, the Court accepts as true all material allegations in the Complaint and construes them in the light most favorable to the plaintiff. *See Newman v. Sathyavaglswaran*, 287 F.3d 786, 788 (9th Cir. 2002); *Associated Gen. Contractors v. Metro. Water Dist.*, 159 F.3d 1178, 1181 (9th Cir. 1998). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss. *Associated Gen. Contractors*, 159 F.3d at 1181.

In addition, a document that is not attached to a Complaint may be incorporated by reference if the plaintiff has referred to the document in the Complaint, or if the document forms the basis of plaintiff's claim. *See Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture Assoc. Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). The Court may treat such a document as part of the Complaint, and may assume its contents are true for purposes of the motion to dismiss. *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

When a Complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading

ORDER
PAGE - 3

1  could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

2  1393, 1401 (9th Cir. 1986). Leave to amend is properly denied "where the amendment would be

3  futile." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

4  **B. Heightened Pleading Requirements for Securities Fraud Claims**

5  Plaintiffs allege that defendants have committed securities fraud in violation of Section 10(b) of

6  the Securities Exchange Act of 1934 and SEC Rule 10b-5. To prove their claims, plaintiffs must

7  demonstrate that:

8  (1) defendants made a false statement or omission with regard to a material fact; (2) in connection with the purchase or sale of a security; (3) with scienter; (4) upon
9  which plaintiffs reasonably relied; and (5) that proximately caused the alleged loss.

10  *Broudo v. Dura Pharm., Inc.*, 339 F.3d 933, 937 (9th Cir. 2003). Strict pleading requirements apply

11  to such claims.

12  *1. Pleading Requirements Under the PSLRA*

13  The PSLRA states that the Complaint must specify "each statement alleged to have been

14  misleading." 15 U.S.C. § 78u-4(b)(1). The Complaint must also specify the reason or reasons why

15  the statement was false or misleading. *Id.* If an allegation regarding a misleading statement is made

16  on information or belief, the Complaint must state with particularity all facts forming the basis for the

17  belief. *Id.* The PSLRA also requires that, when pleading scienter, the Complaint, with respect to each

18  act or omission alleged to violate a provision of the Exchange Act, must "state with particularity facts

19  giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § 78u-

20  4(b)(2). In the Ninth Circuit, this heightened scienter pleading standard "requires plaintiffs to plead, at

21  a minimum, particular facts giving rise to a strong inference of deliberate or conscious recklessness,"

22  or in other words, a degree of recklessness strongly suggesting actual intent. *In re Silicon Graphics*

23  *Inc. Sec. Litig.*, 183 F.3d 970, 979 (9th Cir. 1999). Merely alleging that a defendant had the motive

24  and opportunity to commit fraud is insufficient. *Id.*

25  
26  ORDER
PAGE - 4

1	The PSLRA also contains a safe harbor provision, shielding from liability financial projections

2	and other "forward-looking" statements. 15 U.S.C. § 78u-5(c)(1); *In re Splash Tech. Holdings Inc.*

3	*Sec. Litig.*, 160 F. Supp.2d 1059, 1067 (N.D. Cal. 2001).

4	    *2. Rule 9(b) of the Federal Rules of Civil Procedure*

5	    Plaintiffs fraud allegations also raise the heightened pleading requirement of Federal Rule of

6	Civil Procedure 9(b). *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1545 (9th Cir. 1994) (*en banc*).

7	Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or

8	mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a

9	person may be averred generally." Fed. R. Civ. P. 9(b). To comport with Rule 9(b), the Complaint

10	must allege the time, place, and content of the alleged fraudulent representation or omission; the

11	identity of the person engaged in the fraud; and the "circumstances indicating falseness" or "the

12	manner in which [the] representations [or omissions at issue] were false and misleading." *In re*

13	*GlenFed*, 42 F.3d at 1547-48. Thus, a plaintiff must provide an explanation as to how an alleged

14	statement or omission was false or misleading when made. *In re GlenFed*, 42 F.3d at 1548. The

15	failure to plead fraud with the requisite particularity is grounds for dismissal. *See Wool v. Tandem*

16	*Computers, Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987). Dismissal under Rule 9(b) is governed by the

17	same standard applicable to Rule 12(b)(6). *Id.*

18	    **IV. DISCUSSION**

19	    **A. Defendants' Request for Judicial Notice**

20	    Defendants have requested that this Court take judicial notice of nine documents. Plaintiffs

21	object to only five of those documents. Indeed, the documents at Dkt. #51, Exhibits B, C, E and F,

22	were explicitly referenced in the Complaint, and the Court agrees to take judicial notice of those

23	documents.

24	    A court may take judicial notice of a fact "not subject to reasonable dispute in that it is either

25	ORDER
26	PAGE - 5

1  (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and

2  ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.

3  Evid. 201(b). Accordingly, the courts of the Ninth Circuit have consistently held that it is appropriate

4  to consider certain SEC filings in connection with a motion to dismiss, even if they are not referenced

5  in the Complaint. *See*, *e.g.*, *In re Silicon Graphics, Inc., Sec. Litig.*, 183 F.3d 970, 986-87 (9th Cir.

6  1999); *In re Copper Mountain Sec. Lit.*, 331 F. Supp.2d 857, 863 (N.D. Cal. 2004); *In re Calpine*

7  *Corp. Sec. Lit.*, 288 F. Supp.2d 1054, 1076 (N.D. Cal. 2004); *Plevy v. Haggerty*, 38 F. Supp.2d 816,

8  821 (C.D. Cal. 1998). Moreover, "the Court may take judicial notice of documents on which

9  allegations in the [Complaint] necessarily rely, even if not expressly referenced in the [Complaint],

10 provided the authenticity of those documents are not in dispute." *In re Calpine*, 288 F. Supp.2d at

11 1076 (citing to *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)). In the instant case, the

12 documents at Dkt. #51, Exhibits A, D, G, H and I, are all SEC filings, and the Court agrees that

13 judicial notice of those documents is appropriate for that reason.

14    Accordingly, the Court will take judicial notice of all of the documents contained at Dkt. #51,

15 and attached thereto as Exhibits A-I.

16    **B. Plaintiffs' Consolidated Amended Complaint**

17    Defendants first argue that the Complaint should be dismissed because the statements at issue

18 are protected by the PSLRA's safe harbor provisions. Those provisions protect a statement if is either

19 (1) identified as a forward-looking statement and accompanied by meaningful cautionary language that

20 identifies important factors that could cause future results to differ materially from those in the

21 forward-looking statement; or (2) made without actual knowledge that the statement was false or

22 misleading.[1] 15 U.S.C. § 78u-5(c)(1). Defendants are entitled to dismissal of the Complaint if the

---

[1] Defendants note that this section of the PSLRA effectively codified the "bespeaks caution" doctrine, and move for dismissal based on that doctrine as well. (Dkt. #50 at 7 n.4). However,

ORDER
PAGE - 6

statements at issue are protected under either prong of the test.

The Court agrees with defendants that the statements at issue are "forward-looking." (*See* Dkt. #50 at 8). First, the definition of a "forward-looking statement" under the PSLRA includes financial projections such as projections of revenues, income or income loss, earnings or earnings loss per share, capital expenditures, dividends, capital structure, or other financial items. 15 U.S.C. § 78u-5(i)(1)(A). These are exactly the type of statements about which plaintiffs complain. (Dkt. #48 at 2, 10-12 and 14-22). Second, drugstore.com specifically identified the statements as "forward looking statements regarding future events or the future financial and operational performance of drugstore.com, Inc." (Dkt. #51, Exs. B-F at 43, 55, 59, 80 and 88). Courts have ruled that a statement at the end of a press release or SEC filing sufficiently satisfies the safe harbor requirements for forward-looking statements. *See, e.g.*, *Copper Mountain*, 311 F. Supp.2d at 880-81 (explaining that the Court "is aware of no binding authority in the Ninth Circuit that would require a company individually to identify each and every forward-looking statement in its press releases, SEC filings, conference calls and the like. And in the court's view," a cautionary statement at the conclusion of a press release or SEC filing is sufficient). Plaintiffs do not appear to disagree that the statements in issue are forward looking.

However, in order to be protected under the PSLRA's safe harbor provisions, the statements must also include meaningful cautionary language identifying "important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(I). Defendants argue that the statements at issue contain such cautionary language, while plaintiffs argue that such boiler plate language is insufficient. The Court disagrees with plaintiffs.

In the instant case, drugstore.com's statements disclosed risks related to state and federal

---

because the parties have not briefed arguments based on that doctrine, the Court will limits its analysis to the arguments based on the PSLRA.

ORDER
PAGE - 7

1  legislation (Dkt. #51, Ex. E at 29 and 64), risks inherent to the acquisition of Vision Direct and other

2  businesses (Dkt. #51, Ex. E at 28), risks due to any free shipping or other promotional programs

3  (Dkts. #51, Ex. E at 21 and 22), and risks relating to the company's overall ability to meet its

4  projections. (Dkt. #51, Ex. E at 22 and 26, Ex. B at 43 and Ex. C at 55). While it is true that

5  boilerplate language warning that investments are risky, or general language not pointing to specific

6  risks, is insufficient to constitute a meaningful cautionary warning, "the PSLRA does not require a

7  listing of all factors that might make the results different from those forecasted. Instead, the warning

8  must only mention important factors of similar significance to those actually realized." *Copper*

9  *Mountain*, 311 F. Supp.2d at 882; *In re Clorox Secs. Litig.*, 353 F.3d 1125, 1133 (9th Cir. 2004);

10 *Harris v. Ivax Corp.*, 182 F.3d 799, 807 (11th Cir. 1999).

11       Here, the Court finds that the statements contain sufficient cautionary language to fall under

12 the protection of the PSLRA's safe harbor provision. It is clear from the record that drugstore.com

13 warned investors of important factors that could cause the company's business to deviate from its

14 forecasts. For example, its 2003 Report on Form 10-K contains a 14-page section entitled "Factors

15 That May Affect Our Business," which contains risks specific to the company. (Dkt. #51, Ex. E at 20-

16 33). In addition, the company disclosed specific risks related to the newly enacted Fairness to Contact

17 Lens Consumers Act, which became effective in February of 2004. (Dkt. #51, Ex. E at 9, 21 and 29).

18 The company also disclosed significant operating and integration risks it could face as a result of

19 acquiring Vision Direct, CNA and other acquired businesses. (Dkt. #51, Ex. E at 28). Courts have

20 continuously found this type of language sufficient to qualify for the safe harbor protection. *See, e.g.*,

21 *Stavros v. Exelon Corp.*, 266 F. Supp.2d 833, 844-47 (N.D. Ill. 2003); *In re ATI Techs, Inc. Sec.*

22 *Litig.*, 216 F. Supp.2d 418, 441-42 (E.D. Pa. 2002).

23       Although plaintiffs argue that the statements should not qualify for the safe harbor protection

24 because defendants knew the statements were false at the time they were made, it is well-settled in the

ORDER
PAGE - 8

Ninth Circuit that the PSLRA's safe harbor provisions apply if *either* prong is met. *In re Metawave Comm. Corp. Sec. Litig.*, 298 F. Supp.2d 1056, 1084-85 (W.D. Wash. 2003); *In re Seebeyond Tech Corp. Secs. Litig.*, 266 F. Supp.2d 1150, 1165 (C.D. Cal. 2003); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp.2d 1059, 1071 (N.D. Cal. 2001); *In re Boeing Sec. Litig.*, 40 F. Supp.2d 1160, 1167 (W.D. Wash. 1998). *But see No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.*, 320 F.3d 920 (9th Cir. 2003) (implying that actual knowledge of the falsity of a statement removes the protections of the safe harbor provision even when accompanied by cautionary language). The language of the provision itself supports such reading, stating that a statement is protected if it is forward-looking and contains cautionary language *or* if the plaintiff fails to prove that the person making the statement knew it was false or misleading. 15 U.S.C. § 78u-5(c)(1). Moreover, the PSLRA's legislative history confirms this interpretation. The Conference Report specifically acknowledges that the provision is a bifurcated safe harbor. H.R. CONF. REP. No. 104-369, at 43-44 (1995). Therefore, the Court is not persuaded by plaintiffs' argument.

Based on this analysis, the Court finds that the statements at issue in the Complaint are subject to the protection of the safe harbor provision set forth in the PSLRA, and defendants' motion to dismiss will be granted on that basis. Accordingly, the Court need not address defendants' remaining separate and independent arguments for dismissal at this time.

**C. Leave to Amend**

As noted above, leave to amend should be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (explaining that leave to amend should be granted unless the district court "determines that the pleading could not possibly be cured by the allegation of other facts"). Because a complaint "should not be dismissed unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim," the Court grants

ORDER
PAGE - 9

plaintiffs leave to amend their Consolidated Amended Complaint. *America West*, 320 F.3d at 931.

### V. CONCLUSION

The Court has reviewed defendants' Motion to Dismiss (Dkt. #50), plaintiffs' opposition (Dkt. #55), defendants' reply (Dkt. #56), along with the remainder of the record, and hereby finds and ORDERS:

(1) Defendants' Motion to Dismiss the Amended Consolidated Complaint (Dkt. #50) is GRANTED and the Consolidated Amended Complaint is dismissed.

(2) Plaintiffs' request for leave to amend is GRANTED. Plaintiffs shall file a Second Amended Consolidated Complaint no later than thirty (30) days from the date of this Order.

(3) Defendants shall have thirty (30) days to file their Amended Answer, or otherwise respond to such Complaint.

(4) The Clerk SHALL send a copy of this Order to all counsel of record.

DATED this __19__ day of October, 2005.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER
PAGE - 10