UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITIES CORPORATION, a Washington Corporation,<br><br>Defendant. | CASE NO. C18-1773 RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendant National Securities Corporation ("NSC")'s Motion to Dismiss under Rule 12(b)(6). Dkt. #27. Plaintiffs oppose. For the reasons stated below, the Court DENIES Defendant NSC's Motion.

## II. BACKGROUND

For purposes of this Motion, the Court will accept all facts in the Complaint as true. The Court will briefly summarize these facts as necessary for ruling on this Motion.

Defendant NSC is a registered broker-dealer headquartered in Seattle. Plaintiffs James Ginzkey, Richard Fitzgerald, Charles Cerf, and Barry Donner used NSC's services to purchase investments in a company called Beamreach that produced solar panels for residential and commercial use.

Beamreach was founded in 2007 and, according to the Complaint, "burned through more than $200 million in funds raised from large institutional investors, venture capital firms, and grants from the United States Department of Energy." Dkt. #1 at 2.

On December 9, 2014, Beamreach and Opus Bank reached a senior debt financing deal where Opus Bank agreed to provide Beamreach with a $15 million line of credit with $10 million available to draw from if the initial line of credit was exhausted. Opus Bank was granted a security interest in all of Beamreach's assets. This loan was at 8% and was to be repaid on an interest-only basis until June 2016 at which point principal payments would also be required.

In February 2015, NSC began acting as a placement agent for Breamreach's Series D securities offering. The securities purchased by Plaintiffs and Class Members in the Series D round consisted of preferred stock, beginning in February 2015 (the "Series D Offering"). A secondary offering in June 2016, the Series D-1 preferred stock round, was initially an equity offering (the "Series D-1 Offering") then was switched to a 9% convertible promissory note offering a 300% "principal step up" in the event of an acquisition, in November 2016 (the "Series D-2 Offering"). NSC acted as both the primary placement agent and exclusive broker/dealer for the Beamreach Offerings. NSC was paid a commission of 10% of whatever it sold. The total capital raised by NSC in the Beamreach Offerings was approximately $34.5 million.

The Beamreach Offerings were only made to "a limited group of sophisticated 'accredited investors' within the meaning of Rule 501(a) under the Securities Act of 1933 as

amended (the 'Securities Act'), in a private placement designed to be exempt from registration under the Securities Act, and other applicable securities laws." Dkt. #20-1 at 2; Dkt. #20-2 at 2; Dkt. #20-3 at 4. "Accredited investors" are defined by law as investors whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 or they have an annual income exceeding $200,000 in each of the two most recent years or joint income with their spouse during those years in excess of $300,000. *See* 17 C.F.R. §230.501(a)(5), (6).

The Series D and D-1 Offerings were presented to investors through private placement memoranda ("PPMs"). Dkts #20-1 and #20-2.[1] The Series D-2 Offering was presented as a supplement to the Series D-1 Offering PPM (collectively, the PPMs and its supplements are identified as the "Beamreach PPMs"). Dkt. #20-3. In each Beamreach PPM, NSC made warnings to investors about the high-risk nature of investing in Beamreach. In all of the Beamreach Offerings, NSC described the Beamreach investments as having a "high degree of risk."

Plaintiffs allege they relied on NSC's "approval of the Beamreach Offerings for sale" to make their investments in Beamreach. Dkt. #1 at 25. On November 15, 2016, Plaintiff Ginzkey invested $89,214.75 in the Series D2 Offering. On April 30, 2015, Plaintiff Fitzgerald invested $175,000 in the Series D offering; on October 28, 2016, Fitzgerald invested $12,745 in the Series D-2 offering. On February 9, 2016, Plaintiff Cerf invested $52,479 in the Series D offering. On April 10, 2015, Plaintiff Donner invested $149,940 in the Series D offering; on October 20, 2016, Donner invested another $100,459 in the Series D-1 offering.

---

[1] NSC requests that the Court incorporate by reference the Beamreach PPMs, which are quoted in the Complaint. Dkt. #20 at 10. Plaintiffs do not oppose. The Court agrees with NSC that these cited PPMs are incorporated by reference and can be relied on for purposes of ruling on this Motion.

On October 19 and October 24, 2016, Beamreach paid its bankruptcy counsel, Pachulski Stang Ziehl & Jones, LLP, for services in connection with restructuring or bankruptcy of the company.

On February 9, 2017, Beamreach filed for Chapter 7 bankruptcy citing a "catastrophic cash flow situation" and "loans due." Plaintiffs' investments resulted in a total loss.

Plaintiffs filed this putative class action on December 10, 2018 asserting claims of negligence and unjust enrichment. Dkt. #1.

### III. DISCUSSION

#### A. Legal Standard under Rule 12(b)(6)

In making a 12(b)(6) assessment, the court accepts all facts alleged in the complaint as true, and makes all inferences in the light most favorable to the non-moving party. *Baker v. Riverside County Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009) (internal citations omitted). However, the court is not required to accept as true a "legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The complaint need not include detailed allegations, but it must have "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Absent facial plausibility, a plaintiff's claims must be dismissed. *Id*. at 570.

#### B. Defendant's Motion to Dismiss under Rule 12(b)(6)

Defendant NSC argues that it "fully warned Plaintiffs of all of the risks they identify in their Complaint that ultimately led to the demise of Beamreach in February 2017" and that

"Plaintiffs' claims are barred by the doctrine of assumption of risk." Dkt. #20 at 2. NSC asks the Court to compare the Complaint's numerous "bullet points" of allegedly undisclosed risks against the actual disclosures made to Plaintiffs in the PPMs. However, the allegations and disclosures are not identical. For example, Plaintiffs allege that "[t]here was little commercial appetite for the IP that Beamreach had spent $250 million developing, and that the valuable IP portfolio was virtually worthless." NSC argues that it disclosed this risk by stating, "[w]hile major technical milestones have been achieved and functional product prototypes demonstrated, several potential technological hurdles remain, and [Beamreach's] solar modules have only been tested to a limited extent in outdoor environments." Dkt. #27 at 9. Plaintiffs allege that Beamreach had retained bankruptcy counsel prior to the November 2016 offering, that NSC knew that the company was being forced to sell the company or refinance the loan by March 2017, and that NSC should have inquired into Beamreach's bankruptcy plans. *Id*. at 10. Beamreach asks the Court to compare this allegation with the actual disclosure to Plaintiffs that "[i]f the Company does not meet the additional funding deadlines imposed by Opus Bank, the Company will be in default of the Credit Agreement with Opus Bank, all capital previously invested in the Offering will be at risk and the Company may be forced to pursue an immediately [sic] sale or wind down." *Id*. NSC argues that "Plaintiffs' Complaint appears to be nothing more than a repackaging of the risks disclosed in the PPMs, which Plaintiffs now claim they did not know and use as the basis for this lawsuit." *Id*. at 11. NSC concludes by maintaining that "reasonable minds could not differ that the type of risk facing Plaintiffs (i.e. the collapse of Beamreach due to various risks factors) was fully described to Plaintiffs in the PPMs and that risk was actually realized." *Id*. at 12.

In Response, Plaintiffs argue that NSC had duties under Financial Industry Regulatory Authority ("FINRA") regulations to investigate and disclose information beyond what was in

the PPMs. Dkt. #26 at 9. Plaintiffs state that "NSC vigorously and incorrectly argues that all of this risks of Beamreach were disclosed by Beamreach (Mot. at 3-5) but ignores its duties pursuant FINRA Rule 2111.05 to conduct a reasonable investigation of the Beamreach before offering securities to its customers. Dkt. #26 at 13 (citing Complaint at ¶ 67). The Court notes that Plaintiffs are not pleading a cause of action under FINRA, but citing these rules to show duty and breach under their common law negligence claims.

As the Court reads it, Defendant NSC is jumping ahead by arguing about the sufficiency of warnings and what a reasonable jury could conclude in this case. Such arguments are improper on a Rule 12(b)(6) motion to dismiss. The question here is whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 at 678. This requirement is met when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. As NSC notes," a motion to dismiss may be granted based upon an affirmative defense where the complaint's allegations, with all inferences drawn in plaintiff's favor, nonetheless show that the affirmative defense is 'apparent on the face of the complaint.'" Dkt. #20 at 11 (citing, *inter alia*, *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)). In this case Plaintiffs plead that NSC failed to disclose a wide collection of risks with these investments; although the record is clear that NSC disclosed many of these risks, it is not at all clear that it disclosed all of these risks, or that the PPMs alone satisfied NSC's duty to Plaintiffs. Based solely on the Complaint and the PPMs, some of the alleged risks were arguably not disclosed—such as the fact that Beamreach had "virtually worthless" intellectual property, or that it had retained bankruptcy counsel prior to the November 2016 offering. The Court need not rule on the ultimate issue, but simply finds now that the Complaint contains sufficient factual content to allow the reasonable inference of

liability, accepting all facts alleged in the complaint as true and with all inferences in the light most favorable to the non-moving party. Plaintiffs' claims are therefore plausible on their face, and this Motion is properly dismissed.

### IV. CONCLUSION

Having reviewed the relevant pleadings and the remainder of the record, the Court hereby finds and ORDERS that Defendant NSC's Motion to Dismiss (Dkt. #27) is DENIED.

DATED this 6th day of June 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE