THE HONORABLE RICARDO S. MARTINEZ

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below, | Case No.: 2:18-cv-1773-RSM |
| *Plaintiffs*, | **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND SUPPORTING BRIEF** |
| v. | **NOTE ON MOTION CALENDAR: November 27, 2020** |
| NATIONAL SECURITIES CORPORATION, a Washington Corporation | **ORAL ARGUMENT REQUESTED** |
| *Defendant*. | |

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 23**

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

# **TABLE OF CONTENTS**

**Page**

I. PRELIMINARY STATEMENT……………………………………………………..1

II. STATEMENT OF FACTS………………………………………………………..3

III. ARGUMENT………………………………………………………………….13

A. Class Certification is Appropriate under Rule 23…………………………………13

B. The Proposed Class Meets the Requirements of Rule 23(a)………………………14

1. Numerosity……………………………………………………………………14

2. Commonality…………………………………………………………………16

3. Typicality……………………………………………………………………..18

4. Adequacy……………………………………………………………………...19

C. The Proposed Class Satisfies Rule 23(b)(3)………………………………………20

1. Common Questions of Law and Fact Predominate over Individual Questions…………..20

2. A Class Action Is Superior to Other Methods for Resolving This Controversy…………...22

3. The Class is Ascertainable Based on Defendant's Books and Record……………………23

IV. CONCLUSION……………………………………………………………..24

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1

## TABLE OF AUTHORITIES

2

**Cases**                                                          **Page(s)**

3

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997)………………………………………20

4

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013)……..……...14, 20-21

5

*Amone v. Aveiro*, 226 F.R.D. 677 (D. Haw. 2005)…………..…………………………..……...15

6

*Bateman v. Am. Multi-Cinema, Inc*., 623 F.3d 708 (9th Cir. 2010)……..…………………….14

7

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir.1975)…………...…………………..…….…...2

8

*Campbell v. Vitran Express Inc*, No. CV 11-5029 RGK (SHx), 2015 U.S. Dist. LEXIS 155512 (C.D. Cal. Nov. 12, 2015)…………………………………………………….......19

9

10

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)………………………………………….21

11

*Connecticut Retirement Plans and Trust Funds*, 2009 U.S. Dist. LEXIS 71653 (C.D. Cal. August 12, 2009)……………………………………..………………………...……18

12

13

*Connor v. Automated Accounts, Inc.*, 202 F.R.D. 265 (E.D. Wash. 2001)……………………………………………………………………….......22

14

15

*Department of Enforcement v. Kernweis,* 2000 WL 33299605 (NASD Disciplinary Proc. No. C02980024, Feb. 16, 2000)……………………………………………………...…..6

16

17

*Durant v. State Farm Mut. Auto Ins. Co.*, 2017 U.S. Dist. LEXIS 34157 (W.D. Wash. Mar. 9, 2017)…………………………………………………,,,,,,,,,,,,,,,,…………………….20

18

*Fosbre v. Las Vegas Sands Corp*., No. 2:10-CV-00765-APG, 2015 U.S. Dist. LEXIS 77774 (D. Nev. June 15, 2015) ……………………………………………….………..13-14

19

20

*Gonzalez v. U.S. Dept. of Homeland Sec.*, 239 F.R.D. 620 (W.D. Wash. 2006)……………..15

21

*Hansen v. Ticket Track, Inc.,* 213 F.R.D. 415 (W.D. Wash. 2003)…………………………19

22

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1988)………..………….……....16, 17, 21

23

*Hanon v. Dataproducts Corp*., 976 F.2d 497 (9th Cir. 1992)…………………………………18

24

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964)……...............…15

25

26

*Hatamian v. Advanced Micro Devices, Inc.*, No. 14- CV-00226 YGR, 2016 U.S. Dist. LEXIS 34150 (N.D. Cal. Mar. 16, 2016)…………………………………………………...…21

27

28

2

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1

2

*In re: Beamreach Solar, Inc.* 17-bk-50307, (N.D. Cal. Feb. 9, 2017)………...…………..…2

3

4

*In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628 (C.D. Cal. 2009)…………….…….14-15, 16, 19

5

*In re Emulex Corp.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002)…………………………….21

6

*In re Wash. Mut., Inc.*, 2010 U.S. Dist. LEXIS 142992 (W.D. Wash. 2010)…………..…...19

7

*In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658 (W.D. Wash. 2011)……....16

8

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir.1982)…………..……………....15

9

*Kirkpatrick v. Ironwood Communications, Inc.*, Case No. C05-1428JLR, 2006 U.S. Dist.
LEXIS 57713 (W.D. Wash. Aug. 16, 2006)……………………...…………………………15

10

11

*Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)………………….....19

12

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670
(W.D. Wash. 2010)………………………………………………………………………….15

13

14

*Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432 (W.D. Wash. 2000)…………………22

15

*Peoples v. United Servs. Auto. Ass'n*, 18-1173RSL, 2019 U.S. Dist. LEXIS 71439 (W.D.
Wash. April 26, 2019)……………………………………………………………….……...14

16

17

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015)…………………20

18

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2009)…………..……………………………...16

19

*Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D. Cal. 1985)………………………………………2

20

*Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)……………………………….…..14

21

*Taylor v. Universal Auto Group I, Inc.*, No. 3:13-cv-05245-KLS, 2014 U.S. Dist. LEXIS
164312 (W.D. Wash. November 24, 2014)…………………………………………………..14

22

23

*United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern.
Union AFL-CIO, CLC v. Conoco Phillips Co.*, 593 F.3d 802 (9th Cir. 2010)…………….…14

24

25

*Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009)……………….……23

26

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)………………….…………16, 17

27

*Wilcox v. Swapp*, 330 F.R.D. 584 (W.D. Wash. 2019)………………………………………20

28

3

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**<u>Rules and Statutes</u>**

Fed. R. Civ. P. 23……………………………………………………………...……......2

Fed. R. Civ. P. 23(a)…………………………………………………………………14

Fed. R. Civ. P. 23(a)(1)………………………………………………………………14

Fed. R. Civ. P. 23(a)(2)………………………………………………………………16

Fed. R. Civ. P. 23(a)(3)………………………………………………………………18

Fed. R. Civ. P. 23(a)(4)………………………………………………………………20

Fed. R. Civ. P. 23(b)…………………………………………………………………14

Fed. R. Civ. P. 23(b)(3)……………………………………………………..3, 20, 22

FINRA Rule 2111.02………..…………………………………………..………..6

FINRA Rule 2111.05(a)………………………………………………………5, 7

FINRA Regulator Notice 10-22………………………………………………5, 7

NASD Notice To Members 03-71…………………………………………………5, 6, 7

NASD Notice To Members 05-26…………………………………………………5, 7

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

Pursuant to Federal Rule of Civil Procedure 23, Lead Plaintiffs James Ginzkey, Richard Fitzgerald, Charles Cerf, and Barry Donner ("Plaintiffs") respectfully move this Court to certify this action as a class action, to appoint them as class representatives, and to appoint Stoltmann Law Offices, P.C. ("Stoltmann") and Law Offices of Joshua B. Kons, LLC, as class counsel. *See Proposed Order* attached hereto as Exhibit 1. They base this Motion on the following Memorandum of Law and the Declarations of Joshua B. Kons, Joseph Wojciechowski, Alexander Loftus, and Sara Hanley in support of Plaintiffs' Motion for Class Certification Pursuant to Fed. R. Civ. P. 23, the exhibits thereto, the arguments of counsel, and any other evidence and argument that they may present to the Court prior to its decision on this Motion.

## I.       PRELIMINARY STATEMENT

In short, this litigation relates solely to the issue of whether Defendant National Securities Corporation ("Defendant" or "NSC") breached the applicable standard of care in conducting due diligence and approving for sale to its customers private placement securities issued by Beamreach Solar – a late stage solar company that had raised hundreds of millions of dollars with little to show for it.

The Plaintiffs, who, along with the putative class members, were all customers of National Securities Corporation, allege that Beamreach failed to conduct proper due diligence as required by rules set forth by the Financial Industry Regulatory Authority ("FINRA"), of which Defendant was a member. By ignoring or otherwise failing to follow up on multiple "red flags" that would have caused a reasonably prudent broker-dealer under the same or similar circumstances to reject the Beamreach securities offerings, Defendant National Securities Corporation approved the Beamreach securities offerings and sold them to the

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

Plaintiffs and the Class during the Class Period. Defendant reaped millions of dollars in placement agent fees – to the detriment of the Plaintiffs and the Class – by turning a blind eye to these "red flags".

On February 9, 2017, Beamreach declared bankruptcy and was rendered worthless by virtue of a no-asset Chapter 7 filing. *In re: Beamreach Solar, Inc.* 17-bk-50307, (N.D. Cal. Feb. 9, 2017). As the Plaintiffs have alleged and the evidence will establish, but-for NSC's inadequate due diligence and approval of this offering for sale to NSC customers despite the existence of numerous "red flags", the Plaintiffs and the Class would not have purchased Beamreach through NSC in the first place.

Plaintiffs, on behalf of themselves and other similarly situated investors who purchased Beamreach securities issued by Defendant during the Class Period, seek class certification – which would permit the efficient and effective prosecution of this action on behalf of Plaintiffs and more than one hundred other investors. (Dkt. #54. ¶¶ 7-8). Courts liberally construe the requirements of Federal Rule of Civil Procedure 23 in favor of class certification of securities cases to protect investors. ("In making a class determination in a securities case, the requirements of Rule 23 should be liberally construed in recognition of the rule's policy in favor of class actions." *Blackie v. Barrack*, 524 F.2d 891, 903 (9th Cir.1975), cert. denied, 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *Schwartz v. Harp*, 108 F.R.D. 279, 281 (C.D. Cal. 1985). For the following reasons, this action satisfies the requirements of Rule 23. Plaintiffs respectfully request certification of the Class and Sub-Classes as defined herein:

> **Beamreach Class**
> All persons who invested in Beamreach Offerings (as defined above) through the Defendant, at any time between February 6, 2015 and February 9, 2017 inclusive (the "Class Period").

2

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

**Series D Sub-Class**
All persons who invested in Beamreach Series D (as defined above) through the Defendant, at any time between February 6, 2015 and December 31, 2016 inclusive (the "Sub-Class D Period").

**Series D-1 Sub-Class**
All persons who invested in Beamreach Series D-1 (as defined above) through the Defendant, at any time between June 1, 2016 and February 9, 2017 inclusive (the "Sub-Class D-1 Period").

**Series D-2 Sub-Class**
All persons who invested in Beamreach Series D-1 (as defined above) through the Defendant, at any time between October 1, 2016 and February 9, 2017 inclusive (the "Sub-Class D-2 Period").

Plaintiffs seek to have this case certified as a class action pursuant to Fed. R. Civ. P. 23(b)(3) so the claims of hundreds of investors nationwide can be resolved in one fair and efficient proceeding. Certification is appropriate because the numerous questions of law and fact common to all proposed class members predominate over any individualized issues. Moreover, Plaintiffs' claims and the claims of the proposed class members arise out of a common nucleus of operative facts: NSC's negligent due diligence and its subsequent negligent approval of Beamreach for sale to any of its customers.

Plaintiffs respectfully request the certification of the Class and Sub-Classes set forth above. In addition, Plaintiffs respectfully ask the Court execute the Proposed Order attached as Exhibit 1 and designate Plaintiffs Ginzkey, Fitzgerald, Cerf, and Donner as Class representatives; appoint Stoltmann Law Offices, P.C. and Law Offices of Joshua B. Kons, LLC as Class counsel; and order that notice of the action be provided to the Class.

## II.    STATEMENT OF FACTS.

National Securities Corporation is a securities broker-dealer with both investment banking and retail brokerage operations. (Deposition of Carmelo Troccoli on behalf of NSC

3

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1
2
3
4
5
6
7
8

("Troc Dep.") at 42:11-18, Exhibit 2 at 7).  NSC understood that Beamreach purported to be a high efficiency solar panel manufacturer based out of California that was looking to raise funds to continue its development of high yield solar panels. (Troc Dep. at 99:5-9, Ex. 2 at 25). Prior to Beamreach, NSC had never served as placement agent for another solar company. (Troc Dep. at 135:13-15, Ex. 2 at 39). Beamreach was looking to raise money from anybody and anyone that would invest. (Troc Dep. at 102:8-10, Ex. 2 at 28). Beamreach enlisted NSC as a placement agent to help it raise additional capital.

9
10
11
12
13
14
15

When it serves as a placement agent for a securities issuer like Beamreach, NSC assists a company in raising capital by introducing prospective investors to the issuer. (Troc Dep. at 48:1-6, Ex. 2 at 8). In the case of the Beamreach Series D round, NSC earned a fee of 10% cash and 10% warrants for its role as placement agent. (Troc Dep. at 48:25-49:1, Ex. 2 at 9, 10). The brokers selling Beamreach to NSC clients earned an allocation of the placement agent fee. (Troc Dep. at 49:9-14, Ex. 2 at 11).

16
17
18
19
20
21
22
23
24
25
26

NSC is required to follow FINRA rules. (Troc Dep. at 60:15-17, Ex. 2 at 12). FINRA rules set the standards for which broker-dealers like NSC have to conduct themselves in the securities industry. (Troc Dep. at 61:6-10, Ex. 2 at 13). Under FINRA's suitability rule, NSC was required to have a reasonable basis to conclude the investment at issue is suitable for at least some investors, and NSC must conduct reasonable due diligence to provide it with an understanding of the risks and rewards associated with recommending a security. (Troc Dep. at 64:9-18, Ex. 2 at 14). NSC has adopted and implemented this FINRA rule into its internal policies and procedures. (Troc Dep. at 64:19-22, Ex. 2 at 15).  NSC's understanding of its due diligence obligations is to follow FINRA's guidance and its Written Supervisory Procedures.

27
28

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

(Troc Dep. at 67:15-20, Ex. 2 at 16). NSC expects its employees to follow its Written Supervisory Procedures. (Troc Dep. at 88:21-23, Ex. 2 at 26).

In conducting due diligence, NSC cannot blindly rely on the issuer for information concerning a company. (Troc Dep. at 71:6-9, Ex. 2 at 17). NSC is required to exercise a high degree of care in investigating a Regulation D offering (like Beamreach). (Troc Dep. at 72:23-24, 73:1, Ex. 2 at 18, 19). NSC is required to follow up with Beamreach on any "red flags" or substantial adverse information about the issuer discovered during due diligence. (Troc Dep. at 74:11-15, Ex. 2 at 23).

Once due diligence is completed, a memorandum is prepared and delivered to the Commitment Committee at NSC for approval. (Troc Dep. 85:5-18, Ex. 2 at 24). NSC brokers are prohibited from selling an offering unless it is approved by the NSC Commitment Committee. (Troc Dep. at 85:19-22, Ex. 2 at 25). The NSC Commitment Committee turns down offerings if it does not meet the level of scrutiny [required by NSC], or the committee members do not feel that the risk-reward [proposition] is warranted for the offering. (Troc Dep. at 158:1-5, Ex. 2 at 48). Once the Commitment Committee approves, the sales by NSC's retail brokers starts. (Troc Dep. at 165:11-13, Ex. 2 at 49).

Consistent with NSC's admissions, it is unquestioned that as a FINRA broker-dealer, NSC was obligated to follow FINRA rules and regulations in connection with the offer and sale of securities including Beamreach. (Dkt. #1, ¶¶ 17, 55). Pursuant to FINRA Rule 2111.05(a), FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26, NSC is required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers. (Dkt. #1, ¶ 58). NSC's compliance manuals, supervision manuals, and internal practices and procedures also detail the

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

requirement to perform due diligence when selling private placements. (Dkt. #1. ¶ 59). This duty established in the various regulations and NSC's internal procedures cannot be challenged by NSC and neither can the uniform application of these regulations and procedures. Importantly, no rule or regulation allows a broker-dealer to abdicate its responsibilities to clients just because they may be wealthy or sign subscription documents. In fact, broker/dealer industry standards hold just the opposite. *See Department of Enforcement v. Kernweis,* 2000 WL 33299605 (NASD Disciplinary Proc. No. C02980024, Feb. 16, 2000) (holding that the suitability obligation is in no way abrogated by documents signed by client even if client is willing to bet the ranch).

The controlling regulations make clear that the duty breached by NSC remains regardless of what is disclaimed. FINRA Rule 2111.02 explicitly states that a broker-dealer cannot disclaim any responsibilities under the suitability rule. Therefore, NSC cannot hide behind risk disclosures because it is accused of failing to discharge its reasonable-basis suitability obligation. In NASD Notice to Members 03-71[1], NSC's regulator stated:

> [P]erforming appropriate due diligence is crucial to a member's obligation to undertake the required reasonable-basis suitability analysis. A **reasonable-basis suitability determination is necessary to ensure that an investment is suitable for some investors** (as opposed to a customer-specific suitability determination, discussed below, which is undertaken on a customer-by-customer basis). Thus, the reasonable-basis suitability analysis can only be undertaken when a member understands the investment products it sells. Accordingly, **a member must perform appropriate due diligence to ensure that it understands the nature of the product**, as well as the potential risks and rewards associated with the product. Moreover, the fact that a member intends to offer an NCI [non-conventional investment] **only to institutional investors** does not relieve the member of its responsibility to conduct due diligence and a reasonable-basis suitability analysis.

NASD NTM 03-71, November 2003 at 758.

---

[1] The NASD and NYSE merged into FINRA on July 26, 2007 after approval by the SEC.

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NSC was mandated to thoroughly investigate the Beamreach offerings and determine, based on this investigation whether to approve the investment for sale to clients rather than blindly rely on whatever the PPMs state or what NSC was told by Beamreach. *See* (Dkt. #1, ¶¶ 60-63). Controlling regulations provide that the broker-dealer in a Regulation D offering must, at a minimum, conduct a reasonable investigation concerning: the issuer and its management; the business prospects of the issuer; the assets held by or to be acquired by the issuer;  the claims being made; and the intended use of proceeds of the offering.  (Dkt. #1, ¶ 60). NSC could not just rely on the materials or information provided by Beamreach.

In order to comply with FINRA Rule 2111.05, NSC was required to make a decision based on its reasonable due diligence of Beamreach: approve it for sale to its clients, or reject the offering and refuse to sell it. This didn't happen here. NSC's conflicts of interest, in acting as both the primary broker-dealer and placement agent for Beamreach, prevented it from adhering to any sense of reasonableness.  Beamreach was a company with such disastrous debt service, with no revenue, with no legitimate customers, and with IP that ultimately had little commercial value. Soliciting investors to pour money into the company so that it can pay its creditors was not speculation. Rather, it was deceitful, tantamount to fraud, and at the very least reckless.

FINRA reminded NSC of this obligation multiple times prior to the Beamreach offerings, and provided detailed guidance on what FINRA considered reasonable due diligence in FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26. (Dkt. #1, ¶ 58). NSC ultimately incorporated FINRA Regulatory Notice 10-22 into its Written Supervisory Procedures. (Troc Dep. at 64:19-22, Ex. 2 at 15).

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

Ultimately, under the circumstances NSC had a legal obligation to decline the invitation from Beamreach to sell its securities to NSC customers. NSC's conflict of interest, however, clearly clouded its judgment and NSC looked to the size of the fees it could earn from selling Beamreach to its customers.

NSC understood that it was required to exercise a high degree of care in investigating Regulation D offerings. (Troc. Dep 72:23-25; 73:1, Ex. 2 at 18-19). NSC understood that it was required to exercise a high degree of care in independently verifying an issuer's representations and claims. (Troc. Dep. 73:2-6, Ex. 2 at 20). NSC understood that, when an issuer seeks to finance a speculative new venture, that broker-dealers must be particularly careful. (Troc. Dep. 73:7-14, Ex. 2 at 21). National also understood, at all times relevant, that the fact that its customers may be sophisticated or knowledgeable does not obviate the duty to investigate. (Troc. Dep. 73:15-19, Ex. 2 at 22). These standards applied the same to all investors in the Class, including the D Sub-Class, D-1 Sub-Class, and D-2 Sub-Class. (Troc. Dep. 16:12-21, Ex. 2 at 4).

NSC also understood, specific to Beamreach, that at the time it approved the initial offering in February 2015, that:

a)  Beamreach had no manufacturing facility in Asia despite the fact that a large influx of Asian solar manufactures drove the pricing below the cost of production causing many producers to shut plants or cease production; (Troc. Dep. 125:12-17, Ex. 2 at 30). In fact, Mr. Trocolli did not even consider this to be a red flag requiring further inquiry, despite the fact that Beamreach's success or failure was linked to a high-volume manufacturing facility

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

somewhere away from the U.S. where cost of production is much lower (Troc. Dep. 125:18-24; 135:3-12, Ex. 2 at 33 and 40);

b)  No one at NSC had independently verified the 340 megawatts memorialized by memoranda of understanding (MOUs) by contacting the purported clients to determine the viability of the non-binding MOUs; (Troc. Dep. 112:3-7, Ex. 2 at 31);

c)  NSC understood that many novel solar technologies failed to secure required funding and were forced to wind down, and that more than one-hundred solar companies were sold or liquidated, and specifically, that NSC fully understood that Beamreach was operating in a very challenging time for the solar industry. (Troc. Dep. 125:25; 126: 1-12, Ex. 2 at 34-35);

d)  No one at NSC investigated the liquidation value of any of the other solar companies that were forced to wind down prior to Beamreach (Troc. Dep. 126:21-24, Ex. 2 at 36);

e)  Beamreach had a "pilot" plant only in Milpitas, California which was incapable of any large-scale production. (Troc. Dep. 108:21-25, 109:1-3, Ex. 2 at 29-30);

f)  NSC performed no liquidation valuation of Beamreach even though it was subject to a going concern disclosure in its financial reports. (Troc. Dep. 130:7-14, Ex. 2 at 37);

g)  NSC did not even speak to Opus Bank about its secured credit facility it extended to loan, which was backed by all of the assets of the company, including its IP portfolio. (Troc. Dep 133:24-25; 134:1-4, Ex. 2 at 38-39);

9

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

h) Beamreach's product was not commercially tested. (Troc. Dep. 137:18-20, Ex. 2 at 42);

i) There was no valuation report on Beamreach's IP portfolio, which was at the time the company's core asset securing the loan from Opus Bank. (Troc. Dep. 142:19-24, Ex. 2 at 43); and

j) Beamreach was not meeting budget projections and generally when compared to the previous year's budget, had not done well. (Troc. Dep. 151:1-20, Ex. 2 at 44). NSC made no further inquiry and demanded no stricter internal controls at Beamreach despite this being a "red flag". (Troc. Dep. 151:24-25; 152:1-2; 17-20, Ex. 2 at 45-47).

NSC knew these facts, amongst many others, and still approved of the Series D round. It is Plaintiffs' contention that this approval to sell the Series D round to the Class was negligent because it was not up to the standards required of National as a securities broker-dealer (by both FINRA rules and its own internal policies and procedures), and that this negligence affected the Plaintiffs and the putative class on a uniform basis.

With respect to the later Beamreach offerings, the red flags were many and were recognized by NSC, and still, the investment was approved for sale to NSC's clients. For example, by the time the Series D-1 equity offering was issued in September 2016, NSC believed investing in additional equity in Beamreach was not a good idea. (Troc. Dep. 197:19-25; 198:1-3, Ex. 2 at 56, 57).  Despite this, and despite not doing any due diligence on the Series D-1 equity offering, NSC brokers still facilitated the sale of these equity interests to NSC customers, including Plaintiff Donner. (Dkt. #1. ¶ 123). Likewise the Series D-2 offering, as defined by Plaintiffs, was in reality a conversion of the D-1 Equity offering into a

10

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

debt offering of promissory notes. The D-2 offering was mired with an almost enumerable number of red flags, including:

    a) That Beamreach was running out of cash; (Troc. Dep. 190:5, Ex. 2 at 50);

    b) That Beamreach was looking into selling equipment and IP (Troc. Dep. 192:2-12, Ex. 2 at 51);

    c) That Beamreach was a distressed company; (Troc. Dep. 192:11-14, Ex. 2 at 52);

    d) That Fortress, a private equity firm, had declined to loan money to Beamreach secured by any portion of the company's IP; (Troc. Dep. 197:5-12, Ex. 2 at 55);

    e) Beamreach board members began to drop out; (Troc. Dep, 203:15-17, Ex. 2 at 61);

    f) That there were big red flashing lights on Beamreach as a viable entity in the near future; (Troc. Dep. 205:13-17, Ex. 2 at 63);

    g) That the D-2 offering was essentially, in gambling terms, doubling down; (Troc. Dep. 217:25; 218:1, Ex. 2 at 64, 65);

    h) That the D-2 offering was essentially a Hail Mary with minimal chance of getting [investor] money back; (Troc. Dep. 220:10-15, Ex. 2 at 66);

    i) That NSC was aware that Beamreach was in discussions with Bankruptcy counsel; (Troc. Dep 227:7-14, Ex. 2 at 68);

Despite these adverse facts and "red flags", which clearly cast doubt on the business prospects of the company, NSC still never contacted any of Beamreach's purported customers (Troc. Dep 202:25; 203:1-3, Ex. 2 at 59, 60);

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

a) Did not verify any manufacturing capability in Malaysia, Taiwan, or anywhere else (Troc. Dep. 196:3-6, 15-18, Ex. 2 at 53, 54);

b) NSC did not get a valuation of the vaunted Beamreach IP portfolio; (Troc. Dep. 203:21-23, Ex. 2 at 62);

c) That NSC was unaware whether the price point for Beamreach's product was a concern for customers, and generally was unaware of customer concerns about the product. (Troc. Dep. 201:1-8, Ex. 2 at 58);

d) That during the D-2 timeframe, NSC had no idea what the Beamreach IP might be worth, and that whatever it was worth, was encumbered by the Opus loan; (Troc. Dep. 226:9-14, Ex. 2 at 67);

e) That NSC was aware that Beamreach was in discussions with Bankruptcy counsel; (Troc. Dep 227:7-14, Ex. 2 at 68);

f) That NSC was, in connection with D-2 offering, concerned about "getting sued for this": (Troc. Dep 230:14-23, Ex. 2 at 69).

In connection with evaluating the foregoing red flags for Beamreach investors, a reasonably prudent broker-dealer firm under the same or similar circumstances would not have approved the Beamreach Offerings for sale to any investor when considering these risks because the risk of a complete loss in the short term far outweighed any potential long term rewards, even for those investors that sought to speculate with their funds. (Dkt. #1. ¶ 81). By approving the Beamreach Offerings for sale to the Plaintiffs and the Class notwithstanding these red flags, NSC acted in a manner which a reasonably prudent broker-dealer firm under the same or similar circumstances would not have. (Dkt. #1. ¶ 82). These failures apply uniformly amongst the Plaintiffs and all members of the Class.

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1
2
3
4
5
6
7
8
9
10
11
12
13

To whatever degree NSC's affirmative defenses merit consideration, which Plaintiffs do not concede, those affirmative defenses also apply uniformly across the class. NSC posits an "assumption of risk" affirmative defense in its Answer. (Dkt. #31 at 19). NSC's argument is that even if NSC was negligent and did not perform industry standard due diligence on the offerings at issue or was negligent in its approval of Beamreach, that the Class members were apprised of the risks through the PPMs and accepted them as evidenced by boxes checked on subscription agreements. As previously stated, the receipt of a private placement offering document disclosing risks or the execution of subscription documents in no way obviates NSC's duties in connection with FINRA rules or NSC's own internal policies and procedures (*supra* at 6). Furthermore, even if this assumption of risk defense has merit, it applies uniformly to the Plaintiffs and to the putative class.

14

### III.    ARGUMENT

15

### A.  Class Certification is Appropriate under Rule 23

16
17
18
19
20
21
22
23
24
25
26

The Complaint details negligence and the unjust enrichment by NSC that harmed over 100 similarly situated investors nationwide. The negligence at issue is the due diligence conducted by NSC of the Beamreach offerings, and its subsequent approval of the Beamreach offerings for sale to the Plaintiffs and putative class members. The common questions of law and fact surrounding NSC's due diligence into Beamreach, and its subsequent approval of the Beamreach offerings are uniform among the Plaintiffs and the Class, and predominate over individualized ones. "The inquiry is not whether the class will prevail on the merits of their claims but whether common questions capable of class-wide resolution exist and whether those common questions predominate over individualized ones." *Fosbre v. Las Vegas Sands*

27
28

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

*Corp.*, No. 2:10-CV-00765-APG, 2015 U.S. Dist. LEXIS 77774 at *7 (D. Nev. June 15, 2015), citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013).

## B. The proposed class meets the requirements of Rule 23(a)

For a class to be certified, Plaintiffs must satisfy the prerequisites of Rule 23(a) and one requirement of Rule 23(b). Under Rule 23(a) a plaintiff must establish: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Peoples v. United Servs. Auto. Ass'n*, 18-1173RSL, 2019 U.S. Dist. LEXIS 71439*3 (W.D. Wash. April 26, 2019). "Any doubts regarding the propriety of class certification generally should be resolved in favor of certification." *Taylor v. Universal Auto Group I, Inc.*, No. 3:13-cv-05245-KLS, 2014 U.S. Dist. LEXIS 164312 (W.D. Wash. November 24, 2014) (citations omitted). "Although certification inquiries such as commonality, typicality, and predominance might properly call for some substantive inquiry, '[t]he court may not go so far … as to judge the validity of [the plaintiffs'] claims.'" *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Intern. Union AFL-CIO, CLC* v. *Conoco Phillips Co.*, 593 F.3d 802, 808–09 (9th Cir. 2010) (internal marks omitted; quoting *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)). Ultimately, the district court has broad discretion to certify a class. *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir. 2010).

### 1. Numerosity

The Court will find numerosity "where the class is so numerous that joinder of all members is 'impracticable'." Fed. R. Civ. P. 23(a)(1). See also, *In re Cooper Cos. Sec. Litig.*,

---

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1   254 F.R.D. 628, 633 (C.D. Cal. 2009). Impracticable does not mean impossible, only that it

2   would be difficult or inconvenient to join all members of the class. *Harris v. Palm Springs*

3   *Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964). "No exact numerical cut-off is

4   required, rather, the specific facts of each case must be considered." *Cooper*, at 633.

5           "Often, the number of class members by itself is sufficient to establish the

6   impracticability of joining them as plaintiffs." *Kirkpatrick v. Ironwood Communications, Inc.*,

7   Case No. C05-1428JLR, 2006 U.S. Dist. LEXIS 57713 at *9, 10 (W.D. Wash. Aug. 16, 2006)

8   (citing *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir.1982), vacated on

9   other grounds by 459 U.S. 810 (1982)). Numerosity has been held presumptively satisfied

10  when a proposed class comprises forty or more members. *See McCluskey v. Trs. of Red Dot

11  Corp. Emp. Stock Ownership Plan & Trust*, 268 F.R.D. 670, 673–74 (W.D. Wash. 2010); *see

12  also Amone v. Aveiro*, 226 F.R.D. 677, 684 (D. Haw. 2005) ("[I]n light of prevailing

13  precedent, the difficulty inherent in joining as few as 40 class members should raise a

14  presumption that joinder is impracticable, and the plaintiff whose class is that large or larger

15  should meet the test of Rule 23(a)(1) on that fact alone."). "In addition to the number of

16  potential class members, the Court may consider 'the geographic diversity of class members,

17  [and] the ability of individual claimants to institute separate suits….'" *Gonzalez v. U.S. Dept.

18  of Homeland Sec.*, 239 F.R.D. 620, 628 (W.D. Wash. 2006), vacated on other grounds, 508

19  F.3d 1227 (9th Cir. 2007).

20          NSC has admitted that there were more than 100 investors that purchased Beamreach

21  through NSC. (Troc. Dep. at 14:20-22, Ex. 2 at 3). Plaintiffs' counsel has identified over 170

22  investors in connection with its review of NSC's books and records, who reside in at least 23

15

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

different states. (Dkt. #54, ¶¶ 7-9).  It would be highly impracticable and cost prohibitive to join all of these investors into a single action.

In *Cooper*, 254 F.R.D. at 634, the court held that that while no "exact numerical cut-off is necessary," "numerosity is presumed where the plaintiff class contains forty or more members," and inferred that since 36 million shares were outstanding, "more than 40 individuals purchased stock over the course of [the Class Period]." This Court should, therefore, find that the Class is sufficiently numerous that joinder is impracticable.

### 2. Commonality

Rule 23(a)(2) requires that common question of law or fact exist among class members. Not all questions of fact and law need to be common to satisfy Rule 23(a)(2). To satisfy this element, the "[p]laintiff must allege a 'common contention of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) (quoting *Dukes*, 131 S. Ct. at 2551). In other words, "[w]hat matters to class certification is not the raising of common 'questions' but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*. (internal marks and citation omitted). It is not necessary that members of the proposed class "share every fact in common or completely identical legal issues." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2009). Moreover, the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988). The Ninth Circuit construes commonality liberally. *Id.*

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1
2
3
4
5
6

Courts construe this factor "permissively", and both "shared legal issues with divergent factual predicates" and "a common core of salient facts coupled with disparate legal remedies" suffice. *Id.* at 1019; *cf. Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (commonality where claims depend on common contention that is capable of class-wide resolution). The Class satisfies the commonality requirement.

7
8
9
10
11
12
13
14
15

NSC does not dispute the uniform nature of its due diligence and approval amongst the Class. In fact, it admitted it. NSC admitted that in terms of its approval of Beamreach for sale by its retail brokers, the same issues would apply to all investors in each Beamreach securities offering. (Troc. Dep. at 16:12-21, Ex. 2 at 4). NSC also admitted that the same evaluation is done at the NSC level for every member of the Class that invested in any Beamreach offering through NSC. (Troc. Dep. at 21:13-15, Ex. 2 at 5). If a private placement securities offering is not approved for sale at the NSC level, then NSC brokers cannot sell the offering to NSC customers. (Troc. Dep. at 24:11-17, Ex. 2 at 6).

16
17
18
19
20
21
22
23
24

Here, common questions of fact and law include: (1) whether NSC breached its duty to conduct reasonable due diligence on Beamreach; (2) whether NSC failed to understand the risks and rewards of offering securities in Beamreach in considering whether to approve Beamreach for sale to NSC customers; (3) whether NSC was negligent in approving each of the Beamreach Offerings for sale to its customers; (4) whether NSC failed to act as a reasonably prudent broker-dealer would have under the same or similar circumstances in connection with its due diligence and approval of the Beamreach offerings; and (5) whether NSC was unjustly enriched thereby.

25
26
27

The crux of the case is whether NSC failed in its gatekeeping function prior to any individualized inquiry by investors. The truth or falsity of any of the foregoing questions of

28

17

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

fact and law would resolve an issue that is central to the validity of each one of these claims in a single stroke. Due to the numerous common questions of law and fact among the Class, the commonality requirement is satisfied.

### 3. Typicality

Typicality is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Typicality refers to the nature of the claim or defense of the Class Representative, and not to the specific facts from which it arose or the relief sought." *Connecticut Retirement Plans and Trust Funds*, 2009 U.S. Dist. LEXIS 71653, at *14 (C.D. Cal., August 12, 2009). Typicality exists when class "members have the same or similar injury, the action is based on conduct that is not unique to the named plaintiff, and when the wrongdoing injured class member similarly." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Rule 23(a)'s typicality requirement ensures that the interests of the representative plaintiff align with those of the Class.

Plaintiffs' claims are substantially similar to those of the Class, satisfying the typicality requirement. Just as with the Class members, each of the Plaintiffs invested in Beamreach through NSC after NSC conducted due diligence on Beamreach and approved it for sale. And just like the Class members, the Plaintiffs each suffered a complete loss of the Beamreach investments they made as a result of Beamreach's bankruptcy. The same negligence regarding NSC's due diligence and approval of Beamreach, as well as NSC's and unjust enrichment, affected the Plaintiffs in the same way as each Class member. No evidence exists that render their claims in any way whatsoever atypical of those of the Class and no hint of a unique defense exists that would otherwise defeat the typicality of his claims

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant cannot defeat typicality based on an individual Plaintiff's reliance on a broker. *In re Wash. Mut., Inc.*, 2010 U.S. Dist. LEXIS 142992, *41-42 (W.D. Wash. 2010) (Reliance on investment advisor does not defeat typicality in investment case "Reviewing the materials submitted, the Court finds [Named Plaintiff] typical."). As such, the Class satisfies the typicality requirement.

### 4. Adequacy

A class representative who "will fairly and adequately protect the interests of the class" is adequate. *Cooper,* 254 F.R.D. at 636. The inquiry focuses on the "ab[ility] to prosecute the action vigorously through qualified counsel" and the absence of "antagonistic or conflicting interests with the unnamed members of the class." *Hansen v. Ticket Track, Inc.,* 213 F.R.D. 415 (W.D. Wash. 2003); *see also, Campbell v. Vitran Express Inc*, No. CV 11-5029 RGK (SHx), 2015 U.S. Dist. LEXIS 155512, at *15 (C.D. Cal. Nov. 12, 2015) *citing Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs meet these requirements.

First, Plaintiffs have engaged qualified, experienced and capable attorneys. Proposed Class Counsel are highly experienced in broker-dealer arbitration and litigation, and have developed expertise in the application of FINRA rules to broker-dealers. Each has the ability and willingness to prosecute this action vigorously, and have experience in complex litigation and class action matters. *See* (Dkt. #54, ¶ 2); (Dkt. #55, ¶¶ 2 – 8); (Dkt. #56, ¶¶ 3 – 7); (Dkt. #57, ¶¶ 4-12). Plaintiffs' counsel are dedicated to prosecuting the claims of the Class, and also have the resources to do so. *Id*. Accordingly, the adequacy requirement is satisfied.

Second, Plaintiffs are well suited to represent the Class. Plaintiffs' interests are the same as those of the absent Class members, and there are no conflicts between them and the

19

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

Class. Each Plaintiff has been actively involved in this litigation and each is willing to serve as a representative party on behalf of the Class and understands their responsibility as Class representative to protect and advance the interests of absent Class members in the litigation. Not only are Plaintiffs willing and able to prosecute this action on behalf of the Class to a successful conclusion, but their interests and those of the Class are aligned.

All Class members have suffered losses due to their investment in Beamreach securities. It is in each Plaintiff's interests, individually and together, to prosecute this action on behalf of the Class vigorously. Accordingly, Plaintiffs "will fairly and adequately protect the interests of the class" and they are adequate class representatives. *See* Fed. R. Civ. P. 23(a)(4).

## C. The Proposed Class Satisfies Rule 23(b)(3)

Where issues common to the Class predominate over other issues, a class satisfies the predominance requirement. *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015).

### 1. Common Questions of Law and Fact Predominate over Individual Questions

The predominance inquiry concerns whether a proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997). "To meet the predominance requirement, common questions of law and fact must be a significant aspect of the case…[t]hat can be resolved for all members of the class in a single adjudication." *Durant v. State Farm Mut. Auto Ins. Co.*, 2017 U.S. Dist. LEXIS 34157 *14 (W.D. Wash. Mar. 9, 2017). "Predominance is met by showing that the common questions can be proven by evidence common to the class." *Wilcox v. Swapp*, 330 F.R.D. 584, 593 (W.D. Wash. 2019), citing *Amgen Inc. v. Conn. Ret. Plans &*

20

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

*Trust Funds*, 568 U.S. 455, 467 (2013). *See also Hanlon*, 150 F.3d at 1022 ("When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."). As to damages, plaintiffs need only show that "damages could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Hatamian v. Advanced Micro Devices, Inc*., No. 14- CV-00226 YGR, 2016 U.S. Dist. LEXIS 34150, at *25 (N.D. Cal. Mar. 16, 2016) (*interpreting Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013)).

As discussed above, common questions predominate because NSC's negligence in the due diligence and approval of the Beamreach Securities affected all class members in the same manner. "The predominant questions of law or fact at issue in this case are the alleged [omissions of material fact] Defendants made during the Class Period and are common to the class." *In re Emulex Corp.*, 210 F.R.D. 717, 721 (C.D. Cal. 2002). Once these questions are resolved, all that remains is the mechanical computation of damages suffered by each class member. *Id.*

In this case, the common questions surrounding NSC's due diligence on Beamreach and its subsequent approval of the Beamreach securities for sale to NSC customers predominates the Class, and can be handled in a single adjudication. Once this common liability question is adjudicated, the damages can easily and efficiently be calculated based on NSC's books and records which indicate investor name, address, date of investment, and investment amount. (Dkt. # 54, ¶ 10). Those issues cannot defeat predominance. *Id.*

Furthermore, NSC's due diligence was a necessary step prior to approving Beamreach for sale. Without NSC's due diligence of Beamreach and NSC's subsequent approval

21

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

1
2
3
4
5
6
7
8

(clearance for sale) of the Beamreach securities to NSC customers, NSC's brokers would not have been authorized to sell Beamreach and the Class would not have been able to invest in Beamreach through NSC. As a result, the issue of NSC's negligence in connection with its due diligence (step 1) of Beamreach, and approval of Beamreach for sale (step 2), predominates the Class. Because the central focus of this litigation is NSC's due diligence of Beamreach, and subsequent approval of Beamreach for sale to its customers, common issues predominate over any individualized issues, the predominance requirement is satisfied.

9

**2.   A Class Action is Superior to Other Methods for Resolving this Controversy**

10
11
12
13
14
15
16
17
18
19
20

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "A class action may be superior if class litigation of common issues will reduce litigation costs and promote greater efficiency, or if no realistic alternative exists." *Connor v. Automated Accounts, Inc.*, 202 F.R.D. 271 (E.D. Wash. 2001). A court must, in terms of fairness and efficiency, balance the merits of a class action against those of available alternative methods of adjudication. *Id.* For instance, a class action is appropriate if duplicative lawsuits with potentially inconsistent results would be avoided. *Mortimore v. Fed. Deposit Ins. Corp.*, 197 F.R.D. 432, 438 (W.D. Wash. 2000).

21
22
23
24
25
26

In determining the issue of superiority, Rule 23(b)(3) enumerates the following factors that this court should consider: the interests of class members controlling and maintaining their own cases, already filed litigation, the benefits on concentrating common litigation in one forum, and "the likely difficulties in managing a class action." *See* Fed. R. Civ. P. 23(b)(3).

27
28

22

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

Each factor is satisfied here. Given the large number of class members, the geographic dispersion of the class members, and the multitude of common issues present, the use of the class device is the most efficient and fair means of adjudicating the claims that arise out of NSC's negligence and unjust enrichment with regard to the Beamreach offerings. Absent class treatment, each investor would be forced to bring an individual arbitration claim through FINRA's arbitration forum. (Dkt. # 55, ¶ 8). Class treatment is superior to multiple individual suits or piecemeal arbitration proceedings because it conserves judicial resources (individual FINRA arbitration proceedings are extremely expensive for both investors and NSC), promotes consistency as each FINRA arbitration panel is of different composition, and efficiency of adjudication as various FINRA arbitration panels may rule differently on the common issues presented in this case.

Finally, Plaintiffs foresee no management difficulties that would preclude this action from being maintained as a class action and are confident that any potential management problems can be addressed and resolved by the parties or by this Court. For those reasons, a class action is superior for the fair and efficient adjudication of the claims of Plaintiffs and the Class.

### 3. The Class is Ascertainable based on Defendant's Books and Records

In addition to meeting the requirements of Rule 23, a class must be ascertainable before it can be certified. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009). A class is adequately defined and ascertainable if it is administratively feasible for the court to determine whether a particular individual is a member. *Id*.

As discussed herein, Defendant's books and records reveal the name and address of each Class member, as well as information such as their investment amount, and date of

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1    investment. (Dkt. #54, ¶ 10). The creditor matrix also reveals the name and address of each

2    Beamreach creditor to cross reference with NSC's books and records. The members of the

3    proposed Class and Sub-Classes are reasonably ascertainable here.

4

5    **IV.    CONCLUSION**

6        For the foregoing reasons, Plaintiffs respectfully request that this Court (1) certify this

7    action as a class action on behalf of the class; (2) appoint Lead Plaintiffs as Class and Sub-

8    Class representatives; (3) appoint Stoltmann Law Offices, P.C. and Law Offices of Joshua B.

9    Kons, LLC as Class counsel; (4) direct the parties to meet and confer on the form of providing

10   notice and require the parties to file their proposal for providing notice for Court approval

11   within sixty days from entry of the Order granting class certification; and (5) grant such other

12   and further relief as is warranted.

13

14       Dated: November 3, 2020

15                                              Respectfully submitted,

16                                              **JAMES GINZKEY, RICHARD**
                                                **FITZGERALD, CHARLES CERF, BARRY**
17                                              **DONNER**,
                                                Plaintiffs

18
                                                By: /s/ *David Neuman*
19                                                      One of Their Attorneys

20   Joseph Wojciechowski, Esq.

21   Alex Loftus, Esq.
     Sara Hanley, Esq.
22   *Pro Hac Vice*
     STOLTMANN LAW OFFICES, P.C.
23   161 N. Clark St., 16th Floor
     Chicago, Illinois 60601
24   PH: (312) 332-4200
25   joe@stoltlaw.com
     alex@stoltlaw.com
26   sara@stoltlaw.com

27   Joshua B. Kons, Esq.

28
                                                24
     MOTION FOR CLASS CERTIFICATION                          STOLTMANN LAW OFFICES, P.C.
     AND SUPPORTING BRIEF                                      161 North Clark St., 16th Floor
     Case No. 2:18-cv-1773                                          Chicago, Illinois 60601
                                                                       312-332-4200

LAW OFFICES OF JOSHUA B. KONS, LLC
*Pro Hac Vice*
92 Hopmeadow St., Lower Level
Weatogue, Connecticut 06089
PH: (860) 920-5181
joshuakons@konslaw.com

David Neuman, Esq. (WSB #48176)
ISRAELS NEUMAN PLC
10900 NE 8th Street, Suite 1000
Bellevue, Washington 98004
dave@israelsneuman.com

*Attorneys for Plaintiffs*

25

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1

2

<u>**CERTIFICATE OF SERVICE**</u>

I, David Neuman, hereby certify that on this 3rd day of November, 2020, the foregoing

3

was electronically filed with the Clerk of the United States District Court for the Western

4

District of Washington, Seattle, using the CM/ECF system, which will send notification of

5

6

such filing to the below counsel:

7

Danilo (Daniel) Buzzetta
BAKER & HOSTETLER LLP

8

45 ROCKFELLER PLAZA
NEW YORK, NY 10111

9

dbuzzetta@bakerlaw.com

10

Douglas W Greene

11

BAKER HOSTETLER LLP (SEA)
999 THIRD AVENUE, SUITE 3900

12

SEATTLE, WA 98104
dgreene@bakerlaw.com

13

14

James Raymond Morrison
BAKER HOSTETLER LLP (SEA)

15

999 THIRD AVENUE, SUITE 3900
SEATTLE, WA 98104

16

jmorrison@bakerlaw.com

17

Fred Knopf

18

BAKER HOSTETLER, LLP
45 Rockefeller Plaza

19

New York, NY 10111-0100
fknopf@bakerlaw.com

20

*/s/ David Neuman*

21

David Neuman

22

23

24

25

26

27

28

1

MOTION FOR CLASS CERTIFICATION
AND SUPPORTING BRIEF
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200