UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL SECURITIES CORPORATION, a Washington Corporation,<br><br>Defendant. | Case No. C18-1773RSM<br><br>ORDER GRANTING MOTION FOR CLASS CERTIFICATION |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiffs' Motion for Class Certification, Dkt. #53. Defendant National Securities Corporation ("NSC"), opposes. The Court has determined that oral argument is unnecessary. For the reasons stated below, the Court GRANTS this Motion.

## II.   BACKGROUND

Defendant NSC is a registered securities broker-dealer headquartered in Seattle. Dkt. #62 ("Troccoli Decl."), ¶ 11. Plaintiffs James Ginzkey, Richard Fitzgerald, Charles Cerf, and

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 1

Barry Donner used NSC's services to purchase investments in a company called Beamreach that produced solar panels for residential and commercial use. Dkt. #1. Plaintiffs allege that Beamreach failed to conduct proper due diligence as required by rules set forth by the Financial Industry Regulatory Authority ("FINRA"). *Id*.

As NSC understood it, Beamreach purported to be a high efficiency solar panel manufacturer based out of California that was looking to raise funds to continue its development of high yield solar panels. Dkt. #53-2 ("Troccoli Dep.") at 99:5-9. Beamreach was looking to raise money from "anybody and anyone that would invest." *Id*. at 102:8-10. Beamreach enlisted NSC as a placement agent to help it raise additional capital by introducing prospective investors to the company. *Id.* at 48:4-6.

NSC is required to follow FINRA rules. *Id.* at 60:15-17. Under FINRA's suitability rule, NSC was required to have a reasonable basis to conclude the investment at issue is suitable for at least some investors, and NSC was required to conduct reasonable due diligence to provide it with an understanding of the risks and rewards associated with recommending a security. *Id.* at 64:9-18. NSC has adopted and implemented this FINRA rule into its internal policies and procedures. *Id.* at 64:19-22.

Pursuant to FINRA Rule 2111.05(a), NSC is required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers. FINRA Rule 2111.02 explicitly states that a broker-dealer cannot disclaim any responsibilities under the suitability rule.

Of great interest to this litigation, but not necessarily this Motion, Plaintiffs have detailed many "red flags," they allege NSC should have noticed about Beamreach. *See* Dkt. #14 at 13–17.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 2

As outlined in the Complaint, in February 2015, NSC began acting as a placement agent for Breamreach's Series D securities offering. The securities purchased by Plaintiffs and Class Members in the Series D round consisted of preferred stock, beginning in February 2015 (the "Series D Offering"). A secondary offering in June 2016, the Series D-1 preferred stock round, was initially an equity offering (the "Series D-1 Offering") then was switched to a 9% convertible promissory note offering a 300% "principal step up" in the event of an acquisition, in November 2016 (the "Series D-2 Offering"). NSC acted as both the primary placement agent and exclusive broker/dealer for the Beamreach Offerings. The total capital raised by NSC in the Beamreach Offerings was approximately $34.5 million. In the case of the Beamreach Series D round, in which Plaintiffs participated, NSC earned a fee of 10% cash and 10% warrants for its role as placement agent. *Id.* at 48:25-49:1. The brokers selling Beamreach to NSC clients earned an allocation of the placement agent fee. *Id*. at 49:9-14.

The Beamreach Offerings were only made to "a limited group of sophisticated 'accredited investors' within the meaning of Rule 501(a) under the Securities Act of 1933 as amended (the 'Securities Act'), in a private placement designed to be exempt from registration under the Securities Act, and other applicable securities laws." Dkt. #20-1 at 2; Dkt. #20-2 at 2; Dkt. #20-3 at 4. "Accredited investors" are defined by law as investors whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 or they have an annual income exceeding $200,000 in each of the two most recent years or joint income with their spouse during those years in excess of $300,000. *See* 17 C.F.R. §230.501(a)(5), (6).

The Series D and D-1 Offerings were presented to investors through private placement memoranda ("PPMs"). Dkts #20-1 and #20-2. The Series D-2 Offering was presented as a supplement to the Series D-1 Offering PPM (collectively, the PPMs and its supplements are

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 3

identified as the "Beamreach PPMs"). Dkt. #20-3. In each PPM, NSC made warnings to investors about the high-risk nature of investing in Beamreach.

Plaintiffs allege they relied on NSC's "approval of the Beamreach Offerings for sale" to make their investments in Beamreach. Dkt. #1 at 25. On November 15, 2016, Plaintiff Ginzkey invested $89,214.75 in the Series D2 Offering. On April 30, 2015, Plaintiff Fitzgerald invested $175,000 in the Series D offering; on October 28, 2016, Fitzgerald invested $12,745 in the Series D-2 offering. On February 9, 2016, Plaintiff Cerf invested $52,479 in the Series D offering. On April 10, 2015, Plaintiff Donner invested $149,940 in the Series D offering; on October 20, 2016, Donner invested another $100,459 in the Series D-1 offering.

On February 9, 2017, Beamreach filed for Chapter 7 bankruptcy citing a "catastrophic cash flow situation" and "loans due." Plaintiffs' investments resulted in a total loss. *See In re: Beamreach Solar*, Inc. 17-bk-50307, (N.D. Cal. Feb. 9, 2017).

Plaintiffs filed this putative class action on December 10, 2018, asserting claims of negligence and unjust enrichment. Dkt. #1.

Plaintiffs request certification of the Class and Sub-Classes as follows:

> **Beamreach Class**
>
> All persons who invested in Beamreach Offerings (as defined above) through the Defendant, at any time between February 6, 2015 and February 9, 2017 inclusive (the "Class Period").
>
> **Series D Sub-Class**
>
> All persons who invested in Beamreach Series D (as defined above) through the Defendant, at any time between February 6, 2015 and December 31, 2016 inclusive (the "Sub-Class D Period").
>
> **Series D-1 Sub-Class**

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 4

> All persons who invested in Beamreach Series D-1 (as defined above) through the Defendant, at any time between June 1, 2016 and February 9, 2017 inclusive (the "Sub-Class D-1 Period").
>
> **Series D-2 Sub-Class**
>
> All persons who invested in Beamreach Series D-1 (as defined above) through the Defendant, at any time between October 1, 2016 and February 9, 2017 inclusive (the "Sub-Class D-2 Period").

Dkt. #53 at 7–8.

### III.   LEGAL ANALYSIS

**A. Legal Standard**

Federal Rule of Civil Procedure 23 governs class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Under Rule 23(a), the party seeking certification must demonstrate "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a). After satisfying the Rule 23(a) requirements, the proposed class must also satisfy at least one of the three requirements listed in Rule 23(b). *Dukes*, 564 U.S. at 345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). In this case, Plaintiffs seek to certify a class under Rule 23(b)(3). Dkt. #53 at 25. This Rule requires Plaintiffs to demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3).

Rule 23 "does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Instead, the party seeking certification must "affirmatively demonstrate his compliance with the Rule—

that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id*. "Certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id*. at 350–51 (internal quotation omitted). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982). This is because "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id*. (internal quotation omitted). Nonetheless, the ultimate decision regarding class certification "involve[s] a significant element of discretion." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1090 (9th Cir. 2010).

B. Rule 23(a) Analysis

   1. Numerosity

Plaintiffs argue that the there are over 170 investors who purchased Beamreach through NSC and it would be "highly impracticable and cost prohibitive to join all of these investors in a single action." Dkt. #53 at 20–21. Defendant NSC does not dispute this. *See* Dkt. #60. The Court agrees and finds that this factor is satisfied.

   2. Commonality

Plaintiffs argue that "[n]ot all questions of fact and law need to be common to satisfy Rule 23(a)(2). Dkt. # 53 at 21 (citing *In re Wash. Mut. Mortgage-Backed Secs. Litig.*, 276 F.R.D. 658, 665 (W.D. Wash. 2011) ( "[p]laintiff must allege a common contention of such a nature that it is capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."). Plaintiffs list the following common questions of fact and law:

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 6

> (1) whether NSC breached its duty to conduct reasonable due diligence on Beamreach; (2) whether NSC failed to understand the risks and rewards of offering securities in Beamreach in considering whether to approve Beamreach for sale to NSC customers; (3) whether NSC was negligent in approving each of the Beamreach Offerings for sale to its customers; (4) whether NSC failed to act as a reasonably prudent broker-dealer would have under the same or similar circumstances in connection with its due diligence and approval of the Beamreach offerings; and (5) whether NSC was unjustly enriched thereby.

*Id*. at 22.

NSC responds that commonality is lacking "because NSC was continually conducting due diligence over time, making different offerings at different times, with different brokers doing their own analysis for their own investors (each of whom had their own risk tolerance, knowledge of investing, and appreciation of risks)." Dkt. #60 at 24–25 (citing *Dukes*, 564 U.S. at 350). While such may be true, it does not negate the value to the whole proposed class in determining whether NSC breached its duty to conduct reasonable due diligence on Beamreach prior to approving it for sale. There is an important common question here with a common answer even if there are other more individualized questions and answers to be addressed later.

NSC contend elsewhere in briefing that the Court cannot apply Washington law to all of the claims of various Plaintiffs located in different states. *See* Dkt. #60 at 17–18. Plaintiffs respond by arguing that Defendants have previously admitted to the applicability of Washington law, and that even if they had not, the only other applicable law would be New York law because that is where the "firm-level due diligence" occurred. Dkt. #64 at 10–13 (citing, *inter alia*, Dkt #20 at 12 n.3 (NSC arguing that Washington law applies); *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580-81 (1976) (setting forth test for determining choice of law)). The Court agrees with Plaintiffs that either Washington of New York law would apply; either way the conflict of law issue is a red herring and will not defeat commonality.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 7

Both parties cite the quote, "[w]hat matters to class certification… is not the raising of common 'questions'—even in droves—but, rather, the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S.at 350 (emphasis in original) (citation omitted).  Having found no significant conflict of law issues in this case, the Court finds that this proceeding has the capacity to generate at least some common answers to the above questions and this element is met.

3. **Typicality**

For this element, the Court asks: "whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs maintain that "each of the Plaintiffs invested in Beamreach through NSC after NSC conducted due diligence," and that "the Plaintiffs each suffered a complete loss of the Beamreach investments they made as a result of Beamreach's bankruptcy" like the rest of the proposed class.  Dkt. #53 at 23.

Defendants respond that "typicality is not met because class members all have injuries different from the named Plaintiffs," and that "every class member's injury will vary depending on what would have been a suitable investment to them, their risk tolerance, the disclosure to them, the brokers they worked with, and their own diligence…" Dkt. #60 at 25.

The Court finds that the injury is nearly identical for the members of the proposed class, even if different members invested different amounts, and that NSC's course of conduct at issue occurred prior to any kind of customer-specific analysis of risk tolerance.  Typicality is therefore satisfied.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 8

### 4. Adequacy

Plaintiffs present evidence that proposed class counsel has experience with this kind of case. *See* Dkt. #54, ¶ 2; Dkt. #55, ¶¶ 2–8; Dkt. #56, ¶¶ 3–7; Dkt. #57, ¶¶ 4–12. Plaintiffs argue that they each are actively involved in this litigation and that their interests are aligned with the proposed class. Defendants do not contest this element. The Court finds that the representative parties will fairly and adequately protect the interests of the class.

### C. Rule 23(b)(3) Analysis

This Rule requires Plaintiffs to demonstrate "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). Pertinent matters include: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

Plaintiffs argue that "common questions surrounding NSC's due diligence on Beamreach and its subsequent approval of the Beamreach securities for sale to NSC customers predominates the Class, and can be handled in a single adjudication. Once this common liability question is adjudicated, the damages can easily and efficiently be calculated based on NSC's books and records which indicate investor name, address, date of investment, and investment amount." Dkt. #53 at 26 (citing Dkt. # 54, ¶ 10)). A class action is superior here, according to Plaintiffs, because:

> Given the large number of class members, the geographic dispersion of the class members, and the multitude of common

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 9

issues present, the use of the class device is the most efficient and fair means of adjudicating the claims that arise out of NSC's negligence and unjust enrichment with regard to the Beamreach offerings. Absent class treatment, each investor would be forced to bring an individual arbitration claim through FINRA's arbitration forum. (Dkt. # 55, ¶ 8). Class treatment is superior to multiple individual suits or piecemeal arbitration proceedings because it conserves judicial resources (individual FINRA arbitration proceedings are extremely expensive for both investors and NSC), promotes consistency as each FINRA arbitration panel is of different composition, and efficiency of adjudication as various FINRA arbitration panels may rule differently on the common issues presented in this case.

Dkt. #53 at 28.

In Response, NSC argues that Plaintiffs are over-simplifying how due diligence checks actually worked at NSC and how FINRA's rules apply. Dkt. #60 at 15. NSC contends that the "firm-wide" due diligence and suitability determination are only part of the analysis, which continues again for individual brokers and even individual investors. *Id*. (citing Troccoli Decl. at ¶ 5, Ex. D; Fotouhi Report at 3-6). NSC therefore concludes that "to adjudicate this matter as a class action, there would need to be an analysis of what each of the 27 individual NSC brokers who sold to different investors did for due diligence and how they made their suitability determinations about Beamreach." *Id*. NSC also argues that Plaintiffs' claims fail if the Beamreach investment was suitable for even one investor. *Id*. (citing *Fernandez v. UBS AG*, No. 15-CV-2859 (SHS), 2018 WL 4440498, at *13 (S.D.N.Y. Sept. 17, 2018)). Finally, NSC argues that damages and the affirmative defenses of assumption of risk and comparative fault are individualized inquiries. *Id*. at 16.

On Reply, Plaintiffs stress the "valuable gate-keeping function" at issue here, arguing that a "private securities offering never gets 'past go' without the approval of the NSC

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 10

commitment committee." Dkt. #64 at 6. Plaintiffs distinguish *Fernandez, supra* from the facts of this case. *Id*. at 6–7.

The Court has already found that there is an important common question here with a common answer. Given everything presented by the parties, the Court further finds that this question of due diligence prior to approval for sale predominates over any questions affecting individual brokers or investors. Plaintiffs are arguing that this investment was not suitable for *any* investor. If NSC violated its FINRA obligations at the outset and is found to be negligent, liability will likely apply regardless of the different risk tolerances of class members. Answering this question in a single class action should benefit all parties, including NSC. This case is factually distinguishable from *Fernandez*, which involved a different type of investment, different theories of damages, and a different breach of contract claim involving individualized analysis. *See* Dkt. #64 at 6.

NSC also argues that Plaintiffs cannot satisfy Rule 23(b)(3)'s superiority requirement, *i.e.* that a class action is a superior method here, "because potential class members have substantial incentive to pursue individual claims, litigation had already begun by absent class members, there is no reason to concentrate this litigation in Washington with its few connections to this case, and the conflicts of law issues make a class action not manageable." Dkt. #60 at 22. Defendants point out that there have been three FINRA arbitrations already filed against NSC about the Beamreach investment. *Id*. at 23 (citing Troccoli Decl. at ¶ 12).

This is a small number of FINRA arbitrations, relatively speaking, and such does not outweigh the value of proceeding with a class action now. The Court sees some connection to this forum, where Defendant is headquartered, this litigation has proceeded in this Court for many years, and NSC has failed to demonstrate any specific problems to trying the action here.

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 11

The requirements of Rule 23 are met. In addition to meeting the requirements of Rule 23, a class must be ascertainable before it can be certified. *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939-40 (9th Cir. 2009). The Court agrees with Plaintiffs that the class can be easily ascertained from NSC's books and records.

### IV.   CONCLUSION

Having considered the briefing from the parties and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiffs Motion for Class Certification, Dkt. #53, is GRANTED.

2. The Class and Subclasses, as described in Plaintiffs' brief and above, are certified under Rule 23(b)(3). Excluded from the Class or Subclasses are Defendant and any of its officers, directors, employees, agents, parents, affiliates or subsidiaries. Also excluded is any entity related to or affiliated with Beamreach, and any judicial officers presiding over this matter and their immediate family members.

3. Plaintiffs James Ginzkey, Richard Fitzgerald, Charles Cerf, and Barry Donner are designated and appointed as representatives for the Class and the Subclasses.

4. Stoltmann Law Offices, P.C. and Law Offices of Joshua B. Kons, LLC are appointed as counsel for the Class and Subclasses.

5. No later than thirty (30) days from the date of this order, Plaintiffs shall submit to Defendant's counsel the proposed Notice forms and the Plan for disseminating Notice to the Class and Subclasses. Counsel shall then confer as to the proposed Notice and Plan. The parties shall submit an agreed Notice and

Plan to the court. If the parties are not in agreement, each will submit their proposed Notice and Plan to the court for decision.

DATED this 27th day of April, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER GRANTING MOTION FOR CLASS CERTIFICATION - 13