# EXHIBIT A

National Securities Corporation's Reply in Support of the Motion to Stay
Proceedings Pending Appeal
(Case No. 2:18-cv-01773-RSM)

NINTH CIRCUIT CASE NO. 21-80048

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

James Ginzkey, Richard FitzGerald, Charles Cerf, Barry Donner, on behalf of themselves and all others similarly situated

*Plaintiffs-Respondents*,

v.

National Securities Corporation, a Washington Corporation,

*Defendant-Petitioner.*

Reply to Petition for Permission to Appeal
from the United States District Court for the Western District of Washington
The Honorable Ricardo S. Martinez, District Court Judge – Case No. C18-1773RSM

**REPLY TO PETITION FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION BY DEFENDANT**

Douglas W. Greene, WSBA #22844
James R. Morrison, WSBA #43043
999 Third Avenue, Suite 3900
Seattle, Washington 98104
Tel: (206) 332-1380
Fax: (206) 624-7317
Email: dgreene@bakerlaw.com
Email: jmorrison@bakerlaw.com

*Attorneys for Petitioner NATIONAL SECURITIES CORPORATION*

**TABLE OF CONTENTS**

I. REPLY INTRODUCTION ...................................................................................1

II. ARGUMENT........................................................................................................1

    A.    The district court failed to conduct a choice of law analysis and thus, committed manifest error.............................................................1

    B.    The district court erred by finding that common issues predominate. ...................................................................................6

    C.    This case presents unsettled and fundamental issues of law.................9

III. CONCLUSION....................................................................................................9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Fernandez v. UBS ABS AG*,
   No. 15-CV-2859 (SHS), 2018 WL 4440498 (S.D.N.Y. Sept. 17,
   2018) ..................................................................................................................7, 8, 9

*FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*,
   180 Wash.2d 954, 967, 331 P.3d 29, 36 (2014) ..........................................3, 5, 6

*Haley v. Medtronic, Inc.*,
   169 F.R.D. 643 (C.D.Cal.1996) ..............................................................................3

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..............................................................................2, 3

*Johnson v. Spider Staging Corp.*,
   87 Wash.2d 577, 555 P.2d 997, 1000 (1976) ......................................................4

*Northern Ins. Co. of New York v. Allied Mut. Ins.* Co.,
   955 F.2d 1353 (9th Cir. 1992) ..........................................................................5, 6

*Woodward v. Taylor*,
   184 Wash.2d 911, 366 P.3d 432, 436 (2016) ......................................................4

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180, *amended* 273 F.3d 1266 (9th Cir. 2001) ................................1, 2

**Statutes**

*Restatement (Second) of Conflict of Laws* § 148 (1971) ...........................................5

*Restatement (Second) of Conflict of Laws* § 145 (1971) ...........................................5

**Rules**

FINRA...................................................................................................................3

## I.  REPLY INTRODUCTION

Rule 23(f) review is warranted because the district court did not properly analyze constitutional due process or the "most significant relationship" of 41 jurisdictions with interests in this litigation. Furthermore, the district court minimized the individualized issues that cannot be avoided at trial such as the due diligence and suitability determinations of 27 individual brokers who sold the Beamreach security, individualized issues regarding whether the security was suitable for even one investor, and affirmative defenses based on robust risk disclosures. These were manifest errors that present fundamental issues of class action law that evade end-of-case review.

## II. ARGUMENT

### A.  The district court failed to conduct a choice of law analysis and thus, committed manifest error.

Plaintiffs' argument that the district court conducted the proper choice of law analysis when determining that either New York or Washington law applies fails because the district court did not perform *any* choice of law analysis whatsoever. Answer at 9-12. Instead, Plaintiffs distract this Court by focusing on the fact that *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1189 (9th Cir. 2001) (*opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001)) applied a California, not Washington, choice of law analysis. Plaintiffs go to great lengths to distinguish California's "governmental interest" choice of law analysis from Washington's

"most significant relationship" test. *See id*. But regardless of what choice of law standard applied, key to the *Zinser* holding was that the district court did not conduct the choice of law analysis it was required to conduct for out-of-state class members' claims. *Zinser,* 253 F.3d at 1189. The exact same issue is present here.

In its class certification order, the district court failed to apply Washington's "most significant relationship" test to other jurisdictions that have an interest in this litigation, let alone any analysis of how applying Washington or New York law would comport with constitutional due process. This is similar to *Zinser*, where this Court similarly held that the failure to apply California's conflict of law test to out-state jurisdictions with interests in the litigation was reversible error.

As this Court has acknowledged, a court can only apply a single state's substantive law to a multistate class "[s]ubject to constitutional limitations and the forum state's choice-of-law rules." *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539, 561 (9th Cir. 2019). In its response to the class certification motion, NSC argued that applying Washington law to all of the class members' claims would not comport with constitutional due process because there is no evidence in the record that any Washington NSC employee performed any action related to the sale of Beamreach securities and only 10 investors purchased Beamreach securities in Washington. 3-ER-494-5. Despite raising this fundamental constitutional issue, the district court failed to analyze how applying Washington (or even New York) law to out-of-state

2

investors' claims comported with constitutional due process. Failing to conduct such analysis was manifest error. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 562 (noting the reverse that the district court was not obligated to undertake a choice of law analysis beyond the issues raised by the objector to the settlement class).

Furthermore, Washington's choice of law rules require the court to analyze choice of law if there is an actual conflict between the laws or interests of Washington and the laws or interests of another state before the court will engage in a conflict of law analysis. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wash.2d 954, 967 (2014). NSC met this burden by showing that there is an actual conflict of law between Washington and the 41 other states' negligence and unjust enrichment laws. *See* 3-ER-495-7; s*ee Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 653 (C.D.Cal.1996) ("[N]o matter how similar—or comparable—each state's law on negligence may be, it is clear—despite plaintiffs' argument—that the negligence laws of the fifty states have some differences."). These differences are not immaterial as they dramatically impact issues such as whether FINRA regulations set the standard of care, whether claims may be barred versus simply reduced due to comparative fault, and other critical issues. 3-ER-496-7.

Because there is an actual conflict of law, the Court needed to apply the two-part most significant relationship test to each forum with an interest in order to

3

comply with Washington law. Under the most significant relationship test, the court first evaluates the contacts each jurisdiction has with the parties, specifically

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

*Woodward v. Taylor*, 184 Wash.2d 911, 917, 366 P.3d 432, 436 (2016); *Johnson v. Spider Staging Corp.*, 87 Wash.2d 577, 580–81, 555 P.2d 997, 1000 (1976). Then, "the court must evaluate the interests and policies of the potentially concerned jurisdictions by applying the factors set forth in *Restatement [(Second) of Conflicts of Laws] section 6*." *Woodward*, 184 Wash.2d at 917 ("The extent of the interest of each potentially interested state should be determined on the basis, among other things, of the purpose sought to be achieved by their relevant local law rules and the particular issue involved.").

Plaintiff Richard Donner exemplifies the district court's error by failing to analyze, for example, California's relationship with Washington. Donner is a California resident. 4-ER-654. He met with his NSC broker in California. 2-ER-197. Beamreach is located in California. 4-ER-652. NSC due diligence at the firm-level and broker-level was performed in California. 3-ER-223. Yet the Court failed to even analyze whether California law should apply to Donner's claim, let alone other California residents' claims. Why should Washington or New York law, states with

4

no contact with Donner at all, apply to Donner's claims as opposed to California law? *See Northern Ins. Co. of New York v. Allied Mut. Ins*. Co., 955 F.2d 1353 (9th Cir. 1992)(finding California law applied even though the injury occurred in Washington and the suit was brought in Washington, because the parties negotiated and contracted in California, the insured and insurer's agent was located in California, and California had a strong interest in applying its law to protect the parties domiciled in California.).

Similarly, why should Washington law or New York law apply to investors in other jurisdictions throughout the country, particularly where Washington recognizes the interest of an investor having the protection of their home state's laws. *See FutureSelect Portfolio Mgmt.*, 180 Wash.2d at 967 ("Washington has a strong interest in giving Washington investors the benefit of Washington law and in requiring the sellers of securities to comply with it," recognizing that Washington had a more compelling interest in protecting investors than New York did in regulating its sellers of securities.). Plaintiffs attempt to minimize the interests identified in *FutureSelect* because the court was applying Restatement (Second) of Conflict of Laws § 148 to the fraud and misrepresentation claims there, as opposed to the more general "most significant relation" test found in § 145. Answer at 13-14. This is a distinction without meaning. Courts analyze each forum's interests under either Restatement test and the Washington Supreme Court has determined that

5

Washington's interest in protecting Washington investors trumps the interests of another state deterring sellers of securities from committing wrong-doing. The court's decision to simply apply the laws of NSC's two headquarters is directly contrary to the *FutureSelect* holding and this Court's own precedent. *See Northern Ins. Co. of New York*, 955 F.2d at 1359 (California had a strong interest in applying its law to protect the parties domiciled in California.).

Had the district court properly considered the choice of law issues, it would have determined that the complications of analyzing 41 potential jurisdictions' laws and applying them at trial makes individualized issues predominate and a class action not superior. This was manifest error.

### B. The district court erred by finding that common issues predominate.

In their response, the Plaintiffs' argue that common questions predominate because of NSC's "gate-keeping function" when approving the sale of securities. Answer at 14-16. However, Plaintiffs (and the district court) oversimplify NSC's two-part process of approving securities for sale. As NSC has explained multiple times, NSC implemented a two-part checks and balances process. 3-ER-221;363-66. The first part requires NSC to conduct an analysis of the security. *Id*. The second part requires an independent NSC broker's analysis. *Id*.; *see also* 3-ER-421-22. A security will not be approved and permitted to be sold to a customer until *both* NSC

and NSC's independent brokers have conducted an analysis and approved the security. *Id*.

Plaintiffs' argument (accepted by the district court) that common issues predominate because of the firm-wide due diligence is illogical for an organization such as NSC employing a two-step process involving the firm and its brokers' independent suitability analysis. Answer at 12-13;3-ER-221;363-66;421-22. Therefore, in order to determine NSC's liability there must be an analysis of both NSC and each of NSC's 27 individualized brokers' suitability determination.

Even if there was, as argued by Plaintiffs, a breakdown at the firm-level suitability and due diligence analysis, there can be no liability until the district court analyzes each of the 27 individual NSC brokers' due diligence and how they made their suitability determinations about Beamreach. 3-ER-480. Thus, there is no way to avoid this individualized analysis by simply focusing on the firm-wide level due diligence.

While the Plaintiffs attempt to distinguish *Fernandez v. UBS ABS AG*, No. 15-CV-2859 (SHS), 2018 WL 4440498, at *15 (S.D.N.Y. Sept. 17, 2018) because of differences in the investments at issue, one of the core reasons *Fernandez* was properly not certified as a class was because the plaintiffs there had simply provided evidence that the security was risky, not that it was unsuitable for even one investor. Answer at 16-17. Specifically, the court in *Fernandez* declined to certify a class

because the plaintiffs had not presented any generalized proof that the investment could be unsuitable per se. 2018 WL 4440498 at *15. The court noted that while the plaintiffs had generalized proof that individuals within UBS had concerns about the riskiness of the funds and recommended them anyway, the plaintiffs' experts admitted that "'riskier investments … make sense,' as long as 'there is a commensurate expectation of greater returns'" and that "[e]ven a so called 'junk' (high yield) bond, for example, can be a rational investment because investors are compensated for taking greater risk by a higher expected return." *Id.* at *15-*16.

Similarly, here, all that Plaintiffs' evidence here showed was that Beamreach was a high-risk investment (as disclosed to Plaintiffs), not that it was unsuitable for even a single investor. *See* 3-ER-473. If the investment was suitable for even one class member, then there can be no liability in this case. Therefore, at trial, the district court would need to conduct an individualized analysis of each NSC client to determine whether each investor's investment in Beamreach was suitable for even one of them. 3-ER-492. *Fernandez's* analysis is directly on point and dispositive of the district court's grant of certification.

Lastly, given the robust risk disclosures given to investors, there would need to be an individualized analysis of each affirmative defense, such as assumption of risk and contributory fault. 3-ER-480. Therefore, because these individualized issues predominate over any common issues, the court erred by certifying a class.

8

## C. This case presents unsettled and fundamental issues of law.

Plaintiffs' argument that NSC did not identify how fundamental issues relevant to unsettled class action law are likely to evade end of the case review fails. Answer at 19. First, the fact that the choice of law issues are unsettled, particularly the extent of analysis a district court is required to conduct to certify a multi-state class action, is evident from the disagreements between Plaintiffs and NSC. The choice of law issue is guaranteed to evade end of the case review because the district court could easily apply incorrect law due to not analyzing the issue. If that occurs, it would necessitate the need for an entirely new trial applying the correct law, wasting substantial time, money, and effort.

Second, this Court (and every other circuit) has never addressed class certification issues in a similar case. Outside of the *Fernandez* case, neither party has cited any law applying suitability of investment issues at class certification. The Court's guidance in this unique situation would be beneficial to the parties and the district court at trial, as well as future litigants facing similar issues.

## III. CONCLUSION

NSC respectfully submits that the Ninth Circuit should grant its permission to appeal and reverse and vacate the district court's order granting class certification.[1]

---

[1] NSC withdraws its argument that the district court's order represented a "death knell" situation.

Dated: May 27, 2021                                  Respectfully submitted,

s/ *James R. Morrison*
Douglas W. Greene, WSBA #22844
James R. Morrison, WSBA #43043
999 Third Avenue, Suite 3900
Seattle, Washington 98104
Tel: (206) 332-1380
Fax: (206) 624-7317
Email: dgreene@bakerlaw.com
Email: jmorrison@bakerlaw.com


*Attorneys for Defendant/Petitioner
National Securities Corporation*

## **CERTIFICATION OF COMPLIANCE**

I certify that the attached reply complies with Fed. R. App. 27 (d)(2)(D), Circuit Rule 27-1(1)(d), and Fed. R. App. 5(c). I further certify that this reply contains 2,140 words.

Dated: May 27, 2021                                          */s/ James Morrison*
                                                              James R. Morrison

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2021, I served the foregoing DEFENDANT NATIONAL SECURITIES REPLY TO PETITION FOR PERMISSION TO APPEAL ORDER GRANTING CLASS CERTIFICATION BY DEFENDANT, via email per the parties' agreement, on the following:

David P. Neuman, WSBA #48176
Israels Neuman PLC
10900 NE 8th Street, Suite 100
PMB #155
Bellevue, Washington 98004
Tel: (206) 795-5798
Email: dave@israelsneuman.com

Alexander N. Loftus
Joseph Wojciechowski
Stoltmann Law Offices
233 S. Wacker, 84th Floor
Chicago, IL 60606
Tel: (312) 332-4200
Email: alex@stoltlaw.com
joe@stoltlaw.com

Joshua B. Kons, Esq.
Law Offices of Joshua B. Kons, LLC
939 West North Avenue, Suite 750
Chicago, IL 60642
Tel: (312) 757-2272
joshuakons@konslaw.com
*Attorneys for Plaintiffs*

Dated: May 27, 2021                    */s/ Laetitia Knox*
                                       Laetitia Knox

12