1
2
3
4
5
6
7
8

THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9
10
11
12
13
14
15
16

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below,<br><br>        Plaintiffs,<br><br>    v.<br><br>NATIONAL SECURITIES CORPORATION, a Washington Corporation,<br><br>        Defendant. | Case No.: 2:18-cv-01773-RSM<br><br>**DEFENDANT NATIONAL SECURITIES CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>NOTED ON MOTION CALENDAR: JANUARY 21, 2022<br><br>ORAL ARGUMENT REQUESTED |

17

## I.    INTRODUCTION

18
19
20
21
22
23

In this securities matter, Plaintiffs insist on pursuing private tort claims based on rules prescribed by the Financial Industry Regulatory Authority (FINRA). Plaintiffs allege, based entirely on FINRA rules, that Defendant National Securities Corporation ("NSC"), a registered broker-dealer, conducted *negligent due diligence*[1] prior to offering securities of Beamreach Solar (f/k/a Solexel) for sale to accredited investors[2] like Plaintiffs. (In fact, Plaintiffs remarkably

24

[1] In this motion, "due diligence" refers to due diligence in the securities context only.

25
26

[2] A person is an accredited investor if their individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 or they have an annual income exceeding $200,000 in each of the two most recent years or joint income with their spouse during those years in excess of $300,000. 17 C.F.R. 230.501(a)(5), (6).

27

---

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 1 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

allege that NSC should never have offered those investors the *opportunity* to purchase Beamreach securities in the first place—as if investors should not be allowed to decide for themselves, even when fully apprised of the relevant risks through detailed disclosures.) [3]

Most federal courts—including the Ninth Circuit and leading New York federal and state courts—have held that plaintiff investors cannot advance a private tort claim based on alleged or actual violations of the rules of a self-regulatory organization like FINRA (hereinafter, the "majority rule")**.** More specifically, multiple courts—including New York federal courts applying New York law—*have expressly rejected efforts to shoehorn into FINRA suitability rules a new tort of negligent due diligence*, which is precisely what Plaintiffs are attempting here. In fact, despite exhaustive research, NSC has not been able to uncover a single court that has ever allowed a civil claim of negligent due diligence to proceed in the securities context. This Court should not be the first to break from longstanding and well-reasoned precedent. Accordingly, NSC moves for summary judgment against Plaintiffs' Complaint under Federal Rule of Civil Procedure 56.[4]

Following the majority rule, courts have consistently rejected similar lawsuits for at least three independent reasons:

***First,*** courts have long held that no private right of action exists for violations of industry rules. Courts have thus rejected attempts to circumvent the absence of a private right of action under FINRA. As noted, courts have expressly rejected investor claims of negligent due diligence against broker-dealers—claims that are virtually identical to the ones Plaintiffs are bringing here against NSC. Not one court has ever allowed them, according to NSC's research.

---

[3] To be clear, Plaintiffs do ***not*** allege that NSC's disclosures of risks to them were deficient.

[4] NSC brings this purely legal motion for summary judgment well in advance of the February 8, 2022 dispositive motion deadline and the close of discovery, in hopes of conserving both client and judicial resources. NSC expressly reserves the right to bring a separate evidence-based motion for summary judgment by the February 8, 2022 deadline, however, should that become necessary.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 2 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

***Second,*** courts have recognized that securities are already subject to extensive federal regulation, militating against the fabrication of a new cause of action. A novel tort of negligent due diligence—something that does not exist in the securities arena—would fly in the face of congressional intent *not* to grant a private remedy for alleged violations of industry rules.

***Third,*** as a leading New York federal court has explained, any notion of "due diligence" in the securities arena arises not as a predicate to liability, but as a *defense* to disciplinary charges or allegations of fraud under SEC Rule 10b-5. Plaintiffs have not cited to a single authority, and NSC is unaware of any, that would support an *offensive* use of any "due diligence" rule.

This case is an exemplar for why the majority rule exists, why multiple courts have expressly rejected civil claims of negligent due diligence against broker-dealers under FINRA's suitability rules, and why no court has ever allowed a civil claim of negligent due diligence in the securities context to proceed. Our free-market system gives people the opportunity to invest in companies that present high risks yet offer the potential for substantial reward. Commonly-known companies like Amazon, Apple, Tesla and First Solar were once those "non-public" companies. They ultimately flourished, making early investors extremely rich. Other similarly once-promising companies, including but not limited to Beamreach, unfortunately did not succeed. This is not surprising, as approximately 90% of new businesses fail.[5] More specifically, approximately 70% of new businesses fail in their tenth year.[6] And in the context of private investments, approximately 75% of venture-backed companies never return cash to investors, and in 30-40% of the cases, investors lose their whole initial investment.[7]

What Plaintiffs are remarkably alleging is that Beamreach—a promising solar company with innovative technology that had raised hundreds of millions of dollars from investors,

---

[5] *See* Nicolas Cerdeira, Kyril Kotashev, <u>Startup Failure Rate: Ultimate Report + Infographic [2021]</u>, Failory, (March 25, 2021), <u>https://www.failory.com/blog/startup-failure-rate</u>.

[6] *Id.* (*citing to* <u>https://www.bls.gov/bdm/us_age_naics_00_table7.txt</u>).

[7] Deborah Gage, <u>The Venture Capital Secret: 3 Out of 4 Start-Ups Fail</u>, Wall Street Journal, (Sept. 20, 2012), <u>https://www.wsj.com/articles/SB10000872396390443720204578004980476429190</u>.

---

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 3 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

including *at least 22* institutional investors who had conducted their own due diligence of Beamreach—was somehow not suitable for *even one investor* in the world. Based on this unprecedented (and frankly, absurd) notion, Plaintiffs have resorted to bringing private negligence claims on the purported grounds that (a) the due diligence NSC conducted was insufficient under FINRA rules, and (b) had NSC's FINRA-required due diligence been more extensive, NSC would never have offered the Beamreach investments to anyone.

In other words, Plaintiffs claim that no reasonable investor (not even extremely sophisticated institutional investors like Kleiner Perkins Caufield & Byers [8], DAG Ventures [9], CMC Capital [10], and Diodes Incorporated [11], among others—each of whom invested in Beamreach) should have ever been afforded the opportunity by NSC to decide for themselves whether they should invest in Beamreach, even when fully informed of the relevant risks, as the institutional investors were by their own due diligence. If permitted to proceed, Plaintiffs' novel claims would allow any plaintiff to argue that any high-risk investment should not have been

---

[8] The *Wall Street Journal* has called Kleiner Perkins, which has backed Amazon, America Online, Twitter, among other successful companies, one of the "largest and most established" venture capital firms in the world. Scott Austin, <u>One Of These Venture Firms Is Not Like The Other,</u> Wall Street Journal (January 22, 2010), http://blogs.wsj.com/venturecapital/2010/01/22/one-of-these-venture-capital-firms-is-not-like-the-other/. Reuters has also recognized Kleiner Perkins as "one of the most successful venture capital firms in the world." Madhav A. Chanchani, <u>Cleantech, biggest investment opportunity of the century: KPCB's Nazre,</u> Reuters, (July 21, 2009), http://in.reuters.com/article/idINIndia-41206620090721.

[9] DAG Ventures, which has backed Glassdoor, Grubhub, and Yelp, among other successful companies, is recognized as another "prominent Silicon Valley venture capital firm." *See, e.g.*, <u>Vringo's Facetones App Exceeds 100,000 Downloads,</u> BusinessWire, (September 20, 2011), https://www.businesswire.com/news/home/20110920005684/en/Vringo%E2%80%99s-Facetones-App-Exceeds-100000-Downloads.

[10] CMC Capital is a boutique investment firm, founded in 1969, that "works selectively" in regard to "alternative asset classes including venture capital," and has "implemented a disciplined, considered investment process." *See, e.g.*, https://www.cmcapitaladvisors.com/#investments.

[11] Diodes Incorporated is a publicly-traded company that manufactures and supplies semiconductor devices across various industries, and has offices all over the world. *See, e.g.*, https://www.diodes.com/about/company/company-profile/.

---

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 4 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

offered to any investor simply because a broker-dealer did not ask one or more additional questions. The majority rule exists precisely to deter those types of specious claims.

In its class certification order, this Court previously agreed with Plaintiffs' argument that either New York or Washington law would apply to this case. Since New York was where (a) most of the due diligence took place (whereas no due diligence took place in Washington state), (b) substantially more investors resided, and (c) substantially more of NSC's brokers, analysts, executives, officers, and/or directors resided or worked, New York authorities should govern the legal question raised by this motion over Washington, which had nearly no role in the facts of this case.[12] As detailed below, leading New York authorities in the securities arena follow the majority rule and have specifically rejected civil claims of negligent due diligence against broker-dealers based on alleged violations of FINRA suitability rules. NSC respectfully urges the Court to follow those many well-reasoned decisions (especially when NSC has been unable to find any decision to the contrary), and grant summary judgment in favor of NSC.

## II.     STATEMENT OF MATERIAL FACTS

### A.  Plaintiffs Allege NSC Conducted Negligent Due Diligence under FINRA Rules

Plaintiffs allege that, in its role as placement agent and registered broker-dealer, NSC conducted *negligent due diligence* regarding Beamreach in violation of FINRA Rule 2111 and Regulatory Notice 10-22. *See, e.g.,* Compl. ¶¶ 55-58, 60-72, 81-82, 87, 134. In their own words, "Plaintiffs' claims and the claims of the proposed class members arise out of a common nucleus of operative facts: NSC's negligent due diligence and its subsequent negligent approval of Beamreach for sale to any of its customers." *See* Dkt. 53 at 3:15-18; *see also* Dkt. 64 at 1:23-26 (alleging NSC's "negligent due diligence on and approval of Beamreach – which lies at the core of this case."); *id.* at 2:10-12 ("Plaintiffs have the exact same injury as the class members flowing from the exact same negligent due diligence and approval of Beamreach by NSC").

---

[12] NSC does not waive but rather expressly reserves the right to argue, on any appeal of the Court's class certification order, that this case should be subject to a myriad of state laws.

| DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5 - CASE NO. 2:18-CV-1773 | BAKER & HOSTETLER LLP 999 Third Avenue, Suite 3900 Seattle, WA 98104-4040 Telephone:  (206) 332-1380 |
|---|---|

Plaintiffs notably do not allege that NSC misled investors or failed to disclose a material fact in any private placement memorandum ("PPM"). Instead, Plaintiffs remarkably allege that, had NSC conducted "reasonable" or "proper" due diligence, it would not have offered the Beamreach securities for sale at all. *See, e.g.*, Compl. ¶¶ 72, 93, 96, 99, 105-108. Based on those allegations of negligent due diligence under FINRA rules, Plaintiffs have asserted three claims of common law negligence and one derivative claim of unjust enrichment.

### B.  Plaintiffs' Claims are Based Entirely on Alleged Violations of FINRA Rules

Plaintiffs' claims are premised entirely on what Plaintiffs themselves argue are "controlling" FINRA rules. *See* Dkt. 26 at 4:13-14 (As Plaintiffs have stated: "Plaintiffs plead duty very clearly based on controlling regulations. It is unquestioned that NSC was a broker-dealer obligated to follow FINRA rules and regulations."). Moreover, at least 32 of Plaintiffs' recent Requests for Admissions are laser-focused on alleged violations of FINRA rules. *See* Declaration of James R. Morrison ("Morrison Decl."), Ex. 1, Request Nos. 1-5, 7, 11-15, 17-20, 22, 24, 25, 28, 32-34, 47-49, 52, 54, 56, 61, 62, 64, 66. *See, e.g.*:

- Request No. 5 (seeking admission or denial that "NSC owed a duty to the Plaintiffs and the Class to follow FINRA rules.")

- Request No. 7 (seeking admission or denial that "NSC has internal Written Supervisory Procedures that incorporate FINRA rules and regulations.")

- Request No. 11 (seeking admission or denial that "NSC was required to perform reasonable due diligence on the Beamreach Securities pursuant to FINRA Rule 2111.05(a), FINRA Regulatory Notice 10-22, NASD Notice to Members 03-71, and NASD Notice to Members 05-26.")

- Request No. 13 (seeking admission or denial that "NSC owed a duty to the Plaintiffs and the Class to make suitable investment recommendations consistent with FINRA Rule 2111.")

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

- Request No. 52: (seeking admission or denial that "Plaintiffs and the Class did not consent to relieve NSC of the duties it owed them under to FINRA rules.")

## C.  FINRA Explained to Plaintiffs the Extensive Scope of its Regulatory Framework

In a March 20, 2020 meet-and-confer correspondence with FINRA counsel regarding Plaintiffs' subpoena to FINRA, Plaintiffs tried to minimize FINRA's ability to raise certain objections: "[T]his is not a FINRA arbitration but a nationwide class action lawsuit." Morrison Decl., Ex. 2. Plaintiffs lambasted "FINRA's role as a private, self-regulatory organization," not a "governmental entity." FINRA counsel had explained to Plaintiffs, however, that, "[a]s the primary examining authority for the over-the-counter securities industry in the United States, FINRA's regulatory duties include imposing and enforcing binding rules on FINRA's members. FINRA conducts routine examinations and other investigations to ensure member conduct complies with FINRA's rules and securities laws. *FINRA investigations often cast a wider net than the more limited issues litigated in civil disputes*." *Id*., Ex. 3 (emphasis added).

## D.  NSC Conducted Extensive Due Diligence and Disclosed Relevant Risk Factors

NSC conducted extensive due diligence regarding the Beamreach offerings at issue here, as evidenced by, among other things, the PPMs and supplements thereto detailing many pages of risk factors as well as additional evidence, including but not limited to Commitment Committee meetings and minutes; detailed conversations with vendors, intellectual property counsel, legal counsel, accounting professionals, and Beamreach personnel; bringdown due diligence checklists; and NSC's retention of Dr. Thomas Surek, Ph.D. to analyze Beamreach's technology and commercialization platform. Whether or not NSC conducted sufficient FINRA "due diligence" is irrelevant under the majority rule, however. Thus, NSC will not belabor the point, but rather reserve its arguments and evidence in the event this motion is denied.

## E.  The Court Previously Held That New York or Washington Law Would Apply

In the class certification order, the Court agreed with Plaintiffs' argument and held that "either Washington of [sic] New York law would apply." Dkt. 66 at 7:27-28; Dkt. 64 at 10:25-

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 7 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

26. Plaintiffs had keenly recognized that "New York is where the firm-level due diligence occurred, where the investment banking team was located, and where the approval of Beamreach was processed." *See* Dkt. 64 at 10:4-7. Plaintiffs also conceded that, "[a]pplying the test set forth in *Johnson v. Spider Staging Corp.,* 87 Wn. 2d 577, 580-81 (1976) to this case reveals that New York actually satisfies three of the four contacts taken into consideration: 1) the place where the conduct at issue [allegedly] causing the injury occurred; 2) the domicile, residence, nationality, place of incorporation and place of business of the parties; and 3) the place where the relationship between the parties is centered." *Id*. at 10:15-20.

### F.  New York is Where Diligence Occurred, Brokers Worked, and Investors Resided

At the firm-level, NSC conducted due diligence on Beamreach primarily in New York, and also in California. *See* Declaration of Carmelo Troccoli ("Troccoli Decl.") ¶ 3. Major policy decisions were generally done through NSC's New York office. *Id.* ¶ 4. Although NSC was co-headquartered in New York and Washington during the relevant period,[13] NSC's Washington office functioned primarily as an administrative office, and was not involved with the Beamreach investments. *Id.* ¶ 5. In fact, no relevant act concerning any of Plaintiffs' allegations occurred in Washington. *Id.* ¶ 6. Indeed, not one NSC broker or supervisor from Washington state was involved in investor purchases of Beamreach securities at issue in this case. *Id.* ¶ 7.

In contrast, 19 of the 27 (70%) NSC brokers who solicited investors for the Beamreach offerings either resided in New York or nearby New Jersey and Connecticut. *Id.* ¶ 8. Given that NSC's New York office was where major policy decisions were generally made and where Beamreach due diligence occurred, many of these 27 brokers had worked from or traveled to NSC's New York office. *Id.* ¶ 9. No brokers resided or worked in Washington. *Id.* ¶ 10.

Moreover, NSC analysts, executives, officers, and/or directors involved in Beamreach due diligence—including but not limited to Carmelo Troccoli, Sagiv Shiv, Jonathan Rich, Eric Schwartz, Nikhil Bhambi, and Mingsi Zhang—either resided in New York, regularly worked

---

[13] NSC is currently headquartered in Florida.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 8 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

from the New York office, or traveled to New York regularly for work. *Id.* ¶ 12. In contrast, none of NSC's analysts, executives, officers, and/or directors involved in Beamreach due diligence had resided in Washington state, regularly worked from the Washington state office, or even traveled to Washington state regularly for work. *Id.* ¶ 13.

NSC's Series D Offering had 359 total investors. *Id.* ¶ 14. Of those 359 investors, forty-three (43) were New York residents and twenty-nine (29) were New Jersey residents, compared to only nine (9) Washington residents. *Id.* ¶¶ 15-16. NSC's Series D-2 Offering had 118 total investors. *Id.* ¶ 17. Of those 118 investors, twenty-one (21) were New York residents and seven (7) were New Jersey residents, compared to only seven (7) Washington residents, most of whom had previously invested in the Series D Offering. *Id.* ¶¶ 18-19. Throughout the various Beamreach offerings, there were fifty (50) total investors from New York, thirty (30) total investors from New Jersey, and seven (7) total investors from Connecticut, compared to only ten (10) total investors from Washington. *Id.* ¶¶ 20-21. None of the named Plaintiffs resided in Washington. *Id.* ¶ 22.

### III.   LEGAL STANDARD

"Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *See, e.g., U. S. v. JP Morgan Chase Bank Acct. No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016) (internal quotation marks omitted). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The district court must also consider any record in the context of "governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 9 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1
2
3
4
5
6
7
8
9
10
11
12
13

#### IV.   ARGUMENT

**A.  New York Authorities—Which Follow the Majority Rule—Should Govern Here**

The Ninth Circuit has held that "[a] federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." *Zinser v. Accufix Rsch. Inst., Inc*., 253 F.3d 1180, 1187 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001). Under Washington's choice of law rules, "[t]he rights and liabilities of the parties with respect to an issue in tort are [d]etermined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties." *Johnson*, 87 Wn. 2d at 580. "Contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* at 580-81.

14
15
16
17
18

Here, each of these four elements favors New York. *First*, the alleged injury would have occurred where the investors were located. Fifty (50) investors were located in New York and another thirty-seven (37) investors resided in nearby New Jersey and Connecticut. Troccoli Decl. ¶ 20. By contrast, only ten (10) investors—none of them named Plaintiffs—resided in Washington. *Id.* ¶¶ 21-22.

19
20
21

*Second*, "the place where the conduct [allegedly] causing the [alleged] injury" would be the state where NSC conducted its due diligence on Beamreach—mainly New York. *Id.* ¶ 8. No Beamreach due diligence by NSC took place in Washington. *Id.* ¶ 6.

22
23
24

*Third*, "the domicile, residence, nationality, place of incorporation and place of business of the parties" also favors New York, because (a) NSC's New York office was where the firm made major policy decisions, whereas, at most, Washington merely had an administrative

25
26
27

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 10 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

office[14]; (b) there were substantially more brokers who resided or worked in New York than in Washington, and (c) there were substantially more investors that resided in New York or very near New York (in New Jersey or Connecticut), than in Washington. *Id.* ¶ 7-11.

*Fourth*, "the place where the relationship, if any, between the parties is centered" favors New York because most due diligence and major policy decisions occurred in New York. *Id.* ¶ 8. Plaintiffs themselves have conceded that "New York actually satisfies three of the four contacts" under *Johnson*. Dkt. 64 at 10:15-20. None of the four named plaintiffs had any relationship with Washington state, and only 10 class members (out of 359) were Washington residents.

Given that Washington state has no role in this action outside of being the fortuitous location of one of the prior administrative headquarters for NSC and the state location of only 10 class members, there is no basis for applying Washington law over New York law, which, among other reasons, was the primary location for due diligence (the entire basis of Plaintiffs' claims).

The Court should therefore follow New York authorities in the disposition of this motion. As discussed more below, leading federal New York courts in the Western, Eastern, and Southern Districts, as well as New York state courts, have applied the majority rule and specifically held that a plaintiff cannot recover for negligence—and more specifically *negligent due diligence*—based on alleged (or actual) violations of FINRA's rules.

At the very least, those New York authorities should govern as to all but the 10 absent class members who resided in Washington. Even as to those ten (10) absent class members,

---

[14] Plaintiffs had argued in the reply supporting their class certification motion that NSC's then-Chief Compliance Officer, Kay Johnson, had split time in Washington and New York. *See* Dkt. 64 at 7-9. The Court did not address this argument in its Order. *See generally* Dkt. 66. Indeed, there is no evidence showing that Ms. Johnson had any role in the Beamreach offerings, or that any alleged act or omission related to Beamreach had occurred in Washington.

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 11 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

however, the majority rule followed by the Ninth Circuit and other federal courts should still apply.[15]

### B. Plaintiffs Cannot Circumvent the Absence of a Private Right of Action Here

Courts have long held that no private right of action exists for violations of industry rules, particularly FINRA rules. *See, e.g.*, *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015) ("FINRA does not provide a private right of action, thus *even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of FINRA*.") (emphasis added); *In re VeriFone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993) ("It is well established that violation of an exchange rule will not support a private claim."). Courts all over the country have rejected efforts to circumvent the absence of a private right of action under FINRA through private tort claims, "because to do so would go against Congress's intent when passing the Securities Exchange Act." *See, e.g., La. by & through Landry v. Bank of Am., N.A.*, No. 19-638-SDD-SDJ, 2021 WL 1232833, at *4 (M.D. La. Mar. 31, 2021).

Indeed, this majority rule is echoed in learned treatises on securities litigation. *See, e.g.,* Thomas Lee Hazen, 5 Law Sec. Reg. § 14:175, Treatise on the Law of Securities Regulation, *Is There a Private Remedy for Violation of FINRA or Exchange Rules?* (May 2021 Update) ("[I]t is generally held that violation of a rule of a self-regulatory organization will not, by itself, support a private right of action.") (citing at least 33 published decisions supporting this proposition, including decisions from New York federal courts and from the Second and Ninth Circuit Courts of Appeal).

The majority rule is also reflected in New York state law which, as noted, is controlling here. *See, e.g., Wey v. Nasdaq Inc.*, No. 651584/2018, 2020 NYLJ LEXIS 413, at *18-*19 (N.Y. Sup. Ct. Feb. 24, 2020) ("Congress did not, however, authorize a private right of action under the

---

[15] If the Court were to deny this motion as to those ten (10) Washington absent class members only, then this case could not continue as a class action, because (a) not one of those Washington investors is a named class representative, and (b) ten investors are not nearly enough to constitute a class under Federal Rule of Civil Procedure 23(a)(1).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 12 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

34 Act to challenge an SRO's failure to follow its own rules…Thus, in short, rather than allow[] plaintiffs to sue under common law theories, Congress created a self-contained process to review and remedy such complaints.") (internal citations omitted); *Davantzis v. Painewebber Inc.*, No. 20032/2000, 2001 N.Y. Misc., LEXIS 536, at *8 (N.Y. Sup. Ct. July 23, 2001) (rejecting under New York law "mere attempts to circumvent the decisions that hold that plaintiffs do not have a private right of action under [self-regulatory organizations] rules.") (internal quotations omitted).

More specifically, *courts have rejected efforts to shoehorn into FINRA suitability rules a new tort of negligent due diligence*—which is precisely what Plaintiffs are attempting here. *Fox*, 84 F. Supp. 3d 239, a New York federal authority, is directly on point. In *Fox*, the plaintiff also similarly asserted a common law negligence claim, alleging that "the investments were unsuitable" and that a placement agent "breached the appropriate standard of care under FINRA." *Id.* at 245. The court unequivocally held: "FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of FINRA." *Id.* Accordingly, the *Fox* court rejected plaintiff's negligence claim. This Court should reject Plaintiffs' virtually identical negligence claims.

Other New York federal courts and the Second Circuit are aligned with *Fox*. In *Mraz v. JPMorgan Chase Bank, N.A.*, the Eastern District of New York cited to *Fox* and disallowed private tort and contract claims based on alleged FINRA violations. *See* No. 17-CV-6380, 2018 WL 2075427, at *5, n. 4 (E.D.N.Y. May 3, 2018).

In *BNP Paribas Mortg. Corp. v. Bank of Am.*, the Southern District of New York held that, in the context of a private placement, there is no such thing as a tort of negligent due diligence. *See* 866 F. Supp. 2d 257, 266 (S.D.N.Y. 2012) ("Courts in this district have also rejected similar efforts to derive causes of action from securities regulations premised on a negligence standard."); *see infra* pp. 17-18 (also explaining that due diligence in the securities context arises only as a defense to disciplinary charges or allegations of fraud under SEC Rule 10b-5).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 13 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

*Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292 (S.D.N.Y. 2018) similarly held that there is no implied remedy for violation of FINRA rules, which cannot be repurposed in a private contract claim, especially where the contracts at issue "do not impose any obligations on Defendant in excess of those imposed by FINRA"); *see also Brady v. Calyon Sec's (USA)*, 406 F. Supp. 2d 307 (S.D.N.Y. 2005) (holding that there is no implied remedy for violation of NASD or NYSE rules), *relying on VeriFone*, 11 F.3d at 870); *see also Malhotra v. Equitable Life Assur. Soc'y of U.S.,* 364 F. Supp. 2d 299, 307, 309 (E.D.N.Y. 2005) (holding that there is no implied remedy for violation of NASD Rule 2310).

*Smith v. Questar Cap. Corp.,* No. 12-cv-2669 (SRN/TNL), 2013 WL 3990319 (D. Minn. Aug. 2, 2013)—which relies on the Southern District of New York's holding in *BNP Paribas*— is also directly on point. In *Questar*, the plaintiffs asserted a negligence claim on the purported ground that a DBSI selling agent failed to conduct due diligence on a particular investment under "FINRA's Regulatory Notice to Members 03–71 and 10–22" before offering it for sale. *Id.* at *11. The *Questar* court rejected the argument that FINRA guidance on due diligence supported a tort of negligent due diligence:

> The Court finds that Plaintiff has not identified a legal duty owed by Defendants by relying only upon FINRA's Regulatory Notice to Members 03–71 and 10–22. First, courts have rejected efforts to derive causes of action from securities regulations based on a negligence standard. *See BNP Paribas Mortgage Corp. v. Bank of Am ., N.A.,* 866 F.Supp.2d 257, 266 (S.D.N.Y.2012) ( "... mere negligent violations of the NYSE [New York Stock Exchange] or NASD [National Association of Securities Dealers] rules are not actionable in federal court; rather, to form the basis for liability in damages, the broker's violations of the rules must be 'tantamount to fraud.' "). Second, Plaintiff argues that Questar "bore a duty to conduct adequate due diligence into DBSI's securities offerings," . . . but fails to identify any negligence case finding that a duty of due diligence exists between a broker-dealer and a purchaser of securities. In this heavily regulated area of the law, the Court finds no basis to create a new common law duty. Because Plaintiff's negligence claim lacks support for the existence of such a duty, it fails as a matter of law.

*Id.* at *12. NSC is similarly unaware of "any negligence case finding that a duty of due diligence exists between a broker-dealer and a purchaser of securities." *Id.* This Court should follow the

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 14 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

*Questar*, *Fox, Mraz,* and *BNP Paribas* courts, among many others, in holding that no such duty exists, especially since securities are already heavily regulated, as the *Questar* court had noted.

New York courts have consistently cited to the Ninth Circuit's *VeriFone* decision in support of the majority rule that NSC is arguing should apply here. *See, e.g., Brady*, 406 F. Supp. 2d at 312, n.1 (citing *VeriFone* for the proposition that "[o]ther jurisdictions have similarly found that the NYSE and NASD rules confer no private right of action."). Indeed, in *VeriFone*, the Ninth Circuit expressly held that "[i]t is well established that violation of an exchange rule will not support a private claim." 11 F.3d at 870.[16] In *Verifone,* shareholders sued a corporation and underwriters claiming violations of securities laws due to failure to disclose projected or potential changes in the corporation's product market. The Ninth Circuit found that plaintiffs' argument that violation of stock exchange rules violated Section 10(b) or Rule 10b–5 was an improper attempt to fabricate a private cause of action. "We decline to hold that a violation of exchange rules governing disclosure may be imported as a surrogate" for a securities law claim. *Verifone*, 11 F.3d at 870. Similarly here, Plaintiffs seek to promote an alleged violation of FINRA's due diligence rules as a "surrogate" for a "private claim" of common law negligence. *Id.*

In sum, the majority rule—followed by leading federal New York authorities as well as the Second and Ninth Circuit Courts of Appeals—precludes Plaintiffs' attempts to circumvent the absence of a private right of action under FINRA. And more specifically, the *Fox*, *BNP Paribas*, and *Questar* courts have explained why *investors cannot bring civil claims of negligent due diligence against broker-dealers*. In contrast, NSC is not aware of *any* court that has ever allowed a negligent due diligence-based cause of action against a broker-dealer to proceed. This Court should not break from longstanding and well-reasoned precedent.

---

[16] *See also Jablon v. Dean Witter & Co*., 614 F.2d 677, 680–81 (9th Cir.1980) (no private cause of action for violation of stock exchange rules, NASD rules).

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 15 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

**C.  Securities Laws Are Heavily Regulated, Militating Against New Tort Claims**

The fact that securities are already subject to extensive federal (and state) regulations militates against the fabrication of a new cause of action. Indeed, the *Questar* court engaged in a preemption-like analysis, holding that in the securities field, a "heavily regulated area of the law, the Court finds no basis to create a new common law duty." 2013 WL 3990319 at *12. The *Questar* ruling thus demonstrates that the regulatory duty of due diligence is completely independent of any duties owed to a client. *See also Smith v. Questar Cap. Corp.*, No. 12-cv-2669 (SRN/TNL), 2014 WL 2560607, at *11 (D. Minn. June 6, 2014) ("The Court stands by its prior ruling that there is no basis to create such a common law duty in this heavily regulated area of the law."). The court's reasoning goes hand in hand with congressional intent *not* to grant a private remedy against broker-dealers for violation of exchange rules. *See also Emmons v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 532 F. Supp. 480, 483–84 (S.D. Ohio 1982) (absence of an express remedy shows a congressional intent not to grant a private remedy against broker-dealer for violation of exchange rules). After all, "the purpose of these types of rules is to standardize the expectation of professionalism within the industry, not to protect the investor-public." *Owens v. Stifel, Nicolaus & Co.*, No. 7:12-CV-144 (HL), 2014 U.S. Dist. LEXIS 82696, at *16 (M.D. Ga., June 18, 2014) (citing *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L. Ed 2d 26 (1975)).

In a relatively recent case, *Luis v. RBC Cap. Mkts., LLC*, 401 F. Supp. 3d 817 (D. Minn. 2019), the court held that allowing plaintiffs to enforce FINRA rules and guidance through a private claim "would vitiate Congress's intent not to allow private rights of action" for violations of those rules and guidance and contravene basic separation of powers principles. *Id.* at 829-30. The court added: "It is also notable that, although Congress has not provided investors a private cause of action by which to enforce FINRA rules and regulations, FINRA provides investors a specialized arbitration forum by which they can enforce such rules or regulations; this forum

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 16 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

remains available to the putative class members here." *Id.* at 833. The *Luis* court entered summary judgment for defendant. *Id.* at 834. This Court should do the same.[17]

From a regulatory standpoint, thought leaders have expressed concern that the private placement "exemption has become an attractive option for con artists as well as individuals barred from the securities industry and others bent on stealing money from investors through false and misleading representations," or outright "scams." *See, e.g.,* Robert N. Rapp, American Law Institute - American Bar Association Continuing Legal Education ALI-ABA Course of Study, *Due Diligence: A Newly Demanding Legal and Regulatory Environment* (March 2011) (detailing "selected enforcement initiatives"). Those are indeed the types of misconduct regulators should (and do) pursue, consistent with the spirit of the Securities Exchange Act.[18]

Plaintiffs allege no such thing. They curiously allege that NSC did not conduct sufficient due diligence, and as a result, NSC should not have sold Beamreach securities to *anyone.* Plaintiffs must resort to fabricating a lesser theory of liability based on *negligent due diligence*— something that does not even exist in the securities arena. Unsurprisingly, courts have rejected similar attempts to circumvent the absence of a private right of action. *See supra* pp. 13-15. Tellingly, NSC has been unable to find any other pending case where plaintiffs are bringing negligence claims based on alleged violations of FINRA due diligence or suitability rules. Plaintiffs have not cited any. As noted, the majority rule operates to preclude such claims.

### D.  "Due Diligence" Arises Not as a Predicate But as a Defense to Liability

The absence of "negligent due diligence" claims in the securities arena is no coincidence. Any notion of "due diligence" in the securities context arises—not as a predicate to liability

---

[17] Undersigned counsel Curt Roy Hineline has represented respondents in hundreds of FINRA arbitration filings. This is the first time he has represented a defendant in a class action lawsuit based on alleged violations of FINRA rules, however. If the types of claims Plaintiffs are asserting were allowed, then almost every FINRA arbitration award in favor of a claimant would be followed by civil litigation. The majority rule operates to prevent that from happening.

[18] As FINRA counsel explained to Plaintiffs' counsel: "FINRA investigations often cast a wider net than the more limited issues litigated in civil disputes." Morrison Decl., Ex. 3.

---

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 17 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

based on any FINRA violation—but as a *defense* to disciplinary charges or allegations of fraud under Securities and Exchange Commission ("SEC") Rule 10b-5. *See* 17 C.F.R. 240.10b-5.

*BNP Paribas*, 866 F. Supp. 2d 257 explained why there is no tort of negligent due diligence with respect to private placements. In private placements, an intermediary broker-dealer's possible liability could only arise from Rule 10b-5, which requires a demonstration of fraudulent intent. *Id.* at 266-68. Examining other decisions discussing a broker-dealer's due diligence duties in Rule 10b-5 actions, the *BNP Paribas* court observed that those cases do not support a finding of liability based on alleged negligent due diligence. *Id.* Due diligence arises only as a *defense* to disciplinary charges or allegations of fraud under Rule 10b-5. *Id.* Plaintiffs have not cited to a single authority, and NSC is unaware of any, that would support an *offensive* use of any "due diligence" rule.

A district court in the Southern District of Texas, evaluating several claims under New York common law, similarly found that an *underwriter* in a private placement had no duty to conduct due diligence or investigate the issuer or the offering. *In re Enron Corp. Secs. Litig.*, 761 F. Supp. 2d 504, 572 (S.D. Tex. 2011) ("There is no statutory requirement that an underwriter conduct a due diligence investigation into a proposed public or private offering.").[19]

Plaintiffs have cited to various authorities throughout this litigation that purport to impose on broker-dealers an affirmative duty to conduct due diligence and/or verify an offeror's statements. *See, e.g., Hanly v. SEC*, 415 F.2d 589 (2d Cir. 1969); *Everest Secs., Inc. v. SEC*, 116 F.3d 1235 (8th Cir. 1997). But as the Southern District of New York—a leading federal district in the area of securities law—has explained, those cases are distinguishable because they involved *disciplinary actions stemming from regulatory enforcement*, not civil liability. Moreover, their facts point to involvement beyond ordinary broker services (*Everest Secs.*), or

---

[19] An underwriter here is subject to even more stringent regulatory requirements than a broker-dealer like NSC. *Univ. Hill Found. v. Goldman, Sachs & Co.*, 422 F. Supp. 879, 898-99 (S.D.N.Y. 1976) ("[M]ore is required of an underwriter than a broker-dealer to discharge its obligation to the investing public.").

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 18 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

completely unfounded and overoptimistic selling tactics (*Hanly*). *See BNP Paribas*, 866 F. Supp. 2d at 266. Decisions like *Hanly* and *Everest* only underscore the reality that, under the heavily regulated framework of securities laws, any violations of FINRA's due diligence rules are subject to (a) regulatory enforcement, not private tort claims, *and even then*, (b) a significant materiality threshold, not an uncertain standard of care under state common law.

### E.  Plaintiffs' Claims Fail Even Under the Inapplicable Minority Rule

A relatively small number of outlier decisions have held that FINRA rules and guidance may provide evidence as to "the standard of care owed by similar professional [brokers] ... to customer/account holders such as [the plaintiff]." *See, e.g., Brink v. Raymond James & Assocs., Inc.*, 341 F. Supp. 3d 1314, 1325-26 (S.D. Fla. 2018).[20] This minority rule is inapplicable here. Since most federal courts, including but not limited to leading New York courts applying controlling New York law, have followed the majority rule, the Court should follow the majority rule and reject the minority rule reflected in *Brink* and similar decisions. Regardless, those minority-rule decisions cannot save Plaintiffs' claims, which fail even under those decisions on at least two independent grounds.

*First*, Plaintiffs' claims are based entirely on allegations of *negligent due diligence*— something that does not exist in the securities arena, as multiple courts have explained. *See, e.g.*, *Fox*, 84 F. Supp. 3d at 245; *BNP Paribas*, 866 F. Supp. 2d at 266-68; *Questar*, 2013 WL 3990319 at *12. Indeed, NSC is aware of no court that has allowed claims of negligent due diligence in a securities context to proceed. Not even one of the minority-rule decisions have allowed such claims, based on NSC's research. This distinction should be dispositive here.

*Second*, as illustrated, *supra* pp. 5-6, Plaintiffs' claims here are based *entirely* on alleged violations of FINRA suitability rules.[21] As the *Brink* court applying the minority rule explained:

---

[20] *See also Cook v. Goldman, Sachs & Co.*, 726 F. Supp. 151 (S.D. Tex. 1989); *Woods v. Piedmonte*, 676 F. Supp. 143 (E.D. Mich. 1987).

[21] Plaintiffs' unjust enrichment claim is derivative of their negligence claims and thus entirely reliant on alleged violations of FINRA suitability rules.

---

"Plaintiff's negligence claim will ultimately fail if it is based solely and exclusively on a violation of a FINRA Rule." 341 F. Supp. at 1325. Plaintiffs' claims must fail for this separate reason.

Plaintiffs have previously insinuated that NSC's written supervisory procedures "supplement the duties owed by NSC." *See* Dkt. 26 at 5:1-6. That is a classic red herring. An internal company document, that does not impose duties or obligations in excess of those imposed by a self-regulatory organization, cannot form the basis of a securities-based claim. *See, e.g., Hauptman*, 349 F. Supp. 3d at 296 (rejecting claim based on internal company documents that "do not impose any obligations on Defendant in excess of those imposed by FINRA."); *see also FFE Transp. Servs. v. Fulghum*, 154 S.W.3d 84, 92, 4 Tex. Sup. J. 267 (2004) ("A company's internal policies 'alone do not determine the governing standard of care.'") (citations omitted); *Zdrojewski v. Murphy,* 254 Mich. App. 50, 62, 657 N.W.2d 721 (2002) ("Defendants are correct in their assertion that internal policies of an institution … cannot be used to establish a legal duty in a negligence claim.") (citations omitted). NSC is aware of no securities court case based solely on a broker-dealer's alleged noncompliance with its own internal company policies, much less a securities case establishing any common law negligence duty based on internal policies. (Surely Congress did not intend for that when it passed the Securities Exchange Act.)

As a registered broker-dealer subject to FINRA's regulatory framework, NSC naturally has internal documents referencing FINRA rules. Plaintiffs do not allege that NSC's written supervisory procedures impose duties or obligations on NSC in excess of those imposed by FINRA. *See, e.g.,* Compl. ¶ 59 ("NSC's compliance manuals, supervision manuals, and internal practices and procedures *also detail the requirement to perform due diligence when selling private placements.*") (emphasis added.) Moreover, Plaintiffs' recent Requests for Admission tellingly seek an admission from NSC that "NSC has internal Written Supervisory Procedures that incorporate FINRA rules and regulations." *See* Morrison Decl., Ex. 1, Request No. 7. Plaintiffs cannot circumvent the absence of a private right of action for alleged negligent due

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 20 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

diligence under FINRA rules by simply pointing to NSC's written supervisory procedures (that require regulatory compliance with those FINRA rules). If they could, then plaintiff investors all over the country would routinely circumvent FINRA's regulatory framework and assert securities claims based solely on internal company policies. No court has ever allowed that. This Court should not create a dangerous precedent.

In sum, the Court should apply the majority rule followed by the New York courts and most other courts, as well as follow the multiple courts that have expressly disallowed similar claims of negligent due diligence. Should this Court consider any minority-rule decision (it should not), it should find that Plaintiffs' novel claims of negligent due diligence, based entirely on alleged violations of FINRA suitability rules, cannot survive summary judgment under those outlier decisions either. As noted, based on NSC's research, not one of those decisions have allowed plaintiff investors to fabricate a novel tort of negligent due diligence.

## F.  Washington State Cases Do Not Apply Here (They are Also Distinguishable)

Because the majority rule and/or New York law govern Plaintiffs' claims, Washington law is irrelevant here. To the extent the Court is inclined to even consider a minority-rule decision of the Washington Court of Appeals like *Garrison v. Sagepoint Fin., Inc*., 185 Wash. App. 461, 486, 504 (2015)[22], NSC again respectfully urges the Court to find that Plaintiffs' novel claims of negligent due diligence, based entirely on alleged violations of FINRA suitability rules, are distinguishable from the unique circumstances of *Garrison*.[23] In *Garrison*, AIG Financial was sued for negligent supervision, a violation of the Washington State Securities Act, and breach of fiduciary duty because one of its stockbrokers had allegedly misappropriated over $20 million from a revocable trust of which he was also the sole manager and trustee (the

---

[22] *Garrison* is the only Washington court that has followed the minority rule. *Id.* at 504. The Washington Supreme Court has *not* endorsed the minority rule.

[23] The Washington Court of Appeals has also explained that *Garrison* primarily relies on a Southern District of Iowa decision (a minority-rule decision) and is otherwise limited to its "particular factual scenario." *Burdick v. Rosenthal Collins Grp., LLC*, 194 Wash. App. 1016, 2016 WL 3082652, at *9 (Wash. Ct. App. May 31, 2016) (unpublished).

---

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 21 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

stockbroker's grandparents had left him and his sister $26 million). Aside from these unusual facts, this case has nothing to do with the claims at issue here, which are based entirely on alleged negligent due diligence in alleged violation of FINRA's suitability rules.[24]

Regardless of the unique circumstances in *Garrison*, the Ninth Circuit has made clear that "[i]n analyzing state law in a diversity case, [the Court is] bound by the decisions of the state's highest court." *U.S. Fidelity & Guar. Co. v. Lee Invs., LLC*, 641 F.3d 1126, 1133-34 (9th Cir. 2011). Consequently, this Court is not bound by *Garrison*. Indeed, because this Court is sitting in diversity and *Garrison* is not a Washington Supreme Court decision, NSC respectfully asks the Court to place little, if any, persuasive value on *Garrison*.

### G. Allowing Plaintiffs' Outlier Claims to Proceed Would Open up Pandora's Box

As noted, no court has *ever* allowed private civil claims of negligent due diligence in a securities context to proceed. To the contrary, courts have repeatedly denied such claims, which are subject only to regulatory enforcement, not civil claims (in a class action context, no less). This case stands alone for good reason. If Plaintiffs' unprecedented claims are allowed to proceed, then any investor who loses money on a private investment would always be able to sue on the purported ground that a placement agent should have done *more* due diligence on that investment before soliciting it for sale. One can always do more of something. And since the inherently subjective question of "how much due diligence is truly enough?" would generate a factual dispute and competing expert evidence, most if not all of those cases would survive until trial, placing an undue burden on defendants and constraining court resources. Thankfully those cases do not exist, based on NSC's extensive research. NSC respectfully urges the Court to keep this Pandora's Box closed.[25]

---

[24] Despite these factual differences, the *Garrison* court recognized that there is no private cause of action against a self-regulatory organization. *Id.* at 486 ("NASD Rules do not create a private cause of action….").

[25] Plaintiffs' similar insinuation that accredited and institutional investors, who were provided with relevant risk disclosures, are unable to decide for themselves as to whether they should invest in a high-risk private investment is also unprecedented. If Plaintiffs' claims are allowed to

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 22 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1

## V.    CONCLUSION

2      Under the majority rule and New York law, an investor cannot advance a private civil

3   claim for a broker-dealer's alleged negligent due diligence, as Plaintiffs are attempting. Should

4   the Court allow Plaintiffs' novel claims of negligent due diligence to proceed, the Court would

5   break from well-reasoned precedent and create bad law. NSC is aware of no other court that has

6   gone down this path, and for good reason—it would result in an impossible situation for

7   defendant broker-dealers, among other issues. Subjective questions of whether their due

8   diligence was sufficient in regard to a private offering would almost always go to a jury.

9   Congress never intended for that kind of pandemonium, as many courts have explained,

10  especially because securities are already subject to extensive federal (and state) regulations. In

11  short, there is no basis for inventing a novel tort of negligent due diligence, and doing so would

12  set a dangerous precedent. NSC respectfully asks the Court to avoid setting this dangerous

13  precedent, and to grant this early motion for summary judgment in favor of NSC and against

14  Plaintiffs.

15

16      DATED this 23rd day of December, 2021.

17                                          Respectfully submitted,

18                                          **BAKER & HOSTETLER LLP**

19
                                            *s/ Curt Roy Hineline*
20                                          Curt Roy Hineline, WSBA #16317
                                            James R. Morrison, WSBA #43043
21                                          Alexander Vitruk, WSBA #57337
                                            Logan F. Peppin, WSBA #55704
22                                          999 Third Avenue, Suite 3900
                                            Seattle, Washington 98104
23                                          Tel: (206) 332-1380
                                            Fax: (206) 624-7317
24

25  _____
    proceed, this novel theory would seriously threaten the pillars of our free market economy and
26  may discourage placement agents from soliciting for sale private investments in innovative,
    high-risk but high-reward companies. This Pandora's Box should remain closed as well.
27

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 23 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

Email: chineline@bakerlaw.com
Email: jmorrison@bakerlaw.com
Email: avitruk@bakerlaw.com
Email: lpeppin@bakerlaw.com

Daniel J. Buzzetta (*pro hac vice*)
45 Rockefeller Plaza
New York, NY 10111
Tel: (212) 589-4236
Fax: (212) 589-4201
Email: dbuzzetta@bakerlaw.com

*Attorney for Defendant*
*National Securities Corporation*

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 24 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

### CERTIFICATE OF SERVICE

I hereby certify that on December 23, 2021, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David P. Neuman, WSBA #48176
Israels Neuman PLC
10900 NE 8th Street, Suite 100
PMB #155
Bellevue, Washington 98004
Tel: (206) 795-5798
Email: dave@israelsneuman.com

Joseph Wojciechowski, Esq., *pro hac vice*
Sara Hanley, Esq., pro hac vice
Stoltmann Law Offices, P.C.
161 N. Clark St., 16th Floor
Chicago, IL 60601
Tel: (312) 899-6625
Email: joe@stoltlaw.com
        sara@stoltlaw.com

Joshua B. Kons, Esq.
LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow St., Lower Level
Weatogue, Connecticut 06089
PH: (860) 920-5181
Email: joshuakons@konslaw.com

Alexander Loftus, Esq.
*Pro hac vice*
LOFTUS & EISENBERG, LTD.
161 N. Clark St., 16th Floor
Chicago, IL 60601
Tel: (312) 899-6625
alex@loftusandeisenberg.com

**Attorneys for Plaintiffs**

Curt Roy Hineline, WSBA #16317
James Morrison, WSBA #43043
Alexander Vitruk, WSBA #57337
Logan F. Peppin, WSBA #55704
BAKER & HOSTETLER, LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Tel: (206) 332-1380
Fax: (206) 624-7317
Email: chineline@bakerlaw.com
        jmorrison@bakerlaw.com
        avitruk@bakerlaw.com
        lpeppin@bakerlaw.com

Daniel Buzzetta (*pro hac vice*)
BAKER & HOSTETLER, LLP
45 Rockefeller Plaza
New York, NY 10111-0100
Tel: (212) 589-4236
Fax: (212) 589-4201
Email: dbuzzetta@bakerlaw.com

**Attorneys for Defendant**

s/ Laetitia Knox
Laetitia Knox
Legal Assistant

DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT - 25 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380