1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below,<br><br>        Plaintiffs,<br><br>        v.<br><br>NATIONAL SECURITIES CORPORATION, a Washington Corporation,<br><br>        Defendant. | Case No. C18-1773RSM<br><br>ORDER DENYING DEFENDANT'S FIRST MOTION FOR SUMMARY JUDGMENT |

## I.    INTRODUCTION

This matter comes before the Court on Defendant National Securities Corporation ("NSC")'s first Motion for Summary Judgment, Dkt. #83.  The Court has determined that oral argument is unnecessary.  For the reasons stated below, the Court DENIES this Motion.

## II.    BACKGROUND

Defendant NSC is a registered securities broker-dealer "nominally headquartered in Washington state."  Dkt. #62 ("Troccoli Decl."), ¶ 11.  Plaintiffs James Ginzkey, Richard Fitzgerald, Charles Cerf, and Barry Donner used NSC's services to purchase investments in a

ORDER DENYING NSC'S FIRST MOTION FOR SUMMARY JUDGMENT - 1

company called Beamreach that produced solar panels for residential and commercial use. Dkt. #1. Plaintiffs allege that NSC failed to conduct proper due diligence as required by rules set forth by the Financial Industry Regulatory Authority ("FINRA"). *Id*.

As NSC understood it, Beamreach purported to be a high efficiency solar panel manufacturer based out of California that was looking to raise funds to continue its development of high yield solar panels. Dkt. #53-2 ("Troccoli Dep.") at 99:5-9. Beamreach was looking to raise money from "anybody and anyone that would invest." *Id*. at 102:8-10. Beamreach enlisted NSC as a placement agent to help it raise additional capital by introducing prospective investors to the company. *Id.* at 48:4-6.

NSC is required to follow FINRA rules. *Id.* at 60:15-17. Under FINRA's suitability rule, NSC was required to have a reasonable basis to conclude the investment at issue was suitable for at least some investors, and NSC was required to conduct reasonable due diligence to provide it with an understanding of the risks and rewards associated with recommending a security. *Id.* at 64:9-18. NSC has adopted and implemented this FINRA rule into its internal policies and procedures. *Id.* at 64:19-22.

Pursuant to FINRA Rule 2111.05(a), NSC is required to perform reasonable due diligence on a private placement prior to offering it for sale to its customers. FINRA Rule 2111.02 explicitly states that a broker-dealer cannot disclaim any responsibilities under the suitability rule. FINRA provides investors an arbitration forum by which they can enforce these rules. *See Luis v. RBC Cap. Mkts.*, LLC, 401 F. Supp. 3d 817 (D. Minn. 2019) (citing FINRA Rule 12200).

Plaintiffs have detailed many "red flags," they allege NSC should have noticed about Beamreach. *See* Dkt. #14 at 13–17. These red flags and a more substantive discussion of

Plaintiffs' negligence claim will be addressed in the Court's forthcoming order on NSC's second Motion for Summary Judgment.

As outlined in the Complaint, in February 2015, NSC began acting as a placement agent for Breamreach's Series D securities offering.  The securities purchased by Plaintiffs and Class Members in the Series D round consisted of preferred stock, beginning in February 2015 (the "Series D Offering"). A secondary offering in June 2016, the Series D-1 preferred stock round, was initially an equity offering (the "Series D-1 Offering") then was switched to a 9% convertible promissory note offering a 300% "principal step up" in the event of an acquisition, in November 2016 (the "Series D-2 Offering").  NSC acted as both the primary placement agent and exclusive broker/dealer for the Beamreach Offerings.  The total capital raised by NSC in the Beamreach Offerings was approximately $34.5 million.  In the case of the Beamreach Series D round, in which Plaintiffs participated, NSC earned a fee of 10% cash and 10% warrants for its role as placement agent.  *Id.* at 48:25-49:1. The brokers selling Beamreach to NSC clients earned an allocation of the placement agent fee.  *Id.* at 49:9-14.

The Beamreach Offerings were only made to "a limited group of sophisticated 'accredited investors' within the meaning of Rule 501(a) under the Securities Act of 1933 as amended (the 'Securities Act'), in a private placement designed to be exempt from registration under the Securities Act, and other applicable securities laws." Dkt. #20-1 at 2; Dkt. #20-2 at 2; Dkt. #20-3 at 4.  "Accredited investors" are defined by law as investors whose individual net worth, or joint net worth with that person's spouse, exceeds $1,000,000 or they have an annual income exceeding $200,000 in each of the two most recent years or joint income with their spouse during those years in excess of $300,000.  *See* 17 C.F.R. §230.501(a)(5), (6).

The Series D and D-1 Offerings were presented to investors through private placement memoranda ("PPMs").  Dkts #20-1 and #20-2. The Series D-2 Offering was presented as a supplement to the Series D-1 Offering PPM (collectively, the PPMs and its supplements are identified as the "Beamreach PPMs").  Dkt. #20-3.  In each PPM, NSC made warnings to investors about the high-risk nature of investing in Beamreach.

Plaintiffs allege they relied on NSC's "approval of the Beamreach Offerings for sale" to make their investments in Beamreach.  Dkt. #1 at 25.  On November 15, 2016, Plaintiff Ginzkey invested $89,214.75 in the Series D-2 offering.  On April 30, 2015, Plaintiff Fitzgerald invested $175,000 in the Series D offering; on October 28, 2016, Fitzgerald invested $12,745 in the Series D-2 offering.  On February 9, 2016, Plaintiff Cerf invested $52,479 in the Series D offering. On April 10, 2015, Plaintiff Donner invested $149,940 in the Series D offering; on October 20, 2016, Donner invested another $100,459 in the Series D-1 offering.

On February 9, 2017, Beamreach filed for Chapter 7 bankruptcy citing a "catastrophic cash flow situation" and "loans due."  Plaintiffs' investments resulted in a total loss.  *See In re: Beamreach Solar*, Inc. 17-bk-50307, (N.D. Cal. Feb. 9, 2017).

Plaintiffs filed this putative class action on December 10, 2018, asserting claims of negligence and unjust enrichment.  Dkt. #1.  Although Plaintiffs cite to FINRA to establish a standard of care for the negligence claim, they do not allege a breach of FINRA rules as a separate cause of action.[1]

On June 6, 2019, the Court denied NSC's Motion to Dismiss the Complaint.  Dkt. #28.

On April 27, 2021, the Court certified the Class and Sub-classes as follows:

**Beamreach Class**

---

[1] The Court has previously ruled on this point. *See* Dkt. #28 at 6 ("The Court notes that Plaintiffs are not pleading a cause of action under FINRA, but citing these rules to show duty and breach under their common law negligence claims.").

ORDER DENYING NSC'S FIRST MOTION FOR SUMMARY JUDGMENT - 4

All persons who invested in Beamreach Offerings (as defined above) through the Defendant, at any time between February 6, 2015 and February 9, 2017 inclusive (the "Class Period").

**Series D Sub-Class**

All persons who invested in Beamreach Series D (as defined above) through the Defendant, at any time between February 6, 2015 and December 31, 2016 inclusive (the "Sub-Class D Period").

**Series D-1 Sub-Class**

All persons who invested in Beamreach Series D-1 (as defined above) through the Defendant, at any time between June 1, 2016 and February 9, 2017 inclusive (the "Sub-Class D-1 Period").

**Series D-2 Sub-Class**

All persons who invested in Beamreach Series D-1 (as defined above) through the Defendant, at any time between October 1, 2016 and February 9, 2017 inclusive (the "Sub-Class D-2 Period").

*See* Dkt. #66 at 4–5.

On December 23, 2021, NSC brought its first Motion for Summary Judgment, arguing that New York law should apply in this case, that a private right of action cannot be brought under FINRA, and that Plaintiffs' negligence claim cannot circumvent the absence of a private right of action under FINRA.  Dkt. #83.  NSC has also filed a second "merits-based" Motion for Summary Judgment, Dkt. #96, which will be addressed by the Court later.

## III.   DISCUSSION

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are

those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).   The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B.  Analysis**

As an initial matter, the Court finds that Washington law applies to the substantive legal questions in this case.  NSC now seeks to apply New York law.  However, NSC has previously argued Washington law, *see* Dkt. #20 at 12 n.3, and the Court has not definitively ruled on this issue.  Federal courts look to the forum state's choice of law rules to determine the controlling substantive law.   Under Washington's choice of law rules, "[t]he rights and liabilities of the parties with respect to an issue in tort are [d]etermined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."  *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580 (1976).   "Contacts to be taken into account . . . to determine the law applicable to an issue include: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id*. at 580-81.  NSC states that fifty investors were located in New York and ten in Washington State.  Dkt. #83 at 10.  At least some injury occurred in Washington State.  The conduct causing the injury occurred in New York and California, in the sense that the due diligence work occurred in those states.  Dkt. #85 at ¶ 3.  NSC is headquartered in this district, and this is where the lawsuit was filed and has proceeded for years prior to the instant Motion.  Given the multiple locations of Plaintiff investors and NSC's operations, there was no center to the relationship between the parties in this case.  Given NSC's prior reliance on Washington law, failure to have this case transferred to New York, and all of the above, the Court will apply Washington law.

NSC repeats that there is no private right of action under FINRA.  Dkt. #83 at 12.  But the Court has already ruled that Plaintiffs are not attempting to sue for a breach of FINRA rules.  *See* Dkt. #28 at 6 ("The Court notes that Plaintiffs are not pleading a cause of action under FINRA, but citing these rules to show duty and breach under their common law negligence claims.").

NSC next argues that "courts have rejected efforts to shoehorn into FINRA suitability rules a new tort of negligent due diligence."  Dkt. #83 at 13.  NSC cites to a New York case, *Fox v. Lifemark* Sec. Corp., 84 F. Supp. 3d 239, 245 (W.D.N.Y. 2015), for the proposition that "FINRA does not provide a private right of action, thus even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of FINRA."  NSC cites to many New York and neighboring state cases to argue there is a "majority rule" in its favor.  Plaintiffs cite to a Washington case, *Garrison v. Sagepoint Financial, Inc.*, 185 Wash. App. 461 (Wash. Ct. App. 2015) where the Washington Court of Appeals found that FINRA

ORDER DENYING NSC'S FIRST MOTION FOR SUMMARY JUDGMENT - 7

rules can be used as evidence of standard of care in a negligence case. Both parties cite to out-of-state cases where courts have gone both ways on this issue.

This Court is inclined to apply Washington state law for the reasons stated above and finds *Garrison* persuasive. Plaintiffs are citing to FINRA rules to set forth the standard of care applicable to NSC under the circumstances in this case, which are analogous to the facts in that case. Although the Court is not bound by the holdings in *Garrison*, the burden is on NSC here to convince the Court that this claim should be dismissed. NSC cites no controlling law preventing Plaintiffs' negligence claim from proceeding. Furthermore, Plaintiffs argue that FINRA rules were incorporated into NSC's own internal policies which also inform the applicable standard of care. This serves as an additional basis for Plaintiffs' negligence claim to cite to these rules. *See* Dkt. #88 at 22 (citing NSC's 30(b)(6) deposition).

## IV.    CONCLUSION

Having considered the briefing from the parties and the remainder of the record, the Court hereby finds and ORDERS that Defendant NSC's first Motion for Summary Judgment, Dkt. #83, is DENIED.

DATED this 10th day of March, 2022.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER DENYING NSC'S FIRST MOTION FOR SUMMARY JUDGMENT - 8