THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below,<br><br>        Plaintiffs,<br><br>   v.<br><br>NATIONAL SECURITIES CORPORATION, a Washington Corporation,<br><br>        Defendant. | Case No.: 2:18-cv-01773-RSM<br><br>**DEFENDANT NATIONAL SECURITIES CORPORATION'S MOTION FOR INTERLOCUTORY APPEAL OF COURT ORDER DENYING FIRST MOTION FOR SUMMARY JUDGMENT**<br><br>**NOTED ON MOTION CALENDAR: APRIL 8, 2022**<br><br>ORAL ARGUMENT REQUESTED |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA  98104-4040
Telephone:  (206) 332-1380

Pursuant to 28 U.S.C. § 1292(b), Defendant National Securities Corporation ("NSC") respectfully moves the Court to certify for interlocutory appeal the Court's March 10, 2022 Order Denying NSC's First Motion for Summary Judgment (ECF No. 111). If the Court grants this motion for certification, NSC further moves the Court to concurrently stay all proceedings in this case and to vacate the trial date and all remaining deadlines established in the Court's Scheduling Order (ECF No. 76) pending action by the Ninth Circuit on NSC's application for interlocutory appeal.

## I.    INTRODUCTION

In its April 27, 2021 Order Granting Class Certification (ECF No. 66), the Court held that "either Washington o[r] New York law would apply" to this dispute (*id*. at 7:27-28). In connection with its first motion for summary judgment (ECF No. 83), NSC submitted substantial evidence supporting application of New York law over Washington law (ECF No. 85). Plaintiffs did not question the accuracy or admissibility of that evidence. Plaintiffs did not submit evidence of their own supporting application of Washington law. Plaintiffs even admitted that New York "satisfies three of the four contacts taken into consideration [regarding which law should apply]," including "where the relationship between the parties is centered" (ECF No. 64 at 10:15-20). Despite affirmative evidence from NSC as well as Plaintiffs' express admission, the Court held on March 10, 2022 that "there was no center to the relationship between the parties" (ECF No. 111 at 7:9-10). Without considering—between New York and Washington—which state bears the most significant relationship to the alleged misconduct and the parties, the Court found that "some" injury had occurred in Washington state and thus Washington law should apply. Based on only one intermediate Washington state court case the Court found "persuasive," the Court denied NSC's first motion for summary judgment (*id*. at 8:3-7).

Had the Court applied New York law, as supported by undisputed evidence, this litigation would be over, saving the Court and litigants substantial time and resources. In Plaintiffs' own words, NSC's alleged "***negligent due diligence*** on and approval of Beamreach"

---

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 1 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

forms "***the core of this case***" (ECF No. 64 at 1:23-26 (emphasis added)). This is critical since leading New York federal courts in the securities arena (and other courts) have expressly rejected investor claims of "negligent due diligence" against broker-dealers under New York law. In the 91-year history of securities litigation since the Securities Act of 1933, no court has allowed an affirmative negligent due diligence claim in the securities context, until this Court's March 10, 2022 Order. The Southern District of New York explained that due diligence in the securities context arises only as a *defense* to disciplinary charges or allegations of fraud under SEC Rule 10b-5. Under the Court's March 10, 2022 Order, plaintiff investors would never have to bring an omissions-based Rule 10b-5 claim because a simple negligence claim would suffice. At least, the question of whether a negligent due diligence claim may proceed in the securities context has never been addressed, and is therefore ripe to be addressed by the Ninth Circuit.

Separately, multiple New York and other federal courts have held that an investor cannot circumvent the absence of a private right of action under FINRA by (a) claiming a violation of a FINRA rule, and then (b) calling it "negligence." But that is precisely what Plaintiffs have done (ECF No. 91 at 9:10-11:4). They have presented a cat and called it "dog." If that were allowed, then the prohibition of a private right of action under FINRA would be no prohibition at all.

## II.    LEGAL ARGUMENT

### A.    The Criteria For Certification Under 28 U.S.C. § 1292(b) Are Met.

The certification requirements of 28 U.S.C. § 1292(b) require "(1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement Anti-Trust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982).

#### i.    There Are At Least Three Separate Controlling Questions Of Law.

A question is deemed controlling if (1) its incorrect disposition would require reversal of a final judgment; (2) its resolution has controlling value; or (3) it would save the Court and the litigants substantial time and resources. *Id.*, 673 F.2d at 1026, *aff'd*, 459 U.S. 1190 (1983).

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 2 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

The term "controlling" denotes "situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *Id.* at 1026. "[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court." *Id.*

Here, there are at least three (3) *separate* controlling questions of law, any one of which qualifies for section 1292(b) certification:

### 1. The question of whether New York or Washington law should apply has controlling value.

The question of whether New York or Washington substantive law should apply "has controlling value" because application of New York law would require the Court to review directly on-point and leading New York federal decisions in the securities arena, and likely grant NSC's first motion for summary judgment (ECF Nos. 83, 91), thus saving the Court and litigants substantial time and resources.

In *BNP Paribas Mortg. Corp. v. Bank of Am.*, the Southern District of New York— widely recognized as a leading authority in securities law—held that, in the context of a private placement, there is no such thing as a tort of negligent due diligence. 866 F. Supp. 2d 257, 266 (S.D.N.Y. 2012) ("Courts in this district have also rejected similar efforts to derive causes of action from securities regulations premised on a negligence standard.") As detailed in Plaintiffs' Complaint and admitted in prior briefing, NSC's alleged "***negligent due diligence*** on and approval of Beamreach" forms "the core of this case" (ECF No. 64 at 1:23-26 (emphasis added); ECF No. 83 at 5:19-24; Compl. at 10:18-20, ¶ 58). Accordingly, had the Court applied New York precedent, it would have found *BNP Paribas* highly persuasive, and likely would have granted NSC's first motion for summary judgment.

The *BNP Paribas* court further explained that due diligence in the securities context arises only as a *defense* to disciplinary charges or allegations of fraud under SEC Rule 10b-5. *See* 866 F. Supp. 2d 257 at 266-68. In private placements, an intermediary broker-dealer's possible liability could only arise from Rule 10b-5, which requires a clear, "cogent and compelling"

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 3 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1380

demonstration of fraudulent intent. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1179 (C.D. Cal. 2007); 17 C.F.R. 240.10b-5. Since Plaintiffs do not (and cannot) bring a Rule 10b-5 claim, their negligent due diligence claim fails under New York law.

In *Fox v. Lifemark Sec. Corp.*, 84 F. Supp. 3d 239 (W.D.N.Y. 2015), the plaintiff had asserted a common law negligence claim, alleging that "the investments were unsuitable" and that a placement agent "breached the appropriate **standard of care** under FINRA." *Id*. at 245 (emphasis added). This is precisely what Plaintiffs are claiming here. The *Fox* court specified, however, that "even if defendants violated FINRA rules, plaintiff cannot recover for negligence based on the alleged violation of FINRA." *Id*. Had this Court applied New York law, it should have likewise found *Fox* highly persuasive, and granted NSC's motion for summary judgment.

Separately, the choice of law question is controlling for the fundamental reason that the parties need to have certainty as to which law applies in advance of the estimated 10-day trial beginning on May 9, 2022.[1] Immediate guidance from the Ninth Circuit would save the litigants substantial time, money and resources in advance of extensive trial preparation and proceedings. Resolving the choice of law question now would help avoid such "protracted and expensive" litigation in the immediate future, which is precisely the purpose of an interlocutory appeal. *In re Cement Anti-Trust Litig.*, 673 F.2d at 1026.

2.     **The question of whether a common law "negligent due diligence" claim may exist in the securities context separately has controlling value.**

The question of whether a common law negligence claim based on an alleged failure of *due diligence* may be brought in the securities arena *separately* has "controlling value." In the 91-year history of securities litigation since the Securities Act of 1933, no court has ever allowed this (until now, apparently). The Washington state court decision cited by the Court—*Garrison v. Sagepoint Fin., Inc*., 185 Wash. App. 461 (Wash. Ct. App. 2015)—has absolutely nothing to

---

[1] Following multiple failed attempts at mediation (ECF Nos. 93, 110), the parties are all but certain to resolve this matter through trial if the Court were to deny NSC's second motion for summary judgment.

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 4 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

do with alleged negligent due diligence. It deals with negligent supervision only, which is not at issue here.

On the other hand, multiple courts (from New York and other federal courts) have expressly held that a common law affirmative "negligent due diligence" claim has no place in the heavily regulated securities arena. In addition to *BNP Paribas* and *Fox*, another district court in Minnesota relied on *BNP Paribas* and held that a plaintiff, like here, had "fail[ed] to identify any negligence case finding that a duty of due diligence exists between a broker-dealer and a purchaser of securities." *Smith v. Questar Cap. Corp.*, No. 12-cv-2669 (SRN/TNL), 2013 WL 3990319, at *1 (D. Minn. Aug. 2, 2013). That court went on to say: "In this heavily regulated area of the law, the Court finds no basis to create a new common law duty. Because Plaintiff's negligence claim lacks support for the existence of such a duty, it fails as a matter of law." *Id*. Likewise, a district court in the Southern District of Texas, evaluating several claims under New York common law, had similarly found that "[t]here is no statutory requirement that an underwriter conduct a due diligence investigation into a proposed public ***or private*** offering." *In re Enron Corp. Secs. Litig.*, 761 F. Supp.2d 504, 572 (S.D. Tex. 2011) (emphasis added).[2]

Given multiple express holdings that an affirmative common law "negligent due diligence" claim is unavailable in the securities arena, *and the absence of single contrary opinion in the 91-year history of securities litigation*, the Ninth Circuit is likely to find that Plaintiffs "negligent due diligence" claim cannot proceed as a matter of law. This would "materially affect the outcome of [this] litigation" and save both the Court and the litigants substantial time and resources moving forward. *In re Cement Anti-Trust Litig.*, 673 F.2d at 1026.

### 3. The question of whether Plaintiffs are circumventing the prohibition of a private right of action under FINRA separately has controlling value.

The question of whether Plaintiffs are circumventing the prohibition of a private right of action under FINRA, is not only controlling, but remains unresolved. In the March 10, 2022

---

[2] Other cases in accord with these rulings may be found in NSC's moving and reply papers (ECF Nos. 83, 91).

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 5 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1   Order, this Court stated that it "has already ruled that Plaintiffs are not attempting to sue for a

2   breach of FINRA rules" (ECF No. 111 at 7:14-18), but the Court never substantively addressed

3   this legal issue. The Court previously "note[d]" in passing that Plaintiffs "are not pleading a

4   cause of action under FINRA" in its June 6, 2019 Order denying NSC's motion to dismiss (ECF

5   No. 28 at 6:4-6). However, the question of whether Plaintiffs are circumventing the absence of a

6   private right of action under FINRA was not at issue. At issue was only the narrow legal question

7   of whether the assumption of risk doctrine bars Plaintiffs' claims (ECF No. 28).

8        In support of its first motion for summary judgment, however, NSC has detailed how

9   Plaintiffs' negligent due diligence claim is based *entirely* on an alleged violation of a FINRA

10   rule (ECF No. 83 at 6:8-7:2; ECF No. 91 at 9:8-11:4). Stated differently, the requirements of

11   FINRA Rule 2111.05(a) are *exactly the same* as what Plaintiffs need to prove in order to prevail

12   on their negligence claim, which renders Plaintiffs' claim nothing more than a disguised FINRA

13   Rule 2111.05(a) claim. The Court did not meaningfully discuss those facts and arguments, so

14   NSC respectfully seeks guidance from the Ninth Circuit on this pivotal issue, especially when

15   the Ninth Circuit has held that "[i]t is well established that violation of an exchange rule will not

16   support a private claim . . . We decline to hold that a violation of exchange rules [under FINRA's

17   predecessor, the NASD] governing disclosure may be imported as a surrogate" for a securities

18   law claim. *In re Verifone Sec. Litig.*, 11 F.3d 865, 870 (9th Cir. 1993).

19                    **ii.      There Are Substantial Grounds For Differences Of Opinion.**

20        As evidenced by this Court's decision on the summary judgment motion, there are

21   substantial grounds for a difference of opinion regarding each of the three controlling questions

22   of law. An issue on which there is substantial ground for difference of opinion is simply "one on

23   which courts have disagreed" (*Coast Fed Bank v. United States,* 49 Fed. Cl. 11, 14 (Fed. Cl.

24   2001), or one that is "difficult and of first impression." *W Tenn Chapter of Assoc. Builders &*

25   *Contractors, Inc. v. City of Memphis*, 138 F. Supp. 2d 1015, 1019 (W.D. Tenn 2000).

26

27

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 6 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

**1.    There are substantial grounds for a difference of opinion as to whether New York or Washington law should apply.**

With respect to choice of law, the Court previously ruled that either Washington or New York law should apply (ECF No. 66 at 7:27-28). As the Court clarified in its March 10, 2022 Order, the legal test is which state "has the most significant relationship to the occurrence and the parties" (ECF No. 111 (citing to *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 580 (1976)). The Court misapplied the *Johnson v. Spider Staging* choice-of-law test. Having previously ruled that either New York or Washington law should apply to this litigation, the Court was obligated to decide *which of these two jurisdictions* has "the most significant relationship to the occurrence [alleged negligent due diligence] and the parties [NSC and Plaintiffs]." *See* 87 Wn.2d at 580. The Court found that, because there were merely 10 out of the 477 Beamreach investors who resided in Washington (*i.e.*, 0.02 percent), that "[a]t least some injury occurred in Washington state."[3] This does not explain how Washington has a more significant relationship than New York to the alleged negligent due diligence or the parties.

Indeed, NSC submitted competent, detailed, and frankly overwhelming evidence from NSC's lead banker for due diligence regarding Beamreach (Carmelo Troccoli):

- NSC conducted its due diligence regarding Beamreach ***primarily*** in its New York headquarters, where major policy decisions were also made (ECF 85 ¶¶ 3, 4);
  - In contrast, NSC's Washington office functioned primarily as an administrative office and was not involved with Beamreach investments, much less any due diligence (*id.* ¶¶ 5-7);
- Substantially more Beamreach investors resided in New York (50) and nearby New Jersey (30) and Connecticut (7), than in Washington (10) (*id.* ¶ 20);

---

[3] The Court also seemed to suggest NSC was *only* headquartered in Washington (ECF No. 111 at 7:7), when the evidence unquestionably demonstrates that NSC was concurrently headquartered in New York, where its *operational* headquarters were located and where NSC primarily conducted due diligence. In any event, "the fortuitous location of [a defendant's] headquarters" has no bearing on the choice-of-law analysis (*Maniscalo v. Brother Int'l (USA) Corp.*, 709 F.3d 202, 208 (3d Cir. 2013), especially where NSC's Washington co-headquarters indisputably was *not* involved in the Beamreach investments (ECF No. 85 at ¶ 5).

---

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 7 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

- Many of the 27 NSC brokers involved in the Beamreach offerings had worked from or traveled to NSC's New York headquarters, and 19 of those 27 brokers resided in New York or nearby New Jersey or Connecticut (*id*. ¶¶ 8-9);

    o In contrast, none (0) of those NSC brokers or their supervisors resided or worked in Washington, and no other NSC broker or supervisor from Washington had any involvement with Beamreach (*id*. ¶¶ 10-11);

- NSC analysts, executives, officers, and directors involved with Beamreach resided in New York, regularly worked from NSC's New York headquarters, or traveled to NSC's New York headquarters regularly for work (*id*. ¶ 12).

    o In contrast, again, none (0) of those analysts, executives, officers, and/or directors had resided in or worked out of Washington (*id*. ¶ 13).

- Likewise, none (0) of the named Plaintiffs resided in Washington (*id*. ¶ 13).

- Plaintiffs have even admitted that New York "satisfies three of the four contacts taken into consideration [regarding which law should apply]," including "where the relationship between the parties is centered" (ECF No. 64 at 10:15-20).

In opposition Plaintiffs did not question the accuracy or admissibility of NSC's evidence. Nor did Plaintiffs submit evidence of their own supporting application of Washington law. It is therefore undisputed that (a) there is no evidence Washington played any role in the Beamreach offerings outside of 10 of approximately 477 class members (none of which are named Plaintiffs) residing here, and (b) New York is where NSC has its operational headquarters, where NSC ran its due diligence, where brokers resided and worked, and where significantly more class members resided than Washington. This warrants application of New York law over Washington law. The problem with applying Washington law here over New York law is exemplified by the fact that New York class members now have a cause of action in this case, when they would not have one in their home state, based on the fortuitous fact that out-of-state plaintiffs chose to sue in Washington.

---

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 8 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

Aside from misapplying the *Johnson v. Spider Staging* choice-of-law test, the Court erred on at least two other grounds:

**First**, the Court faulted NSC for its "prior reliance on Washington law" in NSC's February 28, 2019 motion to dismiss regarding the narrow issue of assumption of risk (ECF No. 7:10-11). But there can be no judicial estoppel here as a matter of law. *Adelphia Recovery Trust v. HSBC Bank USA*, 634 F.3d 678, 95-96 (2nd Cir. 2011) (enumerating elements of judicial estoppel, including requirement that party was successful in asserting a position); *Milton H. Greene Archives, Inc. v. Marilyn Monroe LLC*, 692 F.3d 983, 993 (9th Cir. 2012) (same). NSC's motion to dismiss on a narrow dispositive issue (and before the start of discovery) was not successful; instead, this Court later recognized the potential applicability of New York or Washington law well *after* ruling on NSC's motion to dismiss. *Id.* Moreover, a party does not waive a choice-of-law argument by not raising it an early stage of the case. *See, e.g., Rojas v. Bosch Solar Energy Corp.*, 443 F. Supp. 3d 1060, 1071 (N.D. Cal. 2020); Fed. R. Civ. P. 12(g).

**Second**, the Court also faulted NSC for "failure to have this case transferred to New York," without citing to any authority (ECF No. 7:10-11). But district courts routinely apply the law of jurisdictions other than the law of the forum state in diversity actions, and seldom allow a change of venue based solely on choice-of-law principles. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (enumerating numerous convenience and fairness factors a district court must consider on a motion for change of venue).

Although the Court erred in its choice-of-law analysis, for purposes of section 1292(b) certification, NSC need only show that there is a substantial ground for a difference of opinion which, as illustrated above, there clearly is. *Coast Fed Bank,* 49 Fed. Cl. at 14.

> **2.    There are substantial grounds for a difference of opinion as to whether a private negligent due diligence claim may be brought in the securities arena.**

As noted above, not one court has ever allowed a private (common law) negligent due diligence claim to proceed in the securities context. Neither the *Garrison* decision nor any other

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 9 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

1   Washington state court decision involved such a claim. In contrast, multiple courts have

2   expressly rejected such claims. *See supra* 4-7 (discussing *BNP Paribas*, *Fox*, *Questar*, and

3   *Enron*). Accordingly, there are substantial grounds for a difference of opinion here.

4          Separately, as explained by the Southern District of New York in *BNP Paribas*, the

5   negligent due diligence claim Plaintiffs are promoting is no more than a disguised watered-down

6   claim under SEC Rule 10b-5, which requires a material misrepresentation or omission, as well as

7   a demonstration of fraudulent intent. *See* 17 C.F.R. 240.10b-5. Since Plaintiffs cannot meet their

8   burden to satisfy these elements, they have brought a securities claim based on alleged

9   "negligent due diligence" that has no precedence whatsoever in the 91-year history of securities

10  litigation. At the very least, this presents an issue "of first impression" for courts within the Ninth

11  Circuit, which is one of the grounds for interlocutory review under section 1292(b). *W Tenn*

12  *Chapter of Assoc. Builders & Contractors*, 138 F. Supp. 2d at 1019.

13          **3.**      **There are substantial grounds for a difference of opinion as to**
14                       **whether Plaintiffs are circumventing the absence of a private**
                         **right of action under FINRA.**

15         "If a cat were a dog, it would bark," a court ruled in a different type of matter. *Wilcox v.*

16  *Georgetown Univ.*, No. CV 18-422 (RMC), 2019 WL 132281, at *1 (D.D.C. Jan. 8, 2019). With

17  respect to the question of whether Plaintiffs are circumventing the absence of a private right of

18  action under FINRA, NSC has illustrated how Plaintiffs' negligent due diligence claim is based

19  entirely on an alleged violation of a FINRA rule (ECF No. 83 at 6:8-7:2; ECF No. 91 at 9:8-

20  11:4). Plaintiffs' response was simply, had they "tr[ied] to divine a private right of action from

21  FINRA rules . . . their causes of action would read 'Violation of FINRA Rule 2111 (the

22  'Suitability Rule') instead of 'Negligence.'" ECF No. 88 at 1:14-16; 9:21-22. In other words,

23  Plaintiffs presented a cat and called it "dog." This *prima facie* attempt to circumvent the

24  prohibition of a private right of action under FINRA was not only rejected by *Fox* in identical

25  circumstances, but also by the Ninth Circuit in the seminal *Verifone* decision. *See supra* 6.

26

27

---

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 10 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

Even under Washington law, the *Garrison* decision is distinguishable because it involved a *negligent supervision* claim, not a negligent due diligence claim that does not exist in the securities arena. Under *Garrison*, a negligent supervision claim may be brought in a securities context because the duty to supervise already exists under common law in all sorts of different settings (*see, e.g., Briggs v. Nova Servs.*, 135 Wash. App. 955, 966, 147 P.3d 616, 622 (2006), *aff'd*, 166 Wash. 2d 794, 213 P.3d 910 (2009)), separate and apart from any FINRA regulatory duty. As *Garrison* explained, a negligent supervision claim requires proof of four (4) separate elements long recognized by Washington courts in myriad different legal contexts. *Garrison*, 135 Wash. App. at 484. Within this *established* common law framework, the *Garrison* court "looked to the [FINRA] Rules to define the scope of a common law duty such as negligent supervision." *Id*. at 486. Here, in contrast, Plaintiffs have brought an unprecedented "negligent due diligence" claim that has *no basis in common law* and therefore cannot exist separate and apart from FINRA Rule 2111.05(a), which itself defines the duty of "reasonable diligence." Accordingly, unlike in *Garrison*, Plaintiffs derive their purported "duty" from FINRA, not the common law. This distinction also helps explain why *BNP Paribas* held that that due diligence in the securities context arises only as a defense to disciplinary charges or allegations of fraud under Rule 10b-5.

At the very least, there are substantial grounds for a difference of opinion here. After all, the Court noted in its March 10, 2022 Order that both NSC and Plaintiffs have cited to decisions "where courts have gone both ways on this issue" (ECF No. 111 at 8:1-2). This also suggests the issue may be "difficult" and/or "of first impression" for courts within the Ninth Circuit. *W Tenn Chapter of Assoc. Builders & Contractors*, 138 F. Supp. 2d at 1019. (After all, the Court found *Garrison* merely "persuasive" and did not cite to any other authority on this issue.)

### iii.  An Immediate Appeal May Materially Advance The Ultimate Termination Of This Litigation.

Finally, judicial economy favors section 1292(b) certification. An interlocutory appeal will "appreciably shorten the time, effort and expense exhausted between the filing of a lawsuit and its termination." *County of Santa Clara v. U.S. Fidelity & Guaranty Co*., No. C-93-20169

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 11 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

RPA, 1995 U.S. Dist. LEXIS 21373, at *1 (N.D. Cal. June 1, 1995); *see also Gopher Oil Co., Inc. v. Union Oil Co. of Cal.*, 757 F. Supp. 998, 1001-04 (D. Minn. 1991), *aff'd*, 955 F. 2d 519 (8th Cir. 1992) (holding that interlocutory appeal "will allow for the most efficient use of judicial resources and curb the expense and duration of this litigation").

Here, as illustrated above and in NSC's moving and reply papers (ECF Nos. 83-85, 91-92), an immediate appeal addressing each of the three controlling questions of law is likely to materially advance the ultimate and immediate termination of this litigation (on up to three separate grounds), saving the Court and the litigants substantial time and resources.[4]

### B.   A Stay Of Trial Court *Proceedings* Is Appropriate.

Section 1292(b) expressly provides that district court proceedings may be stayed pending the interlocutory appeal if so ordered by the district judge. 28 U.S.C. § 1292(b). A court has broad discretion to stay proceedings in the interest of "economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, (1936). A stay is appropriate if "there is sufficient overlap to threaten extensive duplication later or loss of the benefits of the appeal." 16 Charles Alan Wright & Arthur Miller, Fed Prac. & Proc §§ 3929 (3d ed. 1998).

Given the approaching trial and pretrial deadlines, it would be impractical to continue litigating as scheduled until the Ninth Circuit decides on the matter. There is no prejudice to Plaintiffs from a delay in these proceedings, particularly where a ruling on the issues will materially inform the parties on several potentially dispositive issues that will aid in the immediate resolution of the case.

### III.   <u>CONCLUSION</u>

Based upon the authorities and arguments herein, NSC respectfully requests that this Court grant NSC's Motion for Interlocutory Appeal.

---

[4] The Court also ruled, without citing to any authority, that the incorporation of FINRA rules into NSC's own internal policies "also inform the applicable standard of care." ECF No. 111 at 8:9-12. NSC cited to multiple cases holding that no duty can arise from a broker-dealer incorporating regulatory duties or obligations in an internal company document. ECF No. 83 at 20:4-17 (citing *Hauptman v. Interactive Brokers, LLC*, 349 F. Supp. 3d 292 (S.D.N.Y. 2018), among other cases). Neither Plaintiffs nor the Court addressed those authorities.

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 12 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380

DATED this 21st day of March, 2022.

                         Respectfully submitted,

                         **BAKER & HOSTETLER LLP**

                         *s/ Curt Roy Hineline*
                         Curt Roy Hineline, WSBA #16317
                         James R. Morrison, WSBA #43043
                         Alexander Vitruk, WSBA #57337
                         Logan F. Peppin, WSBA #55704
                         999 Third Avenue, Suite 3900
                         Seattle, Washington 98104
                         Tel: (206) 332-1380
                         Fax: (206) 624-7317
                         Email: chineline@bakerlaw.com
                         Email: jmorrison@bakerlaw.com
                         Email: avitruk@bakerlaw.com
                         Email: lpeppin@bakerlaw.com

                         Daniel J. Buzzetta (*pro hac vice*)
                         45 Rockefeller Plaza
                         New York, NY 10111
                         Tel: (212) 589-4236
                         Fax: (212) 589-4201
                         Email: dbuzzetta@bakerlaw.com

                         *Attorney for Defendant*
                         *National Securities Corporation*

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 13 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone: (206) 332-1380

## CERTIFICATE OF SERVICE

I hereby certify that on March 21, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

David P. Neuman, WSBA #48176
Israels Neuman PLC
10900 NE 8th Street, Suite 100
PMB #155
Bellevue, Washington 98004
Tel: (206) 795-5798
Email: dave@israelsneuman.com

Joseph Wojciechowski, Esq., *pro hac vice*
Sara Hanley, Esq., pro hac vice
Stoltmann Law Offices, P.C.
161 N. Clark St., 16th Floor
Chicago, IL 60601
Tel: (312) 899-6625
Email: joe@stoltlaw.com
          sara@stoltlaw.com

Joshua B. Kons, Esq.
LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow St., Lower Level
Weatogue, Connecticut 06089
PH: (860) 920-5181
Email: joshuakons@konslaw.com

Alexander Loftus, Esq.
*Pro hac vice*
LOFTUS & EISENBERG, LTD.
161 N. Clark St., 16th Floor
Chicago, IL 60601
Tel: (312) 899-6625
alex@loftusandeisenberg.com

***Attorneys for Plaintiffs***

Curt Roy Hineline, WSBA #16317
James Morrison, WSBA #43043
Alexander Vitruk, WSBA #57337
Logan F. Peppin, WSBA #55704
BAKER & HOSTETLER, LLP
999 Third Avenue, Suite 3600
Seattle, WA 98104-4040
Tel: (206) 332-1380
Fax: (206) 624-7317
Email: chineline@bakerlaw.com
          jmorrison@bakerlaw.com
          avitruk@bakerlaw.com
          lpeppin@bakerlaw.com

Daniel Buzzetta (*pro hac vice*)
BAKER & HOSTETLER, LLP
45 Rockefeller Plaza
New York, NY 10111-0100
Tel: (212) 589-4236
Fax: (212) 589-4201
Email: dbuzzetta@bakerlaw.com

***Attorneys for Defendant***

s/ Laetitia Knox
Laetitia Knox
Legal Assistant

DEFENDANT'S MOTION FOR
INTERLOCUTORY APPEAL - 14 -
CASE NO. 2:18-CV-1773

BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Telephone:  (206) 332-1380