THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER, and on behalf of the class members described below,<br><br>    *Plaintiffs*,<br><br>v.<br><br>NATIONAL SECURITIES CORPORATION, a Washington Corporation<br><br>    *Defendant*. | Case No.: 2:18-cv-1773-RSM<br><br>**PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND REQUEST FOR FAIRNESS HEARING**<br><br>**NOTE ON MOTION CALENDAR:**<br>**June 3, 2022** |

## I.    INTRODUCTION AND RELIEF REQUESTED

The parties have reached an arms-length settlement and seek preliminary approval from this Court pursuant to Federal Rule of Civil Procedure 23(e). Defendant's Counsel have reviewed this motion and confirm that Defendant does not oppose.

## II.   PROCEDURAL BACKGROUND AND STATUS OF THE CASE

The Plaintiffs filed their Complaint on December 2018 on behalf of themselves and all similarly situated investors that were clients of National Securities who invested in private placement securities issued by Solexel, Inc., later known as Beamreach, Inc. (Dkt. # 1). The

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

complaint outlined three subclasses representing the three separate securities at issue: the Series D Preferred Stock; Series D-1 Preferred Stock, and the Series D-2 Note offering. (*Id.* at 26). Defendant moved to dismiss the complaint on February 28, 2019 (Dkt # 20). In its motion, NSC argued that the Plaintiffs all executed documents indicating they received offering memoranda for the various Beamreach securities and conceded to the risks enumerated therein. After being fully briefed, the Court denied NSC's Motion to Dismiss on June 6, 2019 (Dkt. #28).

The parties then engaged in discovery. Over several months, and through the initial phases of the COVID-19 pandemic, the parties exchanged over one million pages of documents, including tens of thousands of pages received from third parties responding to subpoenas. NSC took the depositions of each named Plaintiff and Plaintiffs took the Rule 30(b)(6) deposition of National Securities through Carmelo Troccoli. After receiving additional document production from NSC and from FINRA in response to a subpoena, the Plaintiffs moved for Class Certification on November 3, 2020 (Dkt. # 53). After being fully briefed, the Court granted Plaintiffs' motion, certifying this class and subclasses on April 27, 2021. (Dkt. # 66). NSC sought permission from the Ninth Circuit to appeal the order granting certification, and that was denied on July 16, 2021. (Dkt. # 74).

The Plaintiffs then sought approval of their class notice which was approved on October 26, 2021 (Dkt. # 81). The opt-out deadline came and went with two class members opting-out. The parties then engaged in expert discovery with each party filing both initial and rebuttal reports. Plaintiffs deposed both NSC expert witnesses and NSC took the deposition of Plaintiffs' expert.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

2

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

On December 23, 2021, NSC moved for summary judgment as a matter of law. (Dkt. # 83). After being fully briefed, the court denied the motion on March 10, 2022. (Dkt. # 111). NSC filed a second motion for summary judgment on February 10, 2022, this time based on the merits. (Dkt. # 96). That motion was fully briefed but the case was stayed prior to the Court's ruling. (Dkt. # 120). At the time the parties requested a stay, NSC's pending motion to strike Plaintiffs' Expert Witness (Dkt. # 113) was fully briefed and pending before the Court. Also pending before the Court at the time of the stay, but not yet fully briefed, was NSC's motion for an interlocutory appeal of the Court's decision denying NSC's first motion for summary judgment. (Dkt. # 117). The parties were scheduled for a two week trial set to begin May 8, 2022.

The parties engaged Seattle mediator Stew Cogan to assist the parties in reaching a resolution. The initial mediation took place on February 2, 2022 and was not successful, but progress was made. (Dkt. # 93). The parties agreed to a second mediation which took place on March 8, 2022. Again, the second mediation was not successful, but more progress was made towards what would ultimately become the parties' proposed settlement upon continuing negotiations. (Dkt. # 110). Mr. Cogan's experience mediating class action cases in this District was invaluable to the parties' negotiations in reaching this proposed settlement.

**II.    Summary of Settlement Terms**

**a.  Financial Considerations and Release**

In consideration for settlement and a release of all of the Class claims according to the terms of the attached Settlement Agreement, NSC agrees to pay $4,650,000 in cash consideration (the "Cash Consideration"). This represents a gross cash recovery for the eligible Series D investors of 10.5%, and 41% for the eligible Series D1/D2 investors. In

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

3

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

addition, Defendant also agrees to provide each Class Member with two (2) years of commission free brokerage services, the value of which is estimated to be approximately $5,894,010 (the "Commission Credit"). As set forth in the Declaration of Fred Knopf filed as Exhibit A, the Commission Credit was calculated on the actual commissions and fees paid to Defendant by the Class Members for securities transactions (not just Beamreach) over the two years between February 6, 2015 and February 9, 2017, the time period Class Members invested in Beamreach. Knopf Dec. ¶ 4. In total, this represents a gross settlement value to the Class of $10,544,010 (the "Gross Settlement"). Attached hereto as Exhibit B is the Executed Settlement Agreement and Release ("Settlement Agreement").

    **b.**  **Attorneys' Fees and Costs**

Class Counsel will file a motion with the Court requesting up to thirty percent (30%) of the Gross Settlement Fund as attorneys' fees, and they will seek reimbursement of reasonable expenses of no more than $120,000. Settlement Agreement ¶ [3.2]. Class Counsel will also file a motion requesting that the Court approve a payment of a service award of $10,000 to each of the Lead Plaintiffs for their efforts (the "Settlement Awards"). Settlement Agreement ¶ 3.3. Defendant will not oppose this motion.

    **c. Settlement Payments.**

After the deduction of attorneys' fees, reimbursable expenses, the Settlement Awards, and the Claims Administration costs, the net Cash Consideration will be distributed to all Settlement Class Members on a pro rata basis based on which Beamreach securities offering they invested in (i.e. Series D, or Series D1/D2).

The process for payment is as follows: within thirty (30) days of the Court's final approval, Defendant will transfer the Cash Consideration to the Claims Administrator and

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

4

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

shall provide proof to Plaintiffs' counsel that the Commission Credit has been reflected on the accounts for the Class Members. The Claims Administrator will prepare and issue the necessary checks for the Service Awards, and the Attorney's Fees Award, as well as issuing all the necessary tax documents.

All checks shall expire 120 days after issuance. Settlement Class Members who have not cashed their checks prior to expiration shall have an additional 245 days to contact the Claims Administrator to obtain a re-issued check. All funds not claimed within 485 days of the issuance of the first check will be turned over to the Washington State Department of Revenue's Unclaimed Property Section for disposition in accordance with RCW 63.29.

e. **Administration of Settlement and Notice**

As agreed by the parties, American Legal Claim Services, LLC (the "Settlement Administrator") will administer the Settlement. Settlement Agreement ¶ 4.1. If the Court grants preliminary approval, Plaintiffs will ask the Court to also approve a notice program directing the Settlement Administrator to send a Postcard Notice directly to each Settlement Class Member directing each Class Member, which will also be posted on beamreachclassaction.com. Settlement Agreement § 5.2.1 (the Proposed Notice Form).

Notice will be sent to Class Members directly through first class mail using the most recent contact information available. *Id.* If a notice is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly resend the notice to that forwarding address. If a notice is returned as undeliverable and without a forwarding address, the Settlement Administrator will perform one skip trace search and, if it obtains a more recent address, will resend the notice. In addition to the postcard notice, the Settlement Administrator will establish and maintain a

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773                5

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

Settlement Website, which will display, at a minimum, the operative Complaint, Settlement Notice, the Settlement Agreement, and the Preliminary Approval Order. Settlement Agreement ¶ 4.2.

### III. Argument and Authority

#### A. Standard for Preliminary Review of Class Action Settlement.

Federal Rule of Civil Procedure 23(e) requires the district court to approve any settlement of a certified class before a settlement become final. Fed. R. Civ. P. 23(e). Approval under Rule 23(e) requires a two-step process in which the court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to the class members, whether final approval is warranted.

When the class has already been certified, preliminary approval requires the court to ratify the fairness of the settlement. *Staton v. Boeing Co.,* 327 F.3d 938, 952 (9th Cir. 2003). In making this determination, the "court must carefully consider whether a proposed settlement is fundamentally fair, adequate, and reasonable, recognizing that it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *Id.* (internal citations omitted).

#### B. The Criteria for Settlement Approval Are Satisfied in this Case.

To assess the fairness of settlement, the court looks to the following eight factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

6

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

*In re Online DVD-Rental Antitrust Litigation*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Village, L.L.C., v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). In addition, "the settlement may not be the product of collusion among the negotiating parties." *Churchill Village*, 361 F.3d at 576.

    1)    <u>Strength of the Plaintiffs' Case</u>.

Plaintiffs maintain that their claims are strong and have substantial merit. This Court denied NSC's Rule 12(b)(6) motion to dismiss, certified the claims as a Rule 23(b)(3) class action, and denied NSC's law-based summary judgment motion. Legal and factual disputes related to Plaintiffs' negligence claims and Defendant's defenses, would be resolved at trial.

    2)    <u>Risk and Expense of Continued Litigation.</u>

NSC's merits-based summary judgment motion remains pending, as is its motion to strike Plaintiffs' expert witness under *Daubert v. Merrill Dow*. Although Plaintiffs are confident they will prevail on both motions, there is risk to the class in proceeding. All parties recognize the substantial risk during any jury trial, along with significant expense to prepare for and litigate such a trial. The parties also recognize that even with a favorable jury verdict, there is also potential for a lengthy appeals process as well as the risk that Defendant would become insolvent and cease operations if a judgment is rendered against it.

    3.    <u>Risk of Maintaining Class Action Status throughout Trial.</u>

Plaintiffs are confident they could maintain class action status through trial and appeal for all of their claims. Still, it is plausible that individualized issues with respect to assumption of risk could manifest through testimony at trial.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

7

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

4.      Amount Offered in Settlement.

NSC has agreed to pay the Class Members $4,650,000 in cash consideration and provide the class with two years of commission-free trading, which is valued alone at $2,947,005 per year (for a total of $5,894,010). In total, this settlement provides the Class with $10,544,010 in value. This total settlement value represents a significant percentage of the damages that would be sought at trial. The total amount of claims eligible for class status, meaning those claims that did not seek exclusion or who are not otherwise excluded, totals $31,542,433. Class Plaintiffs had no statutory claim for attorney's fees or costs and the claims made were strictly limited to negligence and unjust enrichment.

This settlement represents a recovery of $2,667,662 to the Series D Sub Class Members, with $26,676,621 in eligible claims, and $1,982,338 to the Series D1/D2 Class members, with $4,865,812 in eligible claims. The rationale for this division amongst the various Class Members is that far more "red flags" were present the longer Defendant recommended and sold Beamreach securities, culminating with the D1/D2 offering (which had the most "red flags").

The Plaintiffs estimate that the best-case outcome for the Class at trial would have been a jury verdict in the amount of $31,542,433. However, as NSC stated in its Petition for Permission to Appeal Order Granting Class Certification, the verdict of this size would present a "death knell" situation and may not have been collectible against NSC. This very real issue weighed heavily on settlement negotiations.

5.      Extent of Discovery Completed and the Stage of the Proceeding

There was a massive amount of discovery in this case. NSC produced 844,043 pages of discovery, Plaintiffs produced an additional 5,888 pages, and Plaintiffs obtained tens of

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

8

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

thousands of additional pages of records from third parties including FINRA, Darwin IP, Opus Bank, and Wells Fargo Bank. NSC took all four lead Plaintiffs' depositions, two of them in-person in Chicago and then two remotely via Zoom. Plaintiffs took the 30(b)(6) deposition of National Securities Corporation, who offered lead investment banker Carmelo Troccoli, remotely via Zoom; took the deposition of NSC's expert William Purcell in-person in New York City, and the deposition of NSC's second expert Kamron Fotouhi, remotely via Zoom. NSC took the deposition of Plaintiffs' expert, Mason Dinehart, in-person in San Francisco.

The parties were about five (5) weeks from trial when they asked the Court to stay the proceedings, pending settlement. At that moment, NSC's merits-based summary judgment motion, motion to strike Plaintiffs' expert under *Daubert*, and motion for interlocutory appeal were all pending. An adverse ruling on any of those motions could serve to dismiss the Class's case, hamper the Class's ability to prove their case at trial, or substantially delay the trial pending appeals. Critically, the parties negotiated this settlement with full knowledge of the facts in the case and with substantial information about the strengths and weaknesses of their legal positions.

6. <u>Experience and Views of Counsel.</u>

All counsel involved in this case have substantial class action experience and very deep backgrounds in securities law and FINRA regulation of broker-dealers. Counsel for both parties attended both mediations and all counsel support this settlement as fair and reasonable. In addition, mediator Stewart Cogan filed a declaration echoing the same. (Dkt. # 122). The class representatives have been involved in the litigation of this case.  It also must be noted that Class Plaintiffs brought forth a very unique claim here, based exclusively on the

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

9

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

applicability of FINRA regulatory rules as evidence of the standard of care against broker-dealers in performing due diligence on private placements, along with the approval to sell those securities, to firm clients. As pointed out several times by Defendant, the Plaintiffs sought to turn 90 years of securities laws on their heads with this case. Although Plaintiffs disagree with NSC's characterization of their claims as setting forth some sort of dangerous precedent, it cannot be lost on the Court that what Plaintiffs' and their Counsel accomplished with this case was to some degree, novel and that it created immense value for a class of investors content with sitting silently on their claims.

Plaintiffs also ask this Court for a service or incentive award in the amount of $10,000 per Class Representative as compensation for their cooperation and effort. All four Plaintiffs had to produce documents to Defendant and sit for depositions. Plaintiff Ginzkey and Fitzgerald even travelled to Chicago to facilitate their depositions. Courts have discretion to award class action incentive payments to compensate a class representative for work performed on behalf of the class and for initiating the action. *See Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Subject to approval by the Court, $10,000 will be set aside for each. Settlement Agreement ¶ 3.3.

7. <u>Presence of Government Participant.</u>

No government entities are involved in this lawsuit, nor has the government participated in any settlement negotiations.

8. <u>The Reaction of the Class Members to the Proposed Settlement.</u>

All four class representatives support the settlement proposal, and have executed the settlement agreement. The Court will be better able to evaluate this prong after notice is provided to all class members.

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

10

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court: 1) Grant preliminary approval of the settlement; 2) Approve the proposed notice plan; 3) appoint American Legal Claim Services, LLC as Settlement Administrator; and 4) schedule a final fairness hearing at the Court's convenience but no earlier than 120 days after entry of the preliminary approval order, to allow for objections to be made no more than sixty (60) days after the Notice deadline, and for Plaintiffs' counsel to prepare and file a final report and motion.

Dated: June 3, 2022

Respectfully submitted,
**JAMES GINZKEY, RICHARD FITZGERALD, CHARLES CERF, BARRY DONNER**,
Plaintiffs

By: /s/ *David Neuman*
    One of Their Attorneys

Joseph Wojciechowski, Esq.
Sara Hanley, Esq.
*Pro Hac Vice*
STOLTMANN LAW OFFICES, P.C.
161 N. Clark St., 16th Floor
Chicago, Illinois 60601
PH: (312) 332-4200
joe@stoltlaw.com
sara@stoltlaw.com

Joshua B. Kons, Esq.
LAW OFFICES OF JOSHUA B. KONS, LLC
*Pro Hac Vice*
92 Hopmeadow St., Lower Level
Weatogue, Connecticut 06089
PH: (860) 920-5181
joshuakons@konslaw.com

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

11

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

1
2  Alexander Loftus, Esq., *pro hac vice*
   LOFTUS & EISENBERG. LTD.
3  161 N. Clark Street, Ste. 16th Floor
   Chicago, IL 60601
4  PH: (312) 899-6625
   Email: alex@loftusandeisenberg.com
5
6  David Neuman, Esq. (WSB #48176)
   ISRAELS NEUMAN PLC
7  10900 NE 8th Street, Suite 1000
   Bellevue, Washington 98004
8  dave@israelsneuman.com
9
   *Attorneys for Plaintiffs*
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773                           12

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200

# CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June 2022, the foregoing was electronically filed with the Clerk of the United States District Court for the Western District of Washington, Seattle, using the CM/ECF system, which will send notification of such filing to the below counsel:

Danilo (Daniel) Buzzetta
BAKER & HOSTETLER LLP
45 ROCKFELLER PLAZA
NEW YORK, NY 10111
dbuzzetta@bakerlaw.com

Curt Roy Hineline
BAKER HOSTETLER LLP (SEA)
999 THIRD AVENUE, SUITE 3900
SEATTLE, WA 98104
dgreene@bakerlaw.com

James Raymond Morrison
BAKER HOSTETLER LLP (SEA)
999 THIRD AVENUE, SUITE 3900
SEATTLE, WA 98104
jmorrison@bakerlaw.com

　　　　　　　　　　　　　　　　　　　　　　 /s/ David Neuman
　　　　　　　　　　　　　　　　　　　　　　 David Neuman

1

PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
Case No. 2:18-cv-1773

STOLTMANN LAW OFFICES, P.C.
161 North Clark St., 16th Floor
Chicago, Illinois 60601
312-332-4200