# EXHIBIT B

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Subject to its terms and conditions and the approval of the Court, this Class Action Settlement and Release of Claims (the "Agreement" or "Settlement Agreement") is made and entered into by and among Plaintiffs James P. Ginzkey, Richard Fitzgerald, Charles Cerf, and Barry Donner ("Plaintiffs" or "Class Representatives"), in their individual capacities and on behalf of the Class Members (defined below); Defendant National Securities Corporation ("Defendant") (Plaintiffs and Defendant are referred to collectively herein as the "Parties"), and is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims, as defined below.

## RECITALS

A.     On December 10, 2018, Plaintiffs filed a proposed class action complaint against Defendant in the United States District Court for the Western District of Washington, captioned *James Ginzkey, et al. v. National Securities Corporation*, Case No. 2:18-cv-1773 (the "Action"), alleging that Defendant negligently offered securities of Beamreach Solar (f/k/a Solexel) for sale to Plaintiffs, and purporting to represent a "Beamreach Class," a "Series D Sub-Class," a "Series D-1 Sub-Class," and a "Series D-2 Sub-Class." *See* Complaint ¶ 124.

B.     On April 27, 2021, the Court granted Plaintiffs' motion for class certification; certified a "Beamreach Class," a "Series D Sub-Class," a "Series D-1 Sub-Class," and a "Series D-2 Sub-Class"; appointed Plaintiffs as Class Representatives; and appointed Stoltmann Law Offices, P.C. and Law Offices of Joshua B. Kons as Class Counsel. Dkt. 66 at 4-5, 12.

C.     On February 2 and March 8, 2022, Plaintiffs and Defendant participated in good-faith, arms-length mediations with mediator Stew Cogan. The Parties were not able to resolve their dispute and litigation continued. However, as a result of the progress made using the services of

Mediator Cogan, the Parties continued to discussing settlement following the two mediation sessions, which were instrumental in the Parties' decision to enter into this Agreement.

D.      While litigating the Action, Defendant produced to Plaintiffs substantial documentation regarding its due diligence of Beamreach and related documents. Defendant also provided Plaintiffs with ESI and testimony.

E.      Based on these records, and their own independent investigation and evaluation, Class Counsel have thoroughly analyzed the strength and value of the proposed Class Members' claims during the prosecution of this Action. This discovery, investigation, and prosecution by Class Counsel has included, among other things: (a) inspection and analysis of the documents and materials produced by Defendant; (b) analysis of the various legal positions taken and defenses raised by Defendant; (c) investigation into the viability of class treatment of the claims asserted in the Action; (d) analysis of potential class-wide damages; (e) research of the applicable law with respect to the claims asserted in the Complaint and the potential defenses thereto; (f) the exchange of information through discovery; and (g) deposition testimony from fact witnesses and proposed experts.

F.      The discovery conducted in this matter, as well as discussions between counsel, have been more than adequate to give Plaintiffs and Class Counsel a sound understanding of the merits of Plaintiffs' position and to evaluate the worth of the claims of the Class Members in light of Defendant's defenses to them. The discovery conducted in this Action and the information exchanged by the parties through discovery has allowed the parties to assess the merits of their respective positions and to compromise the issues on a fair and equitable basis. As a result, Class Counsel and Plaintiffs agree and represent to the Court that the Settlement is fair, adequate, and reasonable, and in the best interests of the Class.

G.     Plaintiffs and Class Counsel believe that the claims, causes of action, allegations and contentions asserted in the Action have merit. However, Plaintiffs and Class Counsel recognize and acknowledge the risk, expense and delay of continued lengthy proceedings necessary to prosecute the Action against Defendant through trial and through appeals. Class Counsel have taken into account the uncertain outcome and the risk of any litigation, the risk of continued litigation in complex actions such as this, as well as the difficulties and delays inherent in such litigation. Class Counsel are mindful of the inherent problems of proof under, and possible defenses to, the claims alleged in the Action, including, but not limited to Defendant's defense that, based on reasonable due diligence, it had a reasonable basis to offer for sale the Beamreach Offerings. Class Counsel believe that the Settlement set forth in this Agreement confers substantial benefits upon Plaintiffs and the proposed Class Members and that an independent review of this Agreement by the Court in the approval process will confirm this conclusion. Class Counsel further recognize that the risks of this case exceed many other cases because of the uncertain nature of how the evidence will be viewed by a jury. Class Counsel further recognize that currently pending before the Court are Defendant's merits-based motion for summary judgment, a motion for interlocutory appeal concerning a prior legal motion for summary judgment, and a motion to disqualify Plaintiffs' proposed expert, any of which, if granted, could result in substantial impediment to Plaintiffs' efforts to recover any damages in this case. All of these factors materially increase the risk of protracted litigation, including appeals, even if Plaintiffs succeed at trial.  Based on their own independent evaluation of all of these factors, Class Counsel have determined that the Settlement set forth in the Agreement is in the best interests of the Plaintiffs and the Class Members.

H.     Defendant has denied and continues to deny each and all of the claims and contentions alleged by Plaintiffs and all Class Members in the Action. Defendant has expressly denied and continues to deny all charges of wrongdoing or liability against it arising out of any of the

conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action. Defendant further denies that, for any purpose other than settlement, the claims alleged in the Action are appropriate for class or representative treatment of any kind. Nonetheless, Defendant has concluded that further conduct of the Action would be protracted and expensive and that it is desirable for economic reasons that the Action be fully and finally settled in the manner and upon the terms and conditions set forth in this Agreement in order to limit further expense, inconvenience and distraction, to dispose of burdensome and protracted litigation, and to permit the operation of Defendant's business without further expensive litigation and the distraction and diversion of its personnel with respect to matters at issue in the Action. Defendant has also taken into account the uncertainty and risks inherent in any litigation, especially in complex cases such as the Action. Defendant has, therefore, determined that it is desirable and beneficial to it that the Action be settled in the manner and upon the terms and conditions set forth in this Agreement. The Parties have agreed to the terms set forth herein without in any way acknowledging fault or liability. Therefore, nothing in this Settlement Agreement shall be deemed or used as an admission of liability, fault or wrongdoing by Defendant or as an admission that this case may be maintained as a class or representative action, and shall not be used for any purpose other than for settlement purposes and to enforce its terms.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Parties, subject to final approval by the Court after a hearing or hearings as provided for in this Settlement Agreement, and in consideration of the benefits flowing from the Settlement Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## AGREEMENT

### 1. DEFINITIONS

As used in this Agreement, the following terms shall have the meanings specified below:

1.1 "Action" means the lawsuit captioned *James Ginzkey, et al. v. National Securities Corporation*, Case No. 2:18-cv-1773, pending in the United States District Court for the Western District of Washington.

1.2 "Agreement" or "Settlement Agreement" means this document.

1.3 "Beamreach Class" means, for purposes of this Settlement only, "all persons who invested in Beamreach Offerings through the Defendant, at any time between February 6, 2015 and February 9, 2017 inclusive." *See* Dkt. 66 at 4-5.

1.4 "Beamreach Offerings" means the Beamreach Solar (f/k/a Solexel) Series D, Series D-1, and Series D-2 securities, as defined in the Complaint for purposes of this Settlement.

1.5 "Class" means the Beamreach Class, Series D Sub-Class, Series D-1 Sub-Class, and Series D-2 Sub-Class, as defined above and in Dkt. 66. The Class expressly *excludes* any and all institutional investors, which would have performed their own due diligence in regard to the Beamreach Offerings, including but not limited to CMC Capital Fund and Macathel L.P. The Class also expressly *excludes* any and all investors that have previously brought claims regarding or related in any way to the Beamreach Offerings against Defendant, or settled any claims against Defendant arising from, relating to, or in connection with the Beamreach Offerings. The Class also expressly excludes any and all investors that have previously opted out of the Action including Rakesh Amin, Rakesh Amin Living Trust, and Richard J. Kavanaugh. The Class also expressly excludes Defendant and any of its officers, directors, employees, agents, parents, affiliates, or subsidiaries. Also expressly excluded is any entity related to or affiliated with Beamreach, and any judicial officers presiding over this matter and their immediate family members.

1.6 "Class Counsel" means:

> Joseph Wojciechowski
> Sara Hanley
> STOLTMANN LAW OFFICES, P.C.
> 161 N. Clark St., 16th Floor
> Chicago, IL 60601
> Phone: 312-332-4200
> Email: joe@stoltlaw.com, sara@stoltlaw.com
>
> Joshua B. Kons
> LAW OFFICES OF JOSHUA B. KONS, LLC
> 92 Hopmeadow St., Lower Level
> Weatogue, CT 06089
> Phone: 860-920-5181
> Email: joshuakons@konslaw.com

1.7 "Class Member" means a member of the Class.

1.8 "Class Members" means each and every Class Member.

1.9 "Class Notice" means the notice of proposed settlement in substantially the form attached hereto as Exhibit 1 that is to be provided to Class Members after entry of the Preliminary Approval Order.

1.10 "Class Representatives" or "Plaintiffs" mean James P. Ginzkey, Richard Fitzgerald, Charles Cerf, and Barry Donner.

1.11 "Commission-Free Brokerage Services" means two (2) years of commission-free brokerage services for Plaintiffs and Class Members from Defendant, starting from the Effective Date. The commission-free brokerage services provided hereunder include, but are not limited to, margin trades, transition commissions, markup/markdowns, services fees, and other customary brokerage service charges. The Commission-Free Brokerage Services have an attested to valuation over the two-year period of $5,894,010. Taken together, the Gross Settlement Payment and Commission-Free Brokerage Services shall be defined as the "Total Settlement Value" and shall resolve this case in its entirety and all of the Released Claims, which includes those alleged in the Complaint. Under no circumstances shall Defendant be required to pay more monetary

consideration than the Gross Settlement Payment, in order to consummate the Agreement and effectuate the Settlement.

1.12 "Complaint" means the Class Action Complaint filed in the Action on December 10, 2018.

1.13 "Court" means the United States District Court for the Western District of Washington.

1.14 "Defendant" means National Securities Corporation.

1.15 "Defendant's Counsel" means:

> Curt Roy Hineline
> James Morrison
> Alexander Vitruk
> Logan F. Peppin
> BAKER & HOSTETLER LLP
> 999 Third Avenue, Suite 3900
> Seattle, WA 98104-4040
> Phone: 206-332-1380
> Email: chineline@bakerlaw.com, jmorrison@bakerlaw.com, avitruk@bakerlaw.com, lpeppin@bakerlaw.com
>
> Daniel J. Buzzetta
> BAKER & HOSTETLER LLP
> 45 Rockefeller Plaza
> New York, NY 10111
> Phone: 212-589-4236
> Email: dbuzzetta@bakerlaw.com

1.16 "Effective Date" means the date that the Settlement becomes Final. "Final" means (i) in the event no objections to the Settlement are filed, thirty-five (35) days after the Court enters the Final Approval Order and Judgment; or, (ii) in the event that one or more objections to the Settlement have been filed and not withdrawn, then upon the passage of the applicable date for an objector to seek appellate review of the Final Approval Order and Judgment, without a timely appeal having been filed; or, (iii) in the event that an appeal of the Final Approval Order and Judgment has been filed, then when the applicable court has rendered a final decision or opinion

affirming the Final Approval Order and Judgment without material modification, and the applicable date for seeking further appellate review has passed, or the date that any such Appeal has been either dismissed or withdrawn by the appellant.

1.17 "Fee Award and Costs" means the amount of attorneys' fees and reimbursement of costs awarded by the Court to Class Counsel.

1.18 "Final Approval Hearing" means the hearing at which the Court shall consider a motion for entry of the Final Approval Order and Judgment, Plaintiffs' application for Service Award, and Class Counsel's application for Fee Award and Costs.

1.19 "Final Approval Order and Judgment" means the Court's order granting final approval of the Settlement substantially in the form attached to this Agreement as Exhibit 3.

1.20 "Gross Settlement Payment" means the all-in non-reversionary payment by Defendant of $4,650,000. The Gross Settlement Payment is the total monetary payment required from Defendant under this Agreement, and is inclusive of the Fee Award and Costs, the Service Award, and the Settlement Administration Costs.

1.21 "Individual Settlement Payment" means the payment to be made to each Class Member from the Net Settlement Fund pursuant to the terms of this Agreement.

1.22 "Net Settlement Fund" means the amount of the Gross Settlement Payment that remains after the deductions of the Fee Award and Costs, and Service Award are made.

1.23 "Notice Deadline" means the deadline for the Settlement Administrator to send the Postcard Notice (Exhibit 1), which shall be thirty (30) days following entry of the Preliminary Approval Order.

1.24 "Objection Deadline" means, respectively, the date by which (1) a written objection to this Agreement must be filed with the Court. The deadlines in each case will be sixty (60) calendar days after the Notice Deadline.

1.25 "Parties" means Class Members, including the Class Representatives and Defendant, each of whom is a "Party."

1.26 "Preliminary Approval Date" means the date on which the Court enters the Preliminary Approval Order.

1.27 "Preliminary Approval Order" means the Court's order granting preliminary approval of the Settlement, ordering the mailing of the Class Notice and scheduling the Final Approval Hearing.

1.28 "Released Claims" means any and all claims, demands, and causes of action by Class Members that either were raised in the Complaint or that could have been raised in the Complaint, an individual arbitration, or any other legal proceeding, and that relate in any way to, arise from, or have any connection with the Beamreach Offerings.

1.29 "Released Parties" means National Securities Corporation and its respective parent companies, subsidiaries, divisions, affiliates, and related entities, past and present, as well as their direct and indirect owners, shareholders, employees, officers, directors, representatives, attorneys, insurers, reinsurers, partners, and successors, transferees and assigns of each.

1.30 "Series D Sub-Class" means, for purposes of this Settlement only, "Class Members who invested in Beamreach Series D securities offering through the Defendant, at any time between February 6, 2015 and December 31, 2016 inclusive." *See* Dkt. 66 at 4-5.

1.31 "Series D-1 Sub-Class" means, for purposes of this Settlement only, "Class Members who invested in Beamreach Series D-1 securities offering through the Defendant, at any time between June 1, 2016 and February 9, 2017 inclusive." *See* Dkt. 66 at 4-5.

1.32 "Series D-2 Sub-Class" means, for purposes of this Settlement only, "all Class Members who invested in Beamreach Series D-2 securities offering through the Defendant, at any time between October 1, 2016 and February 9, 2017 inclusive." *See* Dkt. 66 at 4-5.

1.33 "Service Award" means the service payment described in Paragraph 3.3 of this Agreement to be requested from the Court and, if awarded, paid to the Class Representatives out of the Gross Settlement Payment as compensation for its service to the Class and its execution of a general release.

1.34 "Settlement" means the Settlement between the Parties, which is memorialized in this Agreement.

1.35 "Settlement Administrator" means the third-party claims administration firm selected by the Parties and approved by the Court. The Parties have selected American Legal Claim Services, LLC as the Settlement Administrator.

1.36 "Settlement Administration Costs" means the expenses incurred by and the fees charged by the Settlement Administrator to perform all of its duties under this Settlement Agreement.

1.37 "Settlement Notice" means the detailed notice of the Settlement to be posted on the Settlement Website.

1.38 "Settlement Website" means the website to be created by the Settlement Administrator containing full details and information about the Settlement, including this Agreement. The Settlement Website will have links to the Complaint, this Agreement, the Postcard Notice, the Website Notice, motions for preliminary and final approval of this Settlement, any approval order, and Class Counsel's request for attorneys' fees and Service Award.

## 2. SETTLEMENT CONSIDERATION

2.1 The Settlement consideration shall consist of the Gross Settlement Payment and Commission-Free Brokerage Services only.

2.2 The Gross Settlement Payment that Defendant will be obligated to make is $4,650,000, inclusive of the Settlement Administration Costs, the Fee Award and Costs, the Class Representative

Service Award, and all Individual Settlement Payments to Class Members who submit a timely and valid Claim Form. The Gross Settlement Payment is non-reversionary; if the Court does not approve the full amount of the Settlement Administration Costs, the Fee Award and Costs, or the Class Representative Service Award, the difference between the amount requested and the amount approved will be distributed pro rata to Class Members as Individual Settlement Payments in accordance with the terms of this Agreement.

2.3   The Commission-Free Brokerage Services that Defendant will be obligated to offer is defined in Paragraph 1.11 above, and consists of two (2) years of commission-free brokerage services for Plaintiffs and Class Members only, starting from the Effective Date, subject to paragraph 2.4 below. Notwithstanding anything to the contrary, the Defendant shall not issue or direct the issuance of 1099s or other tax documentation to the Plaintiffs or the Class Members for any unused Commission Free Brokerage Services.

2.4   Should Defendant enter into an agreement for merger or asset transfer before two (2) years after the Effective Date, such agreement shall be conditioned on the surviving firm or firm purchasing Defendant's assets offering the remaining Commission-Free Brokerage Services to Plaintiffs and the Class Members until two (2) years after the Effective Date.

2.5   Under no circumstances shall Defendant be required to pay more than the Gross Settlement Payment in order to consummate the Agreement and effectuate the Settlement.

### 3.        PRELIMINARY APPROVAL OF SETTLEMENT

3.1   As soon as practicable following execution of this Agreement, Plaintiffs shall file an unopposed motion with the Court for entry of the Preliminary Approval Order, which shall, among other things: (a) preliminarily approve the Settlement set forth in this Agreement; (b) appoint a Settlement Administrator to exercise the duties allocated to the Settlement Administrator herein; (c) approve as to form and content the Class Notice; (d) direct the Settlement Administrator to mail the

Class Notice to Class Members as set forth below and instructed by the Court; (e) set deadlines for Class Members to serve objections to the Settlement; and (f) set the date of the Final Approval Hearing no earlier than 120 days after entry of the Preliminary Approval Order.

3.2    Class Counsel will submit an application to the Court for an award of attorneys' fees of up to $3,163,203.00, which is 30% of the Total Settlement Value, and costs not to exceed $120,000 (collectively, the "Fee Award and Costs"). Defendant agrees not to oppose Class Counsel's application for the Fee Award and Costs. The amount of the Fee Award and Costs is within the sole discretion of the Court and is not a condition of this Settlement. Any order by the Court providing for a Fee Award and Costs that is less than the amount requested by Class Counsel shall not be grounds to rescind this Agreement or otherwise void the Settlement.

3.3    Class Counsel will submit an application to the Court for a Service Award of $10,000 for each Plaintiff, in addition to any payment Plaintiffs are otherwise entitled to as Class Members, to recognize Plaintiffs' service to the Class, including their depositions, and as consideration for a general release of Plaintiffs' individual claims against Defendant and all other Released Parties (the "Service Award") and to be paid to Plaintiffs from the Gross Settlement Payment. Defendant will not oppose. The amount of the Service Award is within the sole discretion of the Court and is not a condition of this Settlement. Any order by the Court providing for a Service Award that is less than the amount Class Counsel applies for shall not be grounds to rescind this Agreement or otherwise void the Settlement.

3.4    Class Counsel will submit their motion for a Fee Award and Costs, and Service Award, with their motion for Final Approval of the Class Action Settlement.

4.      **APPOINTMENT AND DUTIES OF SETTLEMENT ADMINISTRATOR**

4.1    Subject to the Court's approval, the Parties hereby stipulate to the appointment of American Legal Claim Services, LLC as the Settlement Administrator under this Agreement.

4.2  The Settlement Administrator shall perform the following duties in connection with its administration of the Settlement: (i) obtaining addresses for Class Members using appropriate methods, as described in Paragraph 5.2.1 below; (ii) mailing the Postcard Notice to Class Members; (iii) tracking non-delivered Postcard Notices and taking reasonable steps to re-send them to Class Members' current addresses; (iv) tracking and timely reporting to Class Counsel and Defendant's Counsel any written objections to the Settlement submitted by Class Members; (v) administration of the fund established by the Gross Settlement Payment; (vi) disbursement of the Fee Award and Costs, and Service Award; (vii) calculation of the amount of the Individual Settlement Payment that is to be made to each Class Member; (viii) disbursement of Individual Settlement Payments to Class Members; (ix) tracking the number of Individual Settlement Payment checks that remain uncashed by the deadline to cash such checks; (x) handling the redistribution contemplated by Paragraph 10, if any; (xi) preparing the reports and declarations contemplated by Paragraph 5.4.1; (xii) establishing and maintaining the Settlement Website; (xiii) establishing a toll-free telephone number for Class Members to call; and (xiv) any other obligations imposed by the Court.

4.3  The Settlement Administrator shall complete its duties in a rational, reasonable, responsive, cost effective, and timely manner. The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices, including but not limited to a summary of work performed by the Settlement Administrator. Such records will be provided to Class Counsel and Defendant's Counsel and to the Court along with the motion for entry of the Final Approval Order and Judgment.

4.4  In the exercise of its duties outlined in this Agreement, the Settlement Administrator shall have the right to reasonably request additional information from the Parties or any Class Member.

4.5 All expenses and fees due the Settlement Administrator in connection with its administration of the Settlement, including, but not limited to, providing the Class Notice and processing objections, shall be paid from the Net Settlement Fund.

4.6 Settlement Administration shall terminate no later than one year from the Effective Date, or whenever all required payments from the settlement fund have been made, whichever is sooner. If circumstances make termination within one year of the Effective Date infeasible, then the Parties shall meet and confer about an appropriate extension of this deadline. At the time of termination of the settlement administration, the Settlement Administrator and Class Counsel shall return or destroy, at the option of the Defendant, all confidential information in their position.

## 5.     NOTICE OF SETTLEMENT; SUBMISSION OF OBJECTIONS

5.1 The Settlement Administrator shall cause the Class Notice to be disseminated to Class Members. The Class Notice shall comport with Rule 23 of the Federal Rules of Civil Procedure.

5.2 Providing the Class Notice to the Class.

5.2.1 On or before the Notice Deadline, the Settlement Administrator shall cause the Postcard Notice to be mailed by first-class mail to Class Members and will cause the Settlement Website to become active. If a Postcard Notice is returned with a forwarding address, the Settlement Administrator shall promptly forward the original Postcard Notice to the updated address via first-class regular U.S. Mail indicating on the original Notice the date of such re-mailing. If a Postcard Notice is returned as undeliverable without a forwarding address, the Settlement Administrator will perform a reasonable "skiptrace" search using the National Change of Address database to obtain an updated address, and the Postcard Notice will be re-mailed to the Class Member at the updated address.

5.2.2    The Postcard Notice shall be in substantially the form as that attached as Exhibit 1 and shall refer Class Members to the Settlement Website where Class Members can find detailed information about the Settlement as reflected by Exhibit 2.

5.3    Objection to Settlement

5.3.1    Any Class Member may object to this Settlement, the Plaintiffs' requested Service Award, and/or Class Counsel's requested Fee Award and Costs, by filing a written objection and supporting papers, if any, with the Court on or before the Objection Deadline. Such a written objection must (a) clearly identify the case name and number, and (b) be filed with the Clerk of the Court and mailed to Class Counsel and Defense Counsel.  The written objection must include: (1) the Class Member's full name, address, telephone number, and e-mail address; (2) information or proof showing that the individual is a Class Member; (3) the reasons why the Class Member objects to the Settlement, including any documents supporting the objection; (4) the name and address of the Class Member's counsel, if any; (5) the name and address of any counsel representing the Class Member that may appear at the Final Approval Hearing; (6) a statement confirming whether the Class Member and/or their or its counsel intend to personally appear and/or testify at the Final Approval Hearing; (7) a list, by case name, court, and docket number, of all other cases in which the Class Member or their or its counsel has filed an objection to any proposed class action settlement within the last three years; and (8) the Class Member's signature or the signature of the Class Members' counsel or other duly authorized representative (along with documentation illustrating representation).

5.3.2    In the event that the Settlement Administrator receives any written objections to the Settlement, the Settlement Administrator shall send copies of such objections to Class Counsel and Defendant's Counsel by electronic means within 24 hours of receipt.

5.3.3   Any Class Member who fails to timely file a written objection in accordance with the terms of this paragraph and as detailed in the Class Notice, shall be deemed to have waived his, her or its objections, shall not be permitted to object to this Settlement, the Plaintiffs' requested Service Award, and/or Class Counsel's requested Fee Award and Costs at the Final Approval Hearing, and shall be foreclosed from seeking review of any Final Approval Order and Judgment by appeal or other means.

5.4   Reports and Declaration By Settlement Administrator

5.4.1   Prior to the deadline for Class Counsel to file a Motion for Final Approval, the Settlement Administrator will prepare and provide to Class Counsel and Defendant's Counsel a draft declaration attesting to the work it performed notifying Class Members of the Settlement. The declaration will discuss the Settlement Administrator's mailing the Postcard Notice, indicating the number of Postcard Notices mailed to Class Members that were not returned undeliverable and thus the percentage of the Class that the Postcard Notice "reached." The declaration also will state the number of visits and unique visitors to the Settlement Website and the number of calls from Class Members that the Settlement Administrator received regarding the Settlement. The declaration will contain a statement from the Settlement Administrator about whether it believes, based on its experience, that the Class Notice satisfies due process.

## 6.   FINAL APPROVAL OF SETTLEMENT

6.1   The Class Representatives will file a motion with the Court requesting final approval of the Settlement, approval of Class Counsel's Fee and Cost Award, approval of Class Representatives' Service Award, approval of Settlement Administrator's Fees and Costs, and entry of the Final Approval Order and Judgment ("Motion for Final Approval") by the deadline set by the Court, which, unless otherwise ordered by the Court, will be filed at least ten (10) days after the

Objection Deadline. The Final Approval Hearing will be set at the convenience of the Court but no earlier than one hundred twenty (120) days after entry of the Preliminary Approval Order.

## 7. RELEASE OF CLAIMS

7.1   The Parties intend that this Settlement Agreement will fully and finally dispose of the Action, which shall be dismissed with prejudice, and any and all Released Claims against the Released Parties.

7.2   Upon the Effective Date, the Class Representatives and all Class Members, for themselves and for their heirs, executors and assigns, hereby release, discharge, and agree to hold harmless Defendant and all of the other Released Parties, and each of them, from any and all Released Claims.

## 8. DELIVERY OF GROSS SETTLEMENT PAYMENT TO THE SETTLEMENT ADMINISTRATOR

8.1   Defendant agrees to fund the Gross Settlement Fund over time as funds are reasonably necessary to cover administrative costs, fees, and expenses.

8.2   Within ten (10) days of preliminary approval of the Settlement, Defendant shall transfer to the Settlement Administrator an initial payment to cover expected notice administration costs, as reasonably estimated by the Settlement Administrator.

8.3   In the event that the Settlement becomes Final, Defendant shall, within thirty (30) days of the Effective Date, transfer to the Settlement Administrator the remaining funds. The Settlement Administrator will hold this amount in escrow until such time as it is authorized to use or pay those funds pursuant to the Settlement Agreement, the Preliminary Approval Order, or the Final Approval Order and Judgment, or as otherwise directed by the Parties. To the extent any interest accrues from funds being placed in escrow, such interest shall revert to Defendant upon the closing of the escrow account.

## 9. DISTRIBUTION OF GROSS SETTLEMENT PAYMENT

9.1   For purposes of making distributions of the Net Settlement Fund to the Class Members on a pro rata basis, the Gross Settlement Payment shall be allocated between the Series D Class Members and the Series D1/D2 Class Members as follows: $2,667,662 to the Series D Sub Class Members; and $1,982,338 to the Series D1/D2 Sub Class Members.

9.2   All checks shall expire 120 days after issuance. Class Members who have not cashed their checks prior to expiration shall have an additional 245 days to contact the Settlement Administrator to obtain a re-issued check. All funds not claimed within 485 days of the issuance of the first check will be turned over to the Washington State Department of Revenue's Unclaimed Property Section for disposition in accordance with RCW 63.29.

## 10. EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION

10.1 If (a) the Court should for any reason decline to approve this Settlement in the form agreed to by the Parties, or (b) the Court should for any reason fail to enter a judgment dismissing the Action with prejudice, then the Settlement will automatically become null and void without any act or deed by any Party and the terms and fact of this Agreement (and of any act performed or document executed pursuant to or in furtherance of the Agreement). Put another way, neither the Settlement nor any of the related negotiations or proceedings shall be of any force or effect, and all Parties to the Settlement shall stand in the same position, without prejudice, as if the Settlement had been neither entered into nor filed with the Court, including all unused funds expended by Defendant as per Section 9 returned to it. Notwithstanding the foregoing, the Parties may attempt in good faith to cure any perceived defects in the Settlement to facilitate approval.

## 11. RETENTION OF JURISDICTION

11.1 The Parties stipulate that the Court may retain jurisdiction over any further disputes relating to this Agreement, the implementation of the Agreement, or further issues regarding the claims in the Action, until the Settlement Administrator and the Parties notify the Court that all issues have been resolved and the Settlement has been fully effectuated.

## 12. MISCELLANEOUS

12.1 The Parties will fully cooperate and use reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary or be ordered by the Court, or otherwise, to accomplish the terms of this Agreement, including, but not limited to, executing such documents and taking such other action as may reasonably be necessary to obtain preliminary and final approval of this Agreement without material modifications and to implement its terms.

12.2 This Agreement shall be subject to, governed by, construed, enforced and administered in accordance with the laws of the State of Washington, both in its procedural and substantive aspects. (Defendant expressly reserves, and does not waive, its right to argue that New York and/or other substantive laws should apply to the Parties' dispute if the Settlement is not approved by the Court.)

12.3 The Parties have had a full opportunity to negotiate the terms and conditions of this Agreement, and in fact only agreed on the terms pursuant to voluntary negotiations between the Parties. Accordingly, the Parties expressly waive the common-law and statutory rule of construction that ambiguities should be construed against the drafter of an agreement. The Parties agree that the language in this Agreement shall not be construed in favor or against any Party. The Parties further agree, covenant, and represent that the language in all parts of this Agreement shall be in all cases construed as a whole, according to its fair meaning.

12.4  The Parties agree that if, at any time before the Effective Date, any portion of the release of claims, the notice and/or the distribution provisions of this Agreement are determined to be illegal, invalid or unenforceable, then the Parties agree to meet and confer in order to attempt to resolve outstanding issue(s).

12.5  If the Court denies final approval of the Settlement, or if the Court's final approval is reversed or fundamentally changed on appellate review, then this Settlement shall become null and void. If the Settlement is voided through any of the mechanisms described herein, the Parties will have no further obligations under the Settlement, including any obligation by Defendant to pay the Gross Settlement Payment, or any amounts that otherwise would have been owed under this Settlement, and any obligation to provide Commission-Free Brokerage Services.

12.6  Nothing in this Agreement shall be construed or deemed to be an admission by Defendant or of any of the other Released Parties of any liability, culpability, negligence, or wrongdoing toward the Class Representative, the Class Members, or any other person, and Defendant specifically disclaims any liability, culpability, negligence, or wrongdoing toward the Class Representatives, the Class Members, or any other person. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. Nothing herein shall constitute any admission by Defendant of wrongdoing or liability, or of the truth of any factual allegations in the Action. Nothing herein shall constitute an admission by Defendant that the Action was properly brought as a class action other than for settlement purposes.

12.7  Except as otherwise specifically provided for herein, each Party shall bear its own attorney fees, costs and expenses, taxable or otherwise, incurred by them in, or arising out of, the Action and or the negotiation and execution of this Agreement, and shall not seek reimbursement thereof from any other party to this Agreement.

12.8 Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the fifth business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

<u>To Plaintiffs and the Class</u>:

David Neuman
ISRAELS NEUMAN
10900 NE 8th Street, Suite 1000
PMB #155
Bellevue, WA 98004
Phone: 206-795-5798
Email: dave@israelsneuman.com

Joseph Wojciechowski
Sara Hanley
STOLTMANN LAW OFFICES, P.C.
161 N. Clark St., 16th Floor
Chicago, IL 60601
Phone: 312-332-4200
Email: joe@stoltlaw.com, sara@stoltlaw.com

Joshua B. Kons
LAW OFFICES OF JOSHUA B. KONS, LLC
92 Hopmeadow St., Lower Level
Weatogue, CT 06089
Phone: 860-920-5181
Email: joshuakons@konslaw.com

Alexander Loftus
Loftus & Eisenberg, Ltd.
161 N. Clark St., 16th Floor
Chicago, IL 60601
Phone: 312-899-6625
Email: alex@loftusandeisenberg.com

<u>To Defendant</u>:

Curt Roy Hineline
James Morrison
Alexander Vitruk

Logan F. Peppin
BAKER & HOSTETLER LLP
999 Third Avenue, Suite 3900
Seattle, WA 98104-4040
Phone: 206-332-1380
Email:    chineline@bakerlaw.com,    jmorrison@bakerlaw.com,    avitruk@bakerlaw.com,
lpeppin@bakerlaw.com

Daniel J. Buzzetta
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, NY 10111
Phone: 212-589-4236
Email: dbuzzetta@bakerlaw.com

12.9    This Agreement and its Exhibits constitute the entire agreement between the Parties and their respective counsel relating to the Settlement and the transactions contemplated thereby. No rights hereunder may be waived except in writing.

12.10    The Parties represent, covenant and warrant that they have not directly or indirectly, assigned, transferred, encumbered or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action or rights herein released and discharged.

12.11    With respect to the subject matter hereof, the Parties acknowledge that no written or oral representations, statements or promises made by the other Party, or by their respective agents or attorneys, have been relied upon in entering into this Agreement.

12.12    This Agreement may be modified or amended only if such modification or amendment is agreed to in writing and signed by the duly authorized representatives of the Parties hereto, and approved by the Court which writing shall expressly state the intent of the Parties to modify this Agreement.

12.13    This Agreement shall be binding upon and shall inure to the benefit of the respective heirs, assigns, executors, administrators, successors, transferees, subsidiaries, divisions and

partnerships, past and present, and trustees, directors, officers, shareholders, partners, and employees, past and present, of Plaintiffs, Class Members, Defendant, and all of the other Released Parties.

12.14   This Agreement may be executed in counterparts and/or electronic and/or facsimile signatures, and when each Party has signed and delivered at least one such counterpart, electronic and/or facsimile signature, each said signature shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties.

12.15   Each of the undersigned represents that he, she, or it has the advice of counsel, has authority to sign on behalf of his, her or its principal, and understands that this Agreement is final and binding, and subject only to the settlement process set forth above.

* * * *

THE UNDERSIGNED ACKNOWLEDGE THAT EACH HAS READ THE FOREGOING AGREEMENT IN ITS ENTIRETY AND ACCEPTS AND AGREES TO THE PROVISIONS CONTAINED THEREIN, AND HEREBY EXECUTES IT VOLUNTARILY WITH FULL KNOWLEDGE OF ITS CONSEQUENCES.

Dated: June 2, 2022                    Fred Knopf

By:_____

NATIONAL SECURITIES CORPORATION

Dated: June 2, 2022                    By: _____
                                           James P. Ginzkey

Dated: June 2, 2022                    By: _____
                                           Barry Donner

Dated: June 2, 2022                    By: _____
                                           Richard D. Fitzgerald

Dated: June 2, 2022                    By: _____
                                           Charles Cerf

Approved as to form:

Dated: June 2, 2022                    STOLTMANN LAW OFFICES, P.C.

                                       By: _____
                                           Joseph Wojciechowski
                                           Attorneys for Plaintiffs and Class

Dated: June ___, 2022                  BAKER & HOSTETLER LLP

                                       By: _____
                                           Curt Roy Hineline
                                           Attorneys for Defendant

24

Dated:  June \_\_, 2022            By:_____
                                      James P. Ginzkey


Dated:  June \_\_, 2022            By:_____
                                      Barry Donner


Dated:  June \_\_, 2022            By:_____
                                      Richard D. Fitzgerald


Dated:  June \_\_, 2022            By:_____
                                      Charles Cerf


Approved as to form:


Dated:  June \_\_, 2022            STOLTMANN LAW OFFICES, P.C.


                                   By:_____
                                       Joseph Wojciechowski
                                       Attorneys for Plaintiffs and Class


Dated:  June  3 , 2022             BAKER & HOSTETLER LLP


                                   By:_____
                                       Curt Roy Hineline
                                       Attorneys for Defendant


24